**DISTRICT COURT OF THE VIRGIN ISLANDS**
**DIVISION OF ST. CROIX**

| | |
|---|---|
| **ATLANTIC BASIN REFINING, INC.,** ) <br> ) <br> **Plaintiff,** ) <br> v. ) <br> ) <br> **ARCLIGHT CAPITAL PARTNERS, LLC,** ) <br> **and JP ENERGY PARTNERS, LP,** ) <br> ) <br> **Defendants.** ) <br> ) | **Civil Action No. 2015-0071** |

**Attorneys:**
**Andrew C. Simpson, Esq.,**
**Emily A. Shoup, Esq.,**
St. Croix, U.S.V.I.
**Joseph P. Klock, Jr., Esq.,**
Coral Gables, FL
  *For Plaintiff*

**Charles E. Lockwood, Esq.,**
**George Hunter Logan, Esq.,**
St. Croix, U.S.V.I.
**Blair G. Connelly, Esq.,**
**Serrin Turner, Esq.,**
New York, NY
  *For Defendants*

## <u>MEMORANDUM OPINION</u>

**Lewis, District Judge**

  THIS MATTER comes before the Court on "Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint and to Stay All Proceedings in the Interim" (Dkt. No. 237) and its accompanying Memorandum of Law (Dkt. No. 238), filed by Defendants ArcLight Capital Partners, LLC ("ArcLight") and JP Energy Partners, LP ("JP Energy") (collectively "Defendants"); Plaintiff Atlantic Basin Refining, Inc.'s ("Plaintiff" or "ABR") Opposition thereto

(Dkt. No. 240); and Defendants' Reply (Dkt. No. 241). For the reasons discussed below, the Court will deny Defendants' Motion to Dismiss.

## I. BACKGROUND

A detailed analysis of the factual background involved in this matter is contained in the Court's July 16, 2018 Memorandum Opinion. (Dkt. No. 217). Thus, only a summary of the facts, including those necessary for the resolution of the instant Motion, will be set forth here.

This case arises out of Plaintiff ABR's attempt to acquire and operate the oil refinery and terminal facility in St. Croix, Virgin Islands, which were previously owned by Hovensa, LLC ("Hovensa"). (Dkt. No. 227 ¶ 42). In order to secure the sale and purchase of the Hovensa assets, Plaintiff introduced Defendants into the transaction as its financial partners. *Id*. ¶ 53. In connection therewith, ABR and ArcLight signed a Mutual Nondisclosure Agreement ("NDA") on February 10, 2015, which prohibited the use or disclosure of Confidential Information "except to evaluate and engage in discussions concerning a potential business relationship between the parties." *Id*. ¶¶ 3, 56, 66; (NDA ¶ 3, Dkt. No. 14-1, Ex. A). Pursuant to the NDA, ABR disclosed Confidential Information to Defendants. (Dkt. No. 227 ¶ 68). According to Plaintiff, the information "allowed Defendants to fully understand the economic opportunities afforded by the facility and to have access to a fully developed plan to realize those opportunities." *Id*.

Plaintiff alleges that in July 2015, Defendants informed Plaintiff that they believed that Plaintiff would be making "too much money" from the deal that the parties had been working toward. *Id*. ¶ 105. Defendants proceeded to outline new demands in the form of a term sheet which, according to Plaintiff, "fundamentally wiped out ABR's economics, converting ABR's 50-percent interest in the terminal to itself, ending ABR's refinery development option, and limiting ABR to a fixed $25 million instead." *Id*. Plaintiff further alleges that Defendants informed ABR that they

2

would withdraw their funding unless ABR accepted their new terms, and that "Defendants refused to even meet with ABR to discuss a further relationship unless ABR agreed, in advance, to [the] new one-sided terms." *Id*. ¶ 107.

Instead of agreeing to Defendants' new terms, Plaintiff attempted to engage in further dialogue with Defendants. *Id*. ¶ 111. Plaintiff claims that Defendants instructed their team not to take any calls from ABR. *Id*. Then, Defendants pursued a purchase of the Hovensa terminal, and did so allegedly utilizing the Confidential Information that ABR had provided to them. *Id*. Plaintiff lists numerous ways that Defendants allegedly did this. For example, Plaintiff alleges that in an Investment Committee Memorandum, Defendants represented that they understood major environmental liabilities, which Plaintiff asserts is because Defendants had "extracted the information regarding the environmental liabilities from the Confidential Information that [Plaintiff] had previously provided to them, substituting for Defendants' complete lack of knowledge on the topic." *Id*. ¶ 120. Defendants also needed Title V and Resource Conservation and Recovery Act permits as part of the purchase of the Hovensa Terminal, and according to Plaintiff, their "knowledge of those permits and how to split them was acquired by their extraction of Confidential Information" that Plaintiff had provided. *Id*. ¶¶ 121-122. Other Confidential Information that Defendants allegedly used included insight that "crude export becomes an advantage"; knowledge regarding the advantages of butane blending; the contemplation of a potential refinery restart; a way in which to monetize the terminal via "back-leverage" potential after signing customer contracts; and the identification of "Tier 1 Prospects" for potential terminal customers. *Id*. ¶¶ 123-127.

Limetree Bay Holdings, LLC ("Limetree"), ArcLight's subsidiary, ultimately purchased the storage and terminal assets during Hovensa's bankruptcy auction. *Id*. ¶¶ 134-135. A Bankruptcy Sale Order was entered on December 1, 2015. (Sale Order, Dkt. No. 239-1, Ex. A).

Plaintiff alleges that, from the outset, Defendants acted "under false pretenses" by entering into negotiations—not with the intention of actually forming a partnership with ABR—but "with the purpose and intent to convert ABR's activities and efforts . . . to gain access to [Hovensa] and the Refinery Facility, to co-opt for their own purpose the good will and preferred negotiating position enjoyed by ABR (while excluding ABR from the transaction), and ultimately to execute an [agreement] to acquire the terminal facility only." (Dkt. No. 227 ¶¶ 141-143). In so doing, Plaintiff claims that Defendants breached the parties' NDA by "improperly us[ing]" Confidential Information provided by Plaintiff, including its "plans, strategies, projections, engineering information, and financial models," to purloin ABR's business opportunity with Hovensa for itself. *Id*. ¶¶ 143-146. In addition to Confidential Information, Plaintiff alleges that Defendants benefitted from Plaintiff's "position in the transaction[,] contacts with Hovensa and the government, prior negotiations with the EPA, prior negotiated documents with Hovensa and the [G]overnment of the Virgin Islands, and knowledge and diligence regarding the Refinery Facility." *Id*. ¶ 145.

Plaintiff ABR commenced suit against Defendants in this Court on November 16, 2015 (Dkt. No. 1), and filed its First Amended Complaint on January 22, 2016 (Dkt. No. 14). In its First Amended Complaint, Plaintiff alleged several causes of action: Tortious Interference with Existing and Prospective Business Relationships; Breach of Contract; Breach of Contract (Injunction); Misappropriation; Unjust Enrichment; *Quantum Meruit*; and Breach of Fiduciary Duty. *Id*. ¶¶ 63-107. In response, Defendant filed a Motion to Dismiss (Dkt. No. 19), which the Court granted in part and denied in part (Dkt. No. 216). Specifically, the Court dismissed Plaintiff's claims for

4

Tortious Interference with Existing and Prospective Business Relationships, Breach of Contract (Injunction), Unjust Enrichment, and Breach of Fiduciary Duty with prejudice; dismissed Plaintiff's Breach of Contract and Misappropriation claims without prejudice and with leave to amend; and denied Defendant's Motion to Dismiss Plaintiff's *Quantum Meruit* claim. *Id.*

Plaintiff subsequently filed a Motion for Reconsideration (Dkt. No. 222) of the Court's Order (Dkt. No. 216)—which the Court denied (Dkt. No. 245)—and a Second Amended Complaint (Dkt. No. 227). In its Second Amended Complaint, Plaintiff alleges the following causes of action: Breach of Contract (Count II); Misappropriation (Count IV); and *Quantum Meruit* (Count VI). (Dkt. No. 227 ¶¶ 184-202).[1]

In response, Defendant filed the instant Motion to Dismiss (Dkt. No. 237), seeking dismissal of the Second Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6) (Dkt. No. 238). Defendants also request that all proceedings be stayed while the instant Motion to Dismiss remains pending. *Id*. Plaintiff has filed an Opposition to the instant Motion to Dismiss (Dkt. No. 240), to which Defendants have replied (Dkt. No. 241).

## II.   APPLICABLE LEGAL PRINCIPLES

Federal Rule of Civil Procedure 12(b)(6) allows a party to move for dismissal based on failure to state a claim upon which relief can be granted. The Third Circuit, through *Connelly v.*

---

[1] Plaintiff's Second Amended Complaint was filed prior to the Court's ruling on Plaintiff's Motion for Reconsideration. Accordingly, Plaintiff included placeholders reincorporating its previous allegations for Tortious Interference with Existing and Prospective Business Relationships (Count I), Unjust Enrichment (Count V), and Breach of Fiduciary Duty (Count VII) in the event that the Court revisited its dismissal of those counts with prejudice. (Dkt. No. 227 at 49, 53-55). Similarly, Plaintiff included its Breach of Contract (Injunction) claim (Count III), stating that it had been omitted at the direction of the Court. *Id*. at 52. Because the Court denied Plaintiff's Motion for Reconsideration, Counts I, III, V, and VII remain dismissed with prejudice and will not be discussed further herein.

*Lane Const. Corp.*, follows the analysis established by the Supreme Court in *Bell Atlantic v. Twombly* and *Ashcroft v. Iqbal* when dismissing under Rule 12(b)(6):

> Under the pleading regime established by *Twombly* and *Iqbal,* a court reviewing the sufficiency of a complaint must take three steps. First, it must "tak[e] note of the elements [the] plaintiff must plead to state a claim." [*Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)]. Second, it should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679, 129 S. Ct. 1937. *See also Burtch v. Milberg Factors, Inc.,* 662 F.3d 212, 224 (3d Cir. 2011) ("Mere restatements of the elements of a claim are not entitled to the assumption of truth.") (citation and editorial marks omitted). Finally, "[w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal,* 556 U.S. at 679, 129 S. Ct. 1937.

*Connelly*, 809 F.3d 780, 787 (3d Cir. 2016) (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544 (2007) and *Iqbal*, 556 U.S. 662) (footnote omitted).

Accepting all well-pleaded factual allegations as true, courts must "construe the complaint in the light most favorable to the plaintiff . . . ." *Advanced Rehab., LLC v. United Health Group, Inc.*, 498 Fed. App'x 173, 176 (3d Cir. 2012) (quoting *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009)) (quotations omitted). "A district court may grant the motion to dismiss only if . . . it determines that plaintiff is not entitled to relief under any reasonable reading of the complaint." *Acosta v. Hovensa, LLC*, 53 V.I. 762, 771 (D.V.I. 2010) (citing *Capogrosso v. Supreme Court of N.J.*, 588 F.3d 180, 184 (3d Cir. 2009) (internal quotation marks and brackets omitted)). "The defendant bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)).

"Determining whether a complaint states a plausible claim for relief [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *McTernan v. City of York*, 577 F.3d 521, 531 (3d Cir. 2009) (quoting *Iqbal*, 556 U.S. at 679)

(internal quotation marks omitted). While the Court must determine whether the facts as pleaded state a plausible claim for relief, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts alleged is improbable and that a recovery is very remote and unlikely." *Fowler,* 578 F.3d at 213 (quoting *Twombly*, 550 U.S. at 556).

At the Rule 12(b)(6) stage, "courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint[,] and matters of public record." *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993) (citations omitted). However, in addition to the complaint and any exhibits attached thereto, courts may also consider "an undisputedly authentic document . . . if the plaintiff's claims are based on the document," such as a contract. *See Pension Benefit Guar. Corp. v. White Consol. Indus.,* 998 F.2d 1192, 1196 (3d Cir. 1993); *see also Am. Corporate Soc'y v. Valley Forge Ins. Co.*, 424 F. App'x 86, 88-89 (3d Cir. 2011).

### III. DISCUSSION

Defendants argue that Plaintiff's Second Amended Complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) because Plaintiff's claims continue to assert "interests" in the Hovensa opportunity; Plaintiff's claims are barred by the Sale Order's good faith finding; Plaintiff has insufficiently pled its claim that Defendants misappropriated the Confidential Information; Plaintiff's Misappropriation claim is preempted by the Uniform Trade Secrets Act; Plaintiff's *Quantum Meruit* claim is duplicative; and Plaintiff has not sufficiently pled the elements of *quantum meruit*. (Dkt. No. 238). For the reasons that follow, the Court will deny Plaintiff's Motion to Dismiss.

7

### A. The Bankruptcy Sale Order

Defendants argue that Plaintiff's claims are barred by the Bankruptcy Sale Order. (Dkt. No. 240 at 3-12). In this regard, they first argue that Plaintiff's claims are "interests" in the Hovensa opportunity because of Plaintiff's theory of damages. *Id*. The Court disagrees. In its July 2018 Memorandum Opinion, the Court previously found, *inter alia*, that Counts II, IV, and VI are not barred by the Bankruptcy Court's Sale Order. *Id*. at 34-37. Specifically, the Court found that these Counts do not encompass interests that are connected to, or arise from, the Hovensa assets, but rather focus on the claimed breach of contract resulting from Defendants' alleged misappropriation of Confidential Information. (Dkt. Nos. 217 at 35-37). Defendants arguments in the instant Motion do not alter the Court's conclusion in that regard.

Defendants argue that "[b]ecause ABR has failed to identify any theory of damages other than its alleged loss of the Hovensa opportunity—which is precluded by the Sale Order—its claims must be dismissed." (Dkt. No. 240 at 8). In response, Plaintiff contends that "ABR's damages are not tied to the Hovensa assets and are based upon the respective value of [the Confidential Information] to ABR and ArcLight." (Dkt. No. 241 at 12).

The Court finds that, contrary to Defendants' assertion, the damages that Plaintiff seeks in Counts II, IV, and VI do not encompass Plaintiff's loss of the Hovensa opportunity, but instead arise from Defendants' alleged breach of the NDA resulting from the alleged improper use of Confidential Information provided by ABR.[2] In other words, the damages that Plaintiff seeks in

---

[2] The Court notes that in *Food King, Inc. v. Norkus Enterprises, Inc.*, No. CIV A 04-1500 MLC, 2006 WL 3674997 (D.N.J. Dec. 13, 2006)—the case upon which Defendants rely for the damages argument—the court found that a claim for tortious interference with prospective economic advantage was barred by the terms of the sale order at issue. Similarly here, the Court has dismissed Plaintiff's claim for Tortious Interference with Existing and Prospective Business Relationships. However, the tortious interference claims—both here and *in Food Bank*—are distinguishable from Plaintiff's misappropriation and breach of contract claims which focus on the contract between

the Counts at issue relate to the value of the Confidential Information rather than the potential value of the Hovensa opportunity.[3]

Defendants further argue that Plaintiffs' claims are independently barred by the Bankruptcy Court's good faith finding. (Dkt. No. 238 at 8-12). In response, Plaintiff contends, *inter alia*, that the Bankruptcy Court's good faith finding has no legal relevance or application to its claims because it only applies to the buyer—Limetree. (Dkt. No. 240 at 13-17).[4] The Court concludes that the good faith finding in Sale Order does not bar Counts II, IV, and VI.

First, the Court finds that the Bankruptcy Court's good faith finding pursuant to 11 U.S.C. § 363(m) does not bar Plaintiff's claims. Indeed, Paragraph K of the Sale Order applies to the Buyer—who, in this case, purportedly was Limetree—not Defendants. Specifically, in Paragraph K, the Bankruptcy Court found that:

> The *Buyer* is purchasing the Purchased Assets in good faith, and is a good faith purchaser, within the meaning of section 363(m) of the Bankruptcy Code. The

---

Plaintiff and Defendants and the value of the Confidential Information that Plaintiff provided to Defendants, rather than the potential economic gain from the Hovensa opportunity.

[3] The Court is mindful that, as Defendants point out, Plaintiff continues to make references to potential profits from the Hovensa opportunity throughout its Second Amended Complaint (*See, e.g.,* Dkt. No. 227 ¶ 108) (alleging that Defendants "clear[ed] the field for a deal" in order to keep all the profits from the Hovensa transaction for themselves."); *see also id.* ¶¶ 53, 131 , 202. Because the Court has already ruled that the Sale Order precludes Plaintiff from pursuing claims that involve a linkage or connection to the Hovensa assets, the Court construes these references as being for contextual purposes, rather than a description of the damages which Plaintiff seeks. In other words, Plaintiff may only seek the value of the Confidential Information—not the value of the Hovensa acquisition.

[4] Alternatively, Plaintiff argues that Defendants "have not shown that the [B]ankruptcy [C]ourt was presented with any evidence of their misconduct relating to ABR or that the bankruptcy court adjudicated the issue." (Dkt. No. 240 at 17-21). The Court rejects this argument because Plaintiff could have, but did not object and provide such information to the Bankruptcy Court during the bankruptcy proceeding. *See In re Christ Hosp.*, 2014 WL 4613316, at *13 n.6 (D.N.J. Sept. 12, 2014).

> *Buyer* is therefore entitled to, and granted pursuant to paragraph 24 below, the full rights, benefits, privileges, and protections of section 363(m) of the Bankruptcy Code, and the *Buyer* has otherwise proceeded in good faith in all respects in connection with the Transactions . . . .

(Sale Order at 6, ¶ K) (emphasis added). The Bankruptcy Court then made the following good faith findings with respect to the Buyer:

    (i)    the Buyer recognized that the Debtor could deal with other parties;

    (ii)    the Buyer complied with the Bidding Procedures Order;

    (iii)    the Buyer agreed that its bid was subject to the competitive bidding procedures set forth in the Bidding Procedures Order;

    (iv)    all payments by Buyer and other agreements entered into by Buyer in connection with the Sale had been disclosed;

    (v)    the Buyer had not violated 11 U.S.C. § 363(n);

    (vi)    there was no common identity of directors or controlling stockholders between Buyer and Hovensa; and

    (vii)    the negotiation and execution of the Asset Purchase Agreement and the Transaction Documents were at arms' length and in good faith.

*Id*. None of Plaintiff's surviving claims contradict or undermine these good faith findings.

Nor is the purpose of section 363(m) undermined by Plaintiff's claims. Section 363(m) provides:

> The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

11 U.S.C. § 363(m). "The purpose of § 363(m) is to promote the finality of sales." *In re Pursuit Cap. Mgmt., LLC*, 874 F.3d 124, 133 (3d Cir. 2017). It provides "not only . . . finality to the judgment of the bankruptcy court, but particularly . . . finality to those orders and judgments upon which third parties rely." *Pittsburgh Food & Bev. Inc. v. Ranallo*, 112 F.3d 645, 647-48 (3d Cir.

10

1997) (quoting *In re Abbotts Dairies of Pa., Inc.,* 788 F.2d 143, 147 (3d Cir. 1986)); *see also In re Stadium Mgmt. Corp.*, 895 F.2d 845, 847 (1st Cir. 1990) (discussing the "salutary policy of affording finality to judgments" in such sales) (citation omitted).

As Plaintiff concedes, "Defendants' misconduct . . . was not of a nature that would justify setting aside the sale." (Dkt. No. 240 at 14). Thus, Plaintiff's surviving claims do not threaten the finality of the Sale Order, which underlies the purpose of § 363(m). *Pittsburgh Food*, 112 F.3d at 647-48. Indeed, "[t]ypically, the misconduct that would destroy a purchaser's good faith status at a judicial sale involves fraud, collusion between the *purchaser* and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders." *In re Abbotts Dairies of Pa., Inc.*, 788 F.2d at 147 (emphasis added). Once again, the focus is on the conduct of the *purchaser*, which purportedly is not the case here. *Id*.

Finally, Paragraph L of the Bankruptcy Order, upon which Defendants rely, is also unavailing. Paragraph L provides:

> None [sic] of the Debtor, the Buyer, or any of their respective Representatives, has engaged in any conduct that would cause or permit the Asset Purchase Agreement or any of the Transaction Documents, or the consummation of the Transaction to be avoidable or avoided, or for costs or damages to be imposed, under section 363(n) of the Bankruptcy Code, or has acted in bad faith or in any improper or collusive manner with any Person in connection therewith.

*Id*. at 7, ¶ L. While Paragraph L includes the Buyers' respective Representatives—which could arguably encompass Defendants—it deals with conduct that would render a sale avoidable or avoided under 11 U.S.C. § 363(n). Section 363(n) provides that a sale may be avoided (or avoidable) if the sale price was controlled by an agreement among potential bidders to the sale.[5]

---

[5] The entirety of 11 U.S.C. § 363(n) reads:

> The trustee may avoid a sale under this section if the sale price was controlled by an agreement among potential bidders at such sale, or may recover from a party to such agreement any amount by which the value of the property sold exceeds the

11

Thus, assuming that Paragraph L applies to Defendants, the good faith finding is limited to a finding that Defendants had neither engaged in conduct that would cause the sale to be avoidable or avoided, or acted in bad faith or in any improper or collusive manner "in connection" with such a sale. Because neither an avoidable or avoided sale is at issue here, Defendants are not protected by Paragraph L of the Sale Order.[6]

In view of the foregoing, the Court finds that the Bankruptcy Court's Sale Order does not bar Counts II, IV, and VI.

B.    **Plaintiff's Amended Counts II and IV**

The Court previously dismissed Counts II and IV without prejudice, and granted Plaintiff leave to amend those Counts. (Dkt. No. 216). Specifically, the Court found that Plaintiff's First Amended Complaint failed to address "when, where, and by and to whom ABR's Confidential Information was improperly disclosed." (Dkt. No. 217 at 45-46). Defendants argue that the Second Amended Complaint does not cure these deficiencies. (Dkt. No. 238). For the reasons that follow, the Court finds otherwise.

Because Plaintiff's claims in Counts II and IV pertain to the parties' NDA, the Court will apply the NDA's express choice of law provision, which requires these claims to be examined under the laws of the state of Delaware. (NDA ¶ 15) ("The Agreement shall be governed by the

---

   price at which such sale was consummated, and may recover any costs, attorneys' fees, or expenses incurred in avoiding such sale or recovering such amount. In addition to any recovery under the preceding sentence, the court may grant judgment for punitive damages in favor of the estate and against any such party that entered into such an agreement in willful disregard of this subsection.

[6] Defendants argue that the portion of Paragraph L that references "bad faith" and "collusion" is connected to the sale itself as opposed to a sale that is avoidable or avoided pursuant to § 363(n). (Dkt. No. 241 at 8). The Court disagrees. Based on the language of Paragraph L, the Court concludes that "in connection therewith" necessarily relates back to the avoidable or avoided sale.

laws of the State of Delaware, without regard to the principles of conflict of laws thereof."); *see Bell v. USAA Cas. Ins. Co.*, 2009 WL 2524351, at *2 (D.V.I. Aug. 14, 2009) ("[A] contract is interpreted according to the law chosen by the parties so long as the particular issue is one which the parties [] resolved by an explicit provision in their agreement directed to that issue") (internal citation and quotations omitted).

Under Delaware law, to survive a Rule 12(b)(6) motion to dismiss for failure to state a claim for breach of contract, the plaintiff must demonstrate: "first, the existence of the contract, whether express or implied; second, the breach of an obligation imposed by that contract; and third, the resultant damage to the plaintiff." *VLIW Tech., LLC v. Hewlett-Packard Co.*, 840 A.2d 606, 612 (Del. 2003).

The Court previously found that Plaintiff's claim for breach of contract could not survive a Rule 12(b)(6) motion to dismiss because the allegations in the First Amended Complaint did not include sufficient facts to satisfy the second element which, at the 12(b)(6) stage, calls for a "showing," for plausibility purposes, of a breach. (Dkt. No. 217 at 41). The Court finds that Plaintiff has cured the deficiency in this regard in that—unlike in the First Amended Complaint—Plaintiff's Second Amended Complaint includes factual allegations to support the contention that Defendants "used" the Confidential Information. The Second Amended Complaint now mentions a "specific time, place, [and] person involved" in the alleged use of Plaintiff's Confidential Information. *See Twombly*, 550 U.S. at 565 n.10.

With regard to when Defendants violated the confidentiality provisions, Plaintiff specifically refers to ArcLight using the Confidential Information in August 2015 as part of its Investment Committee's decision to approve the purchase of the Hovensa terminal facility. (Dkt. No. 227 ¶ 10). Further, along with references to the parties throughout, Plaintiff identifies specific

people that were allegedly involved in this matter, such as Robert Moore—ABR's founding principal—and Jerry Ashcroft of JP Energy, who Robert Moore allegedly informed that Atlantic Marketing was a potential customer. *Id*. ¶ 128. This information, according to Plaintiff, prompted Jerry Ashcroft to identify Atlantic Marketing as a "Tier 1 Prospect" in an Investment Committee Memorandum. *Id*.

With regard to how ABR's Confidential Information was improperly disclosed, Plaintiff sets forth allegations that Defendants utilized ABR's environmental due diligence as the primary source for their own environmental due diligence. *Id*. ¶¶ 158-162. Plaintiff also alleges that ArcLight pursued the acquisition of Hovensa following a presentation to the ArcLight Investment Committee that relied heavily upon the Confidential Information allegedly provided to Defendants by ABR. *Id*. ¶¶ 118-121, 157, 162-163. Further, Plaintiff asserts that ArcLight utilized information provided by ABR in its presentations to the Government of the Virgin Islands to convince it that ArcLight was the most knowledgeable potential operator of the facility and the best-suited company to address the environmental issues at the Hovensa site. *Id*. ¶ 173-174. Plaintiff also claims that when the Government of the Virgin Islands informed ArcLight that it wanted a purchase that included the refinery and terminal, ArcLight was able—within 40 days—to modify its purchase effort to include the refinery because of its alleged exploitation of the Confidential Information that it obtained from ABR. *Id*. ¶ 157. According to Plaintiff, ArcLight used this information in their negotiations to persuade previously doubtful partners to join them in the transaction—including Freepoint Commodities—which, prior to ArcLight providing it with ABR's information, had elected not to pursue the Hovensa acquisition. *Id*. ¶¶ 31, 157. Plaintiff also asserts that Arclight used the Confidential Information as part of the informational package it used to secure a $440 million refinancing, allowing it to withdraw all of its contributed capital and

fund a refinery restart. *Id*. ¶ 157. Additionally, Plaintiff contends that ArcLight worked from ABR's prior negotiations, using Confidential Information about ABR's discussions, positions, and strategies in the development of the agreement between ArcLight's subsidiary, Limetree, and the Government of the Virgin Islands. *Id*.

Turning to Plaintiff's Misappropriation claim, to assert a claim for misappropriation of confidential information under Delaware law, a plaintiff must meet the following elements: (1) "it had a property interest in the confidential information; (2) [] the defendant wrongfully exerted dominion over the confidential information; and (3) [] the plaintiff sustained damages as a result." *Sustainable Energy Generation Grp., LLC v. Photon Energy Projects B.V.*, 2014 WL 2433096, at *14 (Del. Ch. May 30, 2014). This Court previously found that the Misappropriation allegations in Plaintiff's First Amended Complaint failed to meet the plausibility standard for the second element. (Dkt. No. 217 at 45-46).

The allegations in the Second Amended Complaint cure this deficiency by showing that Plaintiff has a plausible claim for relief as to Defendants' alleged impermissible use of ABR's Confidential Information. Plaintiff's factual allegations include information addressing how, when, where, and by and to whom ABR's Confidential Information was improperly disclosed. Specifically, as discussed above, Plaintiff now alleges that in August 2015, Defendants incorporated Confidential Information in materials that they used with investors (Dkt. No. 227 ¶¶ 31, 157), customers, *id*. ¶¶ 127-128, 176-178, the Government of the Virgin Islands, *id*. ¶¶ 173-174, and financers, *id*. ¶ 157. Plaintiff has thus sufficiently established a misappropriation claim "because it is reasonably conceivable that Defendants used or disclosed impermissibly [Plaintiff's] confidential information, [and] it also is reasonably conceivable that Defendants wrongfully

exerted dominion over" Plaintiff's Confidential Information. *See Sustainable Energy.*, 2014 WL 2433096 at *15.

The Court also previously concluded that any alleged misappropriation of a trade secret claim "suffer[ed] from the same deficiency as the common law [misappropriation of confidential information] claim . . . ." (Dkt. No. 217 at 44 n.21). Because the Court now finds that Plaintiff has sufficiently pleaded its Misappropriation claim so as to survive a Rule 12(b)(6) motion, Plaintiff has likewise cured the deficiency in the context of any alleged trade secret claim. Moreover, while Defendants argue that Plaintiff's Misappropriation claim is preempted by the Uniform Trade Secrets Act ("USTA") (Dkt. No. 238 at 25-26), the Court concludes that it would be premature to address that issue at this stage of the proceedings. *Overdrive, Inc. v. Baker & Taylor, Inc.*, No. CIV.A. 5835-CC, 2011 WL 2448209, at *5 (Del. Ch. June 17, 2011) (reserving its consideration of the issue of whether a claim was preempted by the USTA until the plaintiff's claim "has been sufficiently developed through further proceedings" because it would depend on "whether the information in question was in fact a *trade secret* (not [simply] confidential information).") (emphasis in original).[7]

In sum, the Court finds that, in response to the Court's grant of leave to amend, Plaintiff has cured the deficiencies in Counts II and IV which the Court found were present in the First Amended Complaint. Accordingly, for the reasons set forth above, the Court will deny

---

[7] Defendants cite to *Atl. Med. Specialists, LLC v. Gastroenterology Assocs., P.A.*, 2017 WL 1842899 (Del. Super. Ct. Apr. 20, 2017) in its Reply for the proposition that the USTA preempts Plaintiff's Misappropriation claim. (Dkt. No. 241 at 17). Notably, that case addresses a motion for summary judgment—rather than a Rule 12(b)(6) motion—and in fact ultimately concludes that a tortious interference claim was *not* preempted by the USTA. *Atl. Med. Specialists*, 2017 WL 1842899 at *15.

Defendants' Motion to Dismiss Plaintiff's Breach of Contract and Misappropriation claims as set forth in the Second Amended Complaint.[8]

C. **Count VI: *Quantum Meruit***

The Court previously denied Defendants' Motion to Dismiss Plaintiff's *Quantum Meruit* claim. (Dkt. No. 216). However, Defendants again seek dismissal of this claim, arguing that it is duplicative and unsupported by any allegations that Plaintiff expected to be paid for services. (Dkt. No. 238 at 26-27).

The Court has already rejected Defendants' argument that Plaintiff's *Quantum Meruit* claim is duplicative. (Dkt. No. 217 at 50-51). That determination was made, in part, because Defendants' position regarding the validity of the NDA had not yet been explored. *Id*. Defendants have now made clear that "they do not contest the validity of [the] NDA." (Dkt. No. 238 at 26). However, there is no guarantee that Plaintiff will prevail on its Breach of Contract claim, and a *quantum meruit* claim can be plead in the alternative. *See Kontonotas v. Hygrosol Pharm. Corp.*, 424 F. App'x 184, 186 (3d Cir. 2011); *Roy v. Poleon*, No. ST-13-CV-525, 2016 WL 11723579, at *5 (V.I. Super. Ct. Dec. 12, 2016); *Merchants Com. Bank v. JFOV, LLC*, No. ST-08-CV-247, 2015

---

[8] Defendants also argue that Plaintiff's Misappropriation allegations do not withstand scrutiny because the information that Defendants allegedly misused was neither confidential nor a trade secret. (Dkt. No. 238 at 18-23). However, whether information is confidential or a trade secret is a question of fact, and thus, it would be inappropriate for the Court to determine those issues in the context of this Rule 12(b)(6) motion. *See Lyons Ins. Agency, Inc. v. Kirtley*, No. CV N18C-09-040 CLS, 2019 WL 1244605, at *4 (Del. Super. Ct. Mar. 18, 2019) (denying a motion to dismiss and a motion for partial judgment on the pleadings in part because there was a question of fact as to "what confidential information, if any, was compromised, and whether or not that information [was], in fact, confidential."); *Beard Research, Inc*, 8 A.3d at 591; *Savor, Inc. v. FMR Corp.*, 812 A.2d 894 (Del. 2002) (finding that the determination of whether the components of a trade secret are well known cannot be resolved on a motion to dismiss); *SmithKline Beecham Pharms. Co. v. Merck & Co.,* 766 A.2d 442, 448 (Del. 2000) ("Whether the trade secrets were generally known or readily ascertainable . . . is a question of fact."). Accordingly, the Court will reject Defendants' arguments for dismissal on those grounds.

WL 6499842, at *5 (V.I. Super. Ct. Oct. 2, 2015). Accordingly, the Court rejects Defendants' argument that it should dismiss Plaintiff's *Quantum Meruit* claim as duplicative at this stage, and will allow Plaintiff to plead a *Quantum Meruit* claim as an alternative to its Breach of Contract claim.

The Court also rejects Defendants' additional argument that Plaintiff has failed to allege a *quantum meruit* claim because Plaintiff "does not allege that it performed any 'services' for Defendants for which it expected to be paid, or that Defendants had reason to know of that expectation." (Dkt. No. 238 at 27). Defendants cite to Delaware law in support of its position. *Id*. Plaintiff argues, on the other hand, that Virgin Islands law applies. (Dkt. No. 240 at 27-28). The Court previously applied Delaware law to Plaintiff's Breach of Contract and Misappropriation claims due to a choice of law provision in the NDA. Because a *quantum meruit* claim would not be attached to the NDA—and thus no choice of law provision would apply—Virgin Islands law would control here. *Lafferty v. St. Riel*, 495 F.3d 72, 76 (3d Cir. 2007), *as amended* (July 19, 2007), *as amended* (Nov. 23, 2007) ("[A] federal court must apply the substantive laws of its forum state in diversity actions.").[9]

Under Virgin Islands law, the elements of *quantum meruit* are that: 1) the plaintiff provided benefits to the defendant; 2) the defendant "appreciated" the benefits intentionally, wrongfully, or passively; and 3) the defendant's acceptance of the benefits must be such that "it would prove

---

[9] The Court notes that in its previous Opinion, it stated that Delaware law applied in accordance with the NDA's choice of law provision. (Dkt. No. 217 at 49). However, the Court has reconsidered its position in that regard and concludes otherwise. The *Quantum Meruit* claim is a quasi-contract claim that is being asserted as an alternative to the Breach of Contract claim. Accordingly, the NDA's choice of law provision would not apply to Plaintiff's *Quantum Meruit* claim. *See Underhill Inv. Corp. v. Fixed Income Disc. Advisory Co.,* 319 F. App'x 137, 141 (3d Cir. 2009) ("[The plaintiff] pursues quasi-contract claims, not a pure contract claim . . . and, therefore, the [contract's] choice of law provision does not apply to this action.").

inequitable and unconscionable for the defendant to retain such benefits without any exchange, payment, or compensation of value to the plaintiff." *Williams v. Univ. of the Virgin Islands*, No. ST-00-CV-148, 2019 WL 301345, at *5 (V.I. Super. Ct. Jan. 18, 2019) (citing *Vanterpool v. Gov't of the Virgin Islands*, 63 V.I. 563, 589-90 (V.I. 2015) for the proposition that *quantum meruit* and unjust enrichment refer to the same cause of action that is available where no enforceable contract exists).

Plaintiff has alleged sufficient facts to plausibly state a claim for *quantum meruit* in its Second Amended Complaint. First, it alleges that Plaintiff "conferred a benefit on Defendants [by], *inter alia*, introducing Defendants to the transaction and ABR's strategies, plans and analyses for the purchase of the terminal, and the purchase, restart and operation of the Refinery Facility." (Dkt. No. 227 ¶ 200); *see id*. ¶¶ 52-183, 187-192. Second, Plaintiff alleges that "Defendants accepted and retained the benefits of the Confidential Information, using ABR's strategies, plans, and analyses, and working from ABR's prior negotiations with Hovensa, the [Government of the Virgin Islands,] and the United States EPA, but failed to honor its commitment to use such information solely for purposes of pursuing a business relationship with ABR." *Id*. ¶ 201. Third, Plaintiff asserts that "[i]t would be inequitable for Defendants to retain the benefits of ABR's work, prior negotiations, contacts, and business, engineering and operational plans and profits without payment of value to ABR." *Id*. ¶ 202.

In its Reply, Defendants argue that it does not matter whether Delaware or Virgin Islands law applies because an expectation to be paid "is a basic precept of the law of *quantum meruit* generally, recognized in the Virgin Islands as much as anywhere else." (Dkt. No. 241 at 18). Defendants rely on *Walters v. Walters*, 60 V.I. 768 (2014) for that proposition, wherein the Supreme Court of the Virgin Islands was considering the denial of a motion for summary

19

judgment, and emphasized that the finder of fact concluded that the plaintiff performed the services gratuitously and without any expectation of payment. *Id*. at 780. The Court finds *Walters* to be distinguishable from the matter at hand, which is at the Rule 12(b)(6)—rather than the summary judgment—stage and where there is nothing in Plaintiff's Second Amended Complaint which suggests that Plaintiff was being "gratuitous" in providing the Confidential Information to Defendants.

Accordingly, the Court will deny Defendants' Motion to Dismiss Plaintiff's *Quantum Meruit* claim.

### IV. CONCLUSION

For the reasons set forth above, Defendants' Motion to Dismiss will be denied. The Court will allow Counts II, IV, and VI of the Second Amended Complaint to proceed. The Court will also deny Defendants' request to stay the proceedings as moot.

An appropriate Order accompanies this Memorandum Opinion.

Date: June 30, 2021 _____/s/_____
WILMA A. LEWIS
District Judge