IN THE DISTRICT COURT OF THE VIRGIN ISLAND

DIVISION OF ST. CROIX

| | |
|---|---|
| ATLANTIC BASIN REFINING, INC.<br><br>PLAINTIFF,<br><br>VS.<br><br>ARCLIGHT CAPITAL PARTNERS, LLC<br>AND JP ENERGY PARTNERS, LP,<br><br>DEFENDANTS. | CASE NO.: 1:15-cv-00071 |

**PLAINTIFF'S RESPONSE TO THE COURT'S DECEMBER 5, 2023
ORDER REGARDING CLARIFICATION OF PLAINTIFF'S DAMAGE CLAIM**

Atlantic Basin Refining, Inc. ("ABR") submits this memorandum in response to the Court's December 5, 2023 Order (Doc. No. 358) regarding clarification of ABR's damage claims.

As explained below, ABR has not changed its damage theory as set forth in its opposition to Defendants Motion to Dismiss the Second Amended Complaint. After the Court's ruling on the motion, ABR did change its theory in response to footnote 3 of the Court's ruling. But, after the Court clarified its interpretation of that footnote at the November 27, 2023 hearing, ABR reverted to the damage claim it described in its opposition to the second motion to dismiss.

1

## BACKGROUND

On March 4, 2016, Defendants filed their original motion to dismiss (Doc. No. 19). The case thereafter proceeded with both discovery and briefing of the motion to dismiss. More than two years later, factual discovery was completed and the case entered the expert witness phase; however, the fully-briefed motion to dismiss remained undecided. To understand ABR's damage claim and how the claim has evolved in response to ABR's understanding of the Court's rulings, it is necessary to review the background of the briefing of the two motions to dismiss.

### A. JUNE 18, 2018 – ABR FILES ITS EXPERT REPORTS

On June 18, 2018, ABR timely filed its experts reports. (Doc. No. 210). One of those expert reports, the Report of Donald House, Ph.D. (Doc. No. 210-1), opined upon the damages sustained by ABR. Dr. House opined, *inter alia*, that the value of the proposed 50% ownership of the Terminal by ABR was worth $1.0216 billion and the value of the refinery (which was to be 100% owned by ABR) was $1.9278 billion. Critically, Dr. House based his valuation of the Terminal "upon a recent set of projections prepared by Limetree Bay." Doc. No. 210-1 at ECF p.31. Limetree Bay projected from 2016 through 2022 gross revenues of $1.3688 billion and total operating expenses of $0.4472 billion. Therefore, Limetree Bay was projecting a profit of $921.6 Million for the terminal operation alone for only the seven-year period from 2016 through 2022. This is evidence of how Limetree Bay valued the terminal *to itself*, which then formed the basis for the House valuation.

Critically, Dr. House's evaluation does *not* include the actual value of the assets themselves. His valuation is based upon the cash flow generated but does not include the residual value of the assets at the conclusion of the 20-year period he used for his valuation.

B. JULY 16, 2018 – THE COURT DECIDES THE FIRST MOTION TO DISMISS

On July 16, 2018, this Court rendered its opinion on defendants' original motion to dismiss. The Court's opinion (Doc. No. 217) included the following statements that are relevant to the instant inquiry:

> The Court finds that Counts I, V, and VII are "interests" that are "connected to, or arise from," the purchased Hovensa assets, *i.e.*, the storage and terminal facility, and are thus subject to the Sale Order's injunction. The "clear factual connection" between these claims—which center on the deprivation of ABR's expected earnings from the Hovensa transaction—and the sale of Hovensa's storage and terminal facilities to Defendants' affiliate is evident.

*Atlantic. Basin Refining, Inc. v. ArcLight Cap. Partners, LLC*, Case No. 1:15-cv-0071, 2018 WL 3431974, at *14 (D.V.I. July 16, 2018).

> The direct connection here between the claims in Count V and the purchased Hovensa assets is again apparent. The linkage here is grounded in Plaintiff's allegations that Defendants' self-dealing and self-enrichment—achieved "*by co-opting* the terminal and storage facility and *taking for themselves Plaintiff's share* of the terminal and storage business"—directly resulted in the loss of Plaintiff's share of the transaction, which deprived Plaintiff of the profits it had expected to garner from acquiring the Hovensa assets. (Dkt. No. 14 ¶¶ 94-96) (emphasis added).

*Id.* at *16.

> According to Plaintiff, Defendants breached that duty when "they *took actions to undermine ABR's participation in the transaction* so as to gain full ownership and control for themselves through an ArcLight affiliate created for that purpose." Id. ¶ 104 (emphasis added). These actions,

3

> according to Plaintiff, included "secur[ing] for ArcLight ABR's share of the marine terminal and storage business . . . and by strategically withdrawing ArcLight's financial commitment at a time that left, and which ArcLight knew would leave, ABR without the ability to secure another financial partner and proceed with the transaction, and *thereby eliminated [ABR]* . . . in order to make straight the path for the Defendants to acquire the marine terminal and storage business for its own account." Id. ¶ 106 (emphasis added).

*Id.*

> As in Counts I and V, Plaintiff alleges that Defendants' deliberate and successive acts directly resulted in Plaintiff's loss of the Hovensa assets and Defendants' acquisition of the same.

*Id.*

> The Court finds that Counts I, V, and VII portray a "chain of events" which "culminat[ed]" in Defendants' affiliate (Limetree) possessing and using Hovensa's storage and terminal facilities without ABR—a development "very much in opposition to" ABR's goal "for the transfer and use of those same assets."

*Id.*

> Simply put, at the heart of Plaintiffs' claims in Counts I, V, and VII is that Defendants deliberately acted to thwart ABR's efforts to acquire the Hovensa assets, and Plaintiff now seeks recompense for the loss that it suffered.

*Id.* at *17.

Thus, in its opinion on the first motion to dismiss, the Court focused upon the linkage between ABR and the Hovensa assets in terms of ABR's efforts to acquire the assets.[1]

---

[1] ABR continues to disagree with the Court's analysis of "interests" in its decision on the first motion to dismiss and preserves all objections to same.

4

**C. SEPT. 19, 2018 – DEFENDANTS FILE A MOTION TO DISMISS THE SECOND AMENDED COMPLAINT.**

On September 19, 2018, defendants moved (Doc. No. 238) to dismiss ABR's second amended complaint. Defendants characterized the Court's ruling on the first motion to dismiss as holding that "any claims seeking ABR's expected benefits from the Hovensa acquisition are precluded by the bankruptcy court's sale order (the 'Sale Order'), which sold the facility to ArcLight's affiliate free and clear of any competing interests." Doc. No. 238 at ECF p.7. Defendants further asserted that this Court explained in its opinion that "the Sale Order prohibits ABR from pursuing claims involving a 'clear factual connection' or 'linkage between the claims . . . and the Hovensa assets.'" Doc. No. 238 at ECF p.10. Defendants repeated this claim by stating "[t]he overarching factor is simply whether there is a linkage or connection between Plaintiff's claims and the purchased assets." Doc. No. 238 at ECF p.12 (internal quotation marks omitted). Finally, defendants argued that

> The only "value" of the information ABR ever describes is that it supposedly enabled Defendants to acquire the Hovensa facility. (See ¶ 68 ("The Confidential Information provided by ABR allowed Defendants to fully understand the economic opportunities afforded by the facility and to have access to a fully developed plan to realize those opportunities. With that information, they could do the deal . . . .") If that is the "value" that ABR seeks to recover— i.e., the value of the acquisition—then, again, its claims amount to an interest in the acquisition and are precluded by the Sale Order.

Doc. No. 238 at ECF p.13.

5

### D. Oct. 18, 2018 – ABR responds to Defendants motion to dismiss the second amended complaint.

ABR responded (Doc. No. 240) to the second motion to dismiss by emphasizing the allegations in the second amended complaint that (a) described the "high value" of the confidential information to defendants; (b) alleged that the information allowed defendants to avoid $700 million in liabilities; and (c) alleging that despite initially having no interest in purchasing the Hovensa assets, with the benefit of ABR's confidential information, defendants saw the economic value in the assets and were able to completely recoup their entire cost of investment in the assets in 16 months. Doc. No. 240 at ECF pp.9–10. In footnote 8 of ABR's opposition (Doc. No. 240 at ECF p.11), ABR further stated,

> In any event, to support these allegations, ABR will present two damages models to support these claims which will address (i) the lost value to ABR and (ii) the increased value to Arclight from defendants' misappropriation of the information. Together these models provide a complete picture setting out how ABR was harmed, and how Arclight benefitted, by the concerted actions of defendants, working together to flagrantly violate the NDAs.

It is in the above context that ABR stated, "ABR's damages [for Counts II, IV, and VI] are not tied to the Hovensa assets and are based upon the respective value of [the Confidential Information] to ABR and ArcLight." Dkt. No. 240 at ECF p.12.[2] But ABR also continued to explain its position:

> There are several ways of measuring the damages defendants inflicted upon ABR. First, there is the lost value

---

[2] In the latest briefing order (Doc. No. 358), the Court has asked ABR to state its current position regarding this specific quotation.

6

> to ABR once the defendants began using ABR's confidential information. Second, there is the value gained by defendants once they began using ABR's confidential information. Third, there is the value of the confidential information itself. None of these measures of damage are linked to Limetree Bay's ultimate acquisition of Hovensa and, indeed, the damage to ABR occurred irrespective of Hovensa declaring bankruptcy and defendants/Limetree Bay acquiring the Hovensa assets.

Doc. No. 240 at ECF p.12.

To be clear, "linked" as used in the preceding quotation was used in the manner that the Court used it in its opinion as explained by Judge Lewis at the November 27, 2023 hearing. That is, the *claims* are not linked to the assets and are independent of ABR's inability to acquire those assets because of defendants' conduct.[3] But, the damages ABR will prove are tangentially related to the assets because the assets form the basis for measuring the damages.

### E. JUNE 30, 2021 – THE COURT RULES ON THE MOTION TO DISMISS THE SECOND AMENDED COMPLAINT.

On June 30, 2021, the Court denied the defendants motion to dismiss the second amended complaint. Doc. No. 260. In doing so, the Court included footnote three of its opinion, which stated,

> The Court is mindful that, as Defendants point out, Plaintiff continues to make references to potential profits from the Hovensa opportunity throughout its Second Amended Complaint (*See, e.g.*, Dkt. No. 227 ¶ 108) (alleging that Defendants "clear[ed] the field for a deal" in order to keep all the profits from the Hovensa transaction for themselves."); *see also id.* ¶¶ 53, 131, 202. Because the

---

[3] As noted in the section describing Dr. House's report, his valuation does *not* include the residual value of the assets.

7

> Court has already ruled that the Sale Order precludes Plaintiff from pursuing claims that involve a linkage or connection to the Hovensa assets, the Court construes these references as being for contextual purposes, rather than a description of the damages which Plaintiff seeks. In other words, Plaintiff may only seek the value of the Confidential Information—not the value of the Hovensa acquisition.

Prior to receiving the Court's opinion, and as stated in its opposition to the second motion to dismiss (Doc. No. 240 at ECF p.12), ABR believed that there were at least three ways in which it could demonstrate the value of the confidential information. One such method was based upon how defendants changed their position once they had the confidential information. Prior to having ABR's confidential information, defendants passed on the opportunity to attempt to acquire the assets. In other words, they were not even willing to offer a single dollar for the Hovensa assets. But after obtaining access to ABR's confidential information, defendants realized that ABR had a goldmine on its hands. Suddenly, they were willing to pay $190 million to purchase the Hovensa assets and invest hundreds of millions more—all with a 100% return on investment in a 16-month period. In other words, the confidential information was valuable enough that defendants were now willing to risk hundreds of millions of dollars. (And hedge funds like ArcLight do not invest unless they have determined that there is an acceptable "multiple" for their return on the investment.)

ABR interpreted footnote 3 as barring damages that were linked to the value of the assets in any manner. As a result, it believed that the Court would not allow a damages theory based upon defendants' altered view of the value of the assets pre-

8

and post-NDA-breach even if that theory was used to quantify the value of the confidential information. Accordingly, ABR retained an expert in intellectual property valuation to attempt to quantify the damages.

Ultimately, because presenting such a damages model hamstrung ABR too heavily and because ABR could see that the expert phase of the litigation was going to be delayed by attacks on the intellectual property expert's opinion, ABR decided to withdraw that expert, stipulate to the dismissal of the surviving counts, and appeal the Court's rulings on the motions to dismiss. However, at the November 27, 2023 hearing in this matter, the Court clarified that its rulings on the motion to dismiss had been focused upon the nature of the *claims* that were asserted and not the damages that might flow from such claims. Thus, claims related to ABR being denied the opportunity to purchase the assets were barred; but, claims based upon alleged misuse of confidential information were not barred. The Court indicated that its prior rulings were silent as to what damages might be recoverable. With this clarification, ABR felt that it could return to the method of damages calculations it had argued (in its opposition to the second motion to dismiss) that it could use to quantify the value of the confidential information. Accordingly, it withdrew its proposed stipulation of dismissal.

### ABR'S DAMAGE THEORIES

#### A. COUNT II – BREACH OF CONTRACT

The contracts between ABR and the defendants are governed by Delaware law. *Atlantic Basin Refining, Inc. v. ArcLight Cap. Partners, LLC*, Case No. 1:15-cv-0071,

2018 WL 3431974, at *22 (D.V.I. July 16, 2018). Under Delaware law, the measure of damages for breach of contract is based upon the place of performance of the contract. *Stentor Elec. Mfg. Co. v. Klaxon Co.*, 125 F.2d 820, 822 (3d Cir. 1942); *Canadian Indus. Alcohol Co. v. Nelson*, 38 Del. 26, 188 A. 39, 53 (1936); *Tisch Fam. Found., Inc. v. Texas Nat. Petroleum Co.*, 336 F. Supp. 441, 443 (D. Del. 1972); *Cooper v. Ross & Roberts, Inc.*, 505 A.2d 1305, 1307 (Del. Super. Ct. 1986). Here, the place of performance was the Virgin Islands and therefore Virgin Islands law regarding damages for breach of contract applies.

Generally speaking, there are several remedies available for breach of a contract recognized under Virgin Islands law. The non-breaching party may recover its "expectation interest"; its "reliance interest"; or its "restitution interest." *See* RESTATEMENT (SECOND) OF CONTRACTS §344. In this case, the terms of both NDAs preserved "all legal remedies" as potential remedies for breach. *See* Doc. No. 227-2 at ECF p. 3 (NDA with ArcLight) ("all legal remedies"); Doc. No. 227-1 at ECF p.2 ("without limiting any rights and remedies otherwise available"). Out of an abundance of caution, at this stage ABR intends to proceed based upon the alternative theories of recovering its expectation interest or its restitution interest.[4]

---

[4] Rule 8(d)(2) of the Federal Rules of Civil Procedure allows a party to plead inconsistent or alternative claims in a single complaint. While ABR cannot recover under more than remedy, it need only elect a remedy after the jury has returned a verdict and prior to entry of final judgment. *Weft, Inc. v. G.C. Inv. Associates*, 630 F.Supp. 1138 (E.D.N.C. 1986) *aff'd* 822 F.2d 56 (4th Cir. 1987); *United Roasters, Inc. v. Colgate-Palmolive Co.*, 649 F.2d 985, 991 (4th Cir. 1981); *Bradbury v. Dennis*, 368 F.2d 905, 908 (10th Cir. 1966) (plaintiff permitted to pursue alternative statutory and common law remedies); *Bachorz v. Miller-Forslund*, 703 F.3d 27, 34–35 (1st Cir. 2012)

1. **EXPECTATION INTEREST**

ABR seeks the damages that flow from the breach of its NDA/confidentiality agreements. Under Virgin Islands law, "[c]ontract damages are ordinarily based on the injured party's expectation interest and are intended to give him the benefit of his bargain by awarding him a sum of money that will, to the extent possible, put him in as good a position as he would have been in had the contract been performed." RESTATEMENT (SECOND) OF CONTRACTS § 347, comment a.[5] The purpose of contract damages is to give the contracting party the benefit of its bargain and award a sum of money that will, to the extent possible, put it in as good a position as it would have been had the contract been performed. *Elbrecht v. Carambola Partners, LLC*, Case No. 1:08-CV-00021, 2010 WL 2813614, at *6 (D.V.I. July 16, 2010).

Damages based upon an expectation interest are measured by:

(a) the loss in the value to [to the plaintiff] of the other party's performance caused by its failure or deficiency, plus

(b) any other loss, including incidental or consequential loss,[6] caused by the breach, less

---

(recognizing that a party may plead for specific performance and reimbursement as alternative theories for relief).

[5] Section 347 was adopted by this Court in *GEC, LLC v. Argonaut Ins. Co.*, Case No. 1:18-CV-58, 2023 WL 5528575, at *5 (D.V.I. Aug. 28, 2023) (Krause, J.).

[6] "Virgin Islands courts have allowed parties to recover damages for 'consequential loss [ ] caused by [a contract] breach.'" *GEC, LLC v. Argonaut Ins. Co.*, Case No. 1:18-CV-58, 2023 WL 5528575, at *6 (D.V.I. Aug. 28, 2023) (Krause, J.) (quoting *Creative*

  (c)  any cost or other loss that he has avoided by not having to perform.

In this case, ABR will prove that had defendants adhered to the requirements of the NDAs, there would have been one of two outcomes: (1) ABR and ArcLight would have proceeded as planned and ABR would have ended up owning 100% of the refinery and 50% of the terminal; or (2) ABR would have found a different investor that would have agreed to substantially the same terms as the agreement between ABR and ArcLight. Under either scenario, because ArcLight was bound by the NDA, it could not have proceeded to purchase the refinery or terminal on its own. Under this theory, ABR's damages are exactly the same as the damages as if it had acquired the refinery and terminal but those damages are not based upon the "loss of the deal;" rather, these damages represent the loss in value to ABR caused by defendants' breach.

**2. RESTITUTION INTEREST**

A "restitution interest" represents the plaintiff's interest in having restored to it any benefit it has conferred upon the breaching party. RESTATEMENT (SECOND) OF CONTRACTS § 344(c). As justice requires, the measure of the restitution interest may be either the reasonable value to the other party of what it received in terms of what it would have cost him to obtain it from a person in the plaintiff's position; *or* the extent to which the other party's property has been increased in value or his other interests advanced. RESTATEMENT (SECOND) OF CONTRACTS § 371. "[R]estitution

---

*Minds, LLC v. Reef Broad., Inc.*, Case No. ST-11-CV-131, 2014 WL 4908588, at *7 n.36 (V.I. Super. Sept. 24, 2014) (citation omitted)).

damages will require the party in breach to disgorge the benefit received by returning it to the party who conferred it." *ATACS Corp. v. Trans World Commc'ns, Inc.*, 155 F.3d 659, 669 (3d Cir. 1998). The objective of restitution "is not the enforcement of contracts through the protection of an injured party's expectation or reliance interests, but is instead rooted in common notions of equity through the protection of the injured's restitution interest." *Id.*

Under a restitution theory, ABR's damages are measured by disgorgement. *Id.* Under that theory, ABR's damages are actually greater because defendants ended up with 100% of the terminal rather than only 50%. Disgorgement requires that they disgorge the value of what they improperly obtained: 100% of the terminal plus 100% of the refinery. Dr. House opined that the present value of the refinery was $1.9278 billion and the present value of 50% of the terminal was $1.0216 billion. Therefore, the disgorgement figure is (2 x 1.0216 billion) plus $1.9278 billion for a total of $3.971 billion.[7]

### B. COUNT IV – MISAPPROPRIATION OF CONFIDENTIAL INFORMATION

The Court has already found that ABR's misappropriation claim is governed by Delaware law. *Atlantic Basin Refining,* at *22 (D.V.I. July 16, 2018). However, as

---

[7] As Dr. House makes clear throughout his report, he adopted "conservative" assumptions throughout his analysis. The conservative nature of his analysis is perhaps best reflected by the fact that in the time from when defendants' affiliated companies purchased the complex in 2016 and the July 2021 bankruptcy, the affiliates put more than $4 billion into the complex. *See* St. Croix Source, Jan. 25, 2022, Dr. House's present value of the complex was based upon projections for 22 years of operations and it is unfathomable that the defendants would invest $4 billion in order to have an asset with a present value lower than the investment.

noted, under Delaware law, damages are considered substantive law and the law of the place of performance of the contract governs. Although there do not appear to be Virgin Islands cases discussing damages available for common law misappropriation of confidential information, this Court found that the common law claim of misappropriation under Delaware law is based upon a wrongful exertion of "dominion" over the confidential information. *Atlantic Basin Refining,* 2018 WL 3431974, at *24. The tort of conversion also requires an intentional exercise of dominion or control over a chattel that seriously interferes with the right of another to control it. *Ainger v. Great Am. Assurance Co.*, Case No. 1:20-cv-0005, 2022 WL 4379794, at *16 (D.V.I. Sept. 22, 2022) (Lewis, J.). Thus, misappropriation of confidential information is a form of conversion or is at least analogous to conversion.

The common law of conversion as expressed in the RESTATEMENT (SECOND) OF TORTS § 222A has been adopted in the Virgin Islands after application of a "*Banks* analysis." *Ainger*, 2022 WL 4379794 at *16. The remedy for conversion may require the misappropriating party to pay the full value of the chattel. *Isaac v. Crichlow*, 63 V.I. 38, 59 (Super. Ct. 2015) (citing RESTATEMENT (SECOND) OF TORTS §222A. *See also* RESTATEMENT (SECOND) OF TORTS § 222A, comment e. Given the similarity (misappropriation appears to be a more specific form of conversion), the damages for conversion logically apply to a claim of misappropriation of confidential information.[8]

---

[8] The Virgin Islands Uniform Trade Secrets Act allows damages for "both the actual loss caused by misappropriation and the unjust enrichment caused by misappropriation that is not taken into account in computing actual loss." 11 V.I.C. § 1004(a). By analogy, damages for common law misappropriation would also allow

Case: 1:15-cv-00071-WAL-EAH Document #: 362 Filed: 01/30/24 Page 15 of 16

Consequently, restitution damages as described under the Breach of Contract section of this memorandum are also available for the misappropriation count.

### C. COUNT VI – *QUANTUM MERUIT*

"'A recovery in *quantum meruit* is based on an implied-in-law contract.'" *Terrace v. Williams*, 52 V.I. 225, 246 (2009) (Swan, J. concurring) (quoting *Int'l Data Prod. Corp. v. United States*, 492 F.3d 1317, 1325 (Fed. Cir. 2007)). An action brought in *quantum meruit* sounds in restitution. *Univ. of Virgin Islands v. Petersen-Springer*, 232 F. Supp. 2d 462, 471 (D.V.I. 2002) citing *Hershey Foods Corp. v. Chapek*, 828 F.2d 989, 999 (3d Cir. 1987). Accordingly, the same restitution damages described under "Restitution Interest" described under the Breach of Contract discussion (above) apply to the *quantum meruit* claim.

Respectfully submitted,

Atlantic Basin Refining, Inc.

**Dated**: January 30, 2024

  /s/ Andrew C. Simpson
By: Andrew C. Simpson, Esq.
VI Bar No. 451
**ANDREW C. SIMPSON, P.C.**
2191 Church Street, Suite 5
Christiansted, VI 00820
Tel: 340.719.3900
asimpson@coralbrief.com

Joseph P. Klock, Jr., Esq.
FBN 156678 (admitted PHV)
**RASCO KLOCK PEREZ NIETO**

---

either expectation or restitution damages. Restitution is also a remedy for the crime of conversion of government property. *See* 14 V.I.C. § 895(b).

        2555 Ponce De Leon Blvd., Suite 600
Coral Gables, Florida 33134
Telephone: 305.476.7105
Facsimile: 305.675.7707
Jklock@rascoklock.com

Attorneys for Plaintiff, Atlantic Basin Refinery, Inc.