# UNITED STATES DISTRICT COURT
## DISTRICT COURT OF THE VIRGIN ISLANDS
### DIVISION OF ST. CROIX

ATLANTIC BASIN REFINING, INC.,

                                Plaintiff,

          v.

ARCLIGHT CAPITAL PARTNERS, LLC and
JP ENERGY PARTNERS, LP,

                            Defendants.

Case No. 15 Civ. 0071 (WAL) (EAH)

## DEFEENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFF'S RESPONSE TO THE COURT'S ORDER DIRECTING CLARIFICATION OF PLAINTIFF'S DAMAGES THEORIES

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION .................................................................................................1

II.   PROCEDURAL BACKGROUND.......................................................................3

    A.    The Court's Decision On The First MTD Unequivocally Bars Claims
        Linked To The Hovensa Assets ................................................................3

    B.    ABR Stresses That Its Remaining Claims Are Not Linked To The
        Hovensa Assets And Do Not Amount to Lost Profits .............................5

    C.    ABR Repeatedly Shifts Its Theories of Damages....................................6

III.  ARGUMENT .......................................................................................................7

    A.    ABR'S REFORMULATED CLAIMS ARE TIED TO THE HOVENSA
        ASSETS AND THUS PRECLUDED BY THE SALE ORDER............................8

        1.    ABR's Reformulated Claims Are Tied To The Hovensa Assets................8

        2.    ABR's Reformulated Claims Are Precluded By The Sale Order .............11

    B.    ABR CANNOT RECOVER LOST PROFITS DAMAGES THROUGH
        ITS REMAINING CLAIMS...................................................................15

        1.    Breach of Contract Claim ........................................................16

        2.    Misappropriation Claim...........................................................19

        3.    *Quantum Meruit* Claim ...........................................................20

IV.   CONCLUSION..................................................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*ATACS Corp. v. Trans World Commc'ns, Inc.*,
 155 F.3d 659 (3d Cir. 1998)..................................................................18

*Automated Precision, Inc. v. Pare*,
 631 F. Supp. 3d 185 (D. Del. 2022)........................................................15

*Beard Rsch., Inc. v. Kates*,
 8 A.3d 573 (Del. Ch.), *aff'd sub nom. ASDI, Inc. v. Beard Rsch., Inc.*, 11 A.3d
 749 (Del. 2010) .....................................................................................20

*Bell v. USAA Cas. Ins. Co.*,
 2009 WL 2524351 (D.V.I. Aug. 14, 2009)................................................15

*Bennington Foods, L.L.C. v. St. Croix Renaissance Grp., L.L.L.P.*,
 2010 WL 1608483 (D.V.I. Apr. 20, 2010) ..............................................18

*Chemipal Ltd. v. Slim-Fast Nutritional Foods Int'l, Inc.*,
 350 F. Supp. 2d 582 (D. Del. 2004).......................................................18

*Enzo Life Scis., Inc. v. Adipogen Corp.*,
 82 F. Supp. 3d 568 (D. Del. 2015).........................................................15

*Fishkin v. Susquehanna Partners, G.P.*,
 340 F. App'x 110 (3d Cir. 2009) ............................................................19

*Folger Adam Sec., Inc. v. DeMatteis/MacGregor JV*,
 209 F.3d 252 (3d Cir. 2000)...........................................................12, 15

*Gener8, LLC v. Castanon*,
 2023 WL 6381635 (Del. Ch. Sept. 29, 2023) .........................................19

*In re Christ Hosp.*,
 502 B.R. 158 (Bankr. D.N.J. 2013), *aff'd*, 2014 WL 4613316 (D.N.J. Sept. 12,
 2014) ..............................................................................................12, 14

*In re Farmland Indus., Inc.*,
 376 B.R. 718 (Bankr. W.D. Mo. 2007)....................................................15

*In re Trans World Airlines, Inc.*,
 322 F.3d 283 (3d Cir. 2003).................................................................12

*Precision Indus., Inc. v. Qualitech Steel SBQ*,
 327 F.3d 537 (7th Cir. 2003) ...............................................................12

*SIGA Techs., Inc. v. PharmAthene, Inc.*,
   67 A.3d 330 (Del. 2013) .............................................................................18

*Stallworth Timber Co. v. Triad Bldg. Supply*,
   968 F. Supp. 279 (D.V.I. 1997) ................................................................18

*USA Mach. Corp. v. CSC, Ltd.*,
   184 F.3d 257 (3d Cir. 1999) ....................................................................20

*VICI Racing, LLC v. T-Mobile USA, Inc.*,
   763 F.3d 273 (3d Cir. 2014) ....................................................................18

## STATUTES

11 U.S.C. § 363(f).................................................................................. *passim*

## TREATISES

Restatement (Second) of Contracts (1981)
   § 344...........................................................................................................18
   § 345...........................................................................................................19
   § 352...........................................................................................................18

## OTHER AUTHORITIES

*Bankruptcy Judge Approves $62 Million Limetree Bay Sale To Jamaican
   Company*, Reuters (Dec. 22, 2021)...........................................................18

## I.     INTRODUCTION

After changing its damages position three times over the course of this case, Plaintiff Atlantic Basin Refining, Inc. ("ABR") now proposes to upcycle a 2018 damages theory based on the allegedly "lost" profits from assets that were purchased "free and clear" in a bankruptcy sale and that have no connection to the remaining claims. ABR's latest attempt to seek such profits must be rejected. ABR initially sought nearly $3 billion in lost profits from the assets sold. Since then, this Court has repeatedly, and correctly, held that the Bankruptcy Court's Sale Order squarely precludes claims tied to the assets sold. Accordingly, this Court dismissed all claims it determined to be "'interests' which are 'connected to, or arise from,' the purchased Hovensa assets," and allowed only three of ABR's seven claims to go forward on the express premise that they were "*not* linked to the sold property" and thus were not "interests" connected to the assets. ABR subsequently calculated the value of the remaining claims to be $12 million and then, in a later valuation, $18 million. But now, in an opportunistic about-face, ABR reframes these claims and asserts that they entitle it to recover that *exact same* $3 billion—or perhaps even $4 billion, a number dramatically higher than it has *ever* pleaded and absent from any of its damages expert reports—based on supposed profits ArcLight or ABR could have made from the Hovensa Assets. This late-breaking request should be rejected, and ABR's claims dismissed, for two reasons.

*First*, ABR's remaining claims, as refashioned, are inherently tied to the assets and thus barred by the Sale Order. As now presented, ABR's remaining claims are the functional equivalent of the claims that the Court already dismissed, because ABR seeks to impose liability on (and collect damages from) Defendants based on the purchase of the assets—the exact theory that this Court previously rejected. ABR now rewords its damages to claim that its $3 billion injury stems not from the loss of assets but from breach of a nondisclosure agreement ("NDA") and misappropriation of confidential information ("CI") as defined in the NDA—but that does not

change the fact that ABR's theory regarding Defendants' liability (and thus any damages owed) wholly depends on Limetree's purchase of the assets.[1]  Under ABR's latest theory, had that sale not occurred, Defendants would not be liable.  That is the same "clear factual connection" between the dismissed claims and the asset sale on which this Court based its prior dismissal.  ABR not only seeks the *same* amount, or more, in lost profits that it originally sought, but also invokes the *same* expert report that it used to size lost profits (and that did not even address CI), rather than relying on the report that it commissioned to assess the value of the CI.  The remaining claims, as reformulated, are now impermissibly linked to the Hovensa Assets and constitute a collateral attack on the sale.  Consistent with this Court's decision on the first MTD, they must be dismissed.

*Second*, and separately, ABR's three remaining claims do not permit the recovery of such far-reaching damages.  These claims purport to turn on the alleged violation of the parties' NDAs and use of the CI at a time when neither party had formally committed to purchasing the assets, let alone doing so together.  Under the controlling law, if ABR prevailed on these claims, it should be able to recover only the value of the CI provided by ABR, such as, for example, the cost to develop the CI or the value of the knowledge gained from the CI—not, as ABR contends, the total profits from the assets that *may* have been acquired *in part* based on the CI exchanged.  It is telling that ABR does not cite a single analogous case in which a court awarded such profits for these claims, opting instead for a vague, generalized discussion of damages. That is an independent reason to reject ABR's new-found theory of damages.

Ultimately, ABR simply seeks to resuscitate its previously rejected claims and relitigate its entitlement to lost profits, in an end-run around this Court's prior decisions.  That improper attempt

---

[1] Defendants dispute that they misappropriated—or even received—any CI from ABR.  For purposes of this briefing, ABR's damages claim cannot stand even if their allegations were true.

to recycle its rejected theories should be denied.  And because ABR puts forth no theory of damages other than profits-based damages (and has made clear that it will pursue no other theory), the Court should dismiss the claims and close this case—just as ABR itself previously requested.

## II.    PROCEDURAL BACKGROUND

### A.    The Court's Decision On The First MTD Unequivocally Bars Claims Linked To The Hovensa Assets

In 2015, Limetree Bay Holdings LLC ("Limetree")—an affiliate of Defendants ArcLight Capital Partners, LLC ("ArcLight") and JP Energy Partners, LP ("JPE")—purchased a refinery and terminal facility (the "Hovensa Assets") through a bankruptcy proceeding.  Despite making no appearance in the bankruptcy court (either to raise objections to Limetree's acquisition or offer to buy the Hovensa Assets), ABR sued, seeking nearly $3 billion in the form of lost profits from the Hovensa Assets.  That figure was provided in the June 18, 2018 expert report of Donald House (the "House Report"), which described his assignment as follows:

> I . . . have been asked to calculate ABR's loss of the past and future profits that would have been attained absent the alleged actions on the part of ArcLight.  For purposes of this analysis, I assume that ABR could have acquired HOVENSA on terms similar to those proposed in its dealings with ArcLight.  I have been asked by legal counsel to review the available documents in this case and, to the extent possible, calculate economic damages incurred by ABR, if any.  I have assumed, for the purposes of my assigned task, that the allegations are true.  That is, ABR should have attained full ownership of the refinery and a 50% economic share of the terminal and storage facilities at St. Croix in early 2016.

Dkt. 210-1 at 1.  The House Report concluded that ABR lost profits of $2.949 billion.  *Id* at 38. The House Report does not mention CI at all, let alone estimate the value of any CI that ABR provided to Defendants or link lost profits exclusively (or at all) to the CI.

On July 16, 2018, this Court dismissed ABR's principal claims (to which its requested damages were tied) because the Bankruptcy Court's Sale Order, which sold the assets free and clear of pre-closing interests pursuant to 11 U.S.C. § 363(f), barred claims that were "linked" to

the Hovensa Assets. Dkt. 217 ("MTD #1"). Specifically, the Court dismissed with prejudice ABR's claims for tortious interference, unjust enrichment, and breach of fiduciary duty, holding that those claims constituted "interests" that are "connected to or arise from" the Hovensa Assets and the claims thereby represented a collateral attack on the Sale Order, in violation of 11 U.S.C. § 363(f). *Id.* at 25-34. In particular, the Court found a "clear factual connection between these claims—which center on the deprivation of ABR's expected earnings from the Hovensa transaction—and the sale of Hovensa's storage and terminal facilities." *Id.* at 25 (citation omitted). Because the claims "portray[ed] a chain of events which culminated in Defendants' affiliate (Limetree) possessing and using Hovensa's storage and terminal facilities," and the "depriv[ation] of the benefits [ABR] anticipated . . . form[ed] the bases of [ABR's] claims," the claims had an "undeniable linkage" to the assets and were barred by the Sale Order. *Id.* at 29-30 (citations and alterations omitted). The Court underscored that ABR's failure to object or intervene in the bankruptcy sale was "properly deemed consent to releasing its claims that were derivative of the purchased assets." *Id.* at 34 (citation omitted).

The Court found, however, that the breach of contract, misappropriation, and *quantum meruit* claims did not present the same issue, as they were "not linked to the sold property . . . but rather are focused" on the NDAs between ABR and Defendants that provided that each party would treat as confidential certain information disclosed in connection with exploring the Hovensa acquisition. *Id.* at 35; *see id.* at 35-37. Nonetheless, the Court dismissed ABR's breach of contract and misappropriation claims for failure to state a claim and dismissed with prejudice ABR's claim for injunctive relief. *See id.* at 39-47. Finally, the Court allowed ABR's *quantum meruit* claim to go forward in the alternative to its NDA-based contract claim. *See id.* at 47-51.

**B.    ABR Stresses That Its Remaining Claims Are Not Linked To The Hovensa Assets And Do Not Amount to Lost Profits**

On August 15, 2018, ABR filed the Second Amended Complaint ("SAC"), renewing Counts II (breach of contract, based on the NDA), IV (misappropriation of CI), and VI (*quantum meruit*).  Dkt. 227.  On September 19, 2018, Defendants moved to dismiss.  Dkt. 237.  In its opposition brief, ABR maintained that the damages it sought from the remaining claims "are not tied to the Hovensa assets and are based upon the respective value of that [allegedly misappropriated] information."  Dkt. 240 ("Opp. to MTD #2") at 12.  ABR listed ways it would measure damages and stated that "[n]one of these measures of damage are linked to Limetree Bay's ultimate acquisition of Hovensa and, indeed, the damage to ABR occurred irrespective of Hovensa declaring bankruptcy and defendants/Limetree Bay acquiring the Hovensa assets."  *Id.*

On June 30, 2021, the Court denied Defendants' motion to dismiss the SAC.  Dkt. 260 ("MTD #2").  As relevant here, the Court held that the Sale Order did not bar ABR's remaining claims because, in its view, "the damages that Plaintiff seeks in Counts II, IV, and VI do not encompass Plaintiff's loss of the Hovensa opportunity" and "relate to the value of the Confidential Information rather than the potential value of the Hovensa opportunity."  *Id.* at 8-9.  In footnote 3 of the opinion, the Court emphasized that ABR could not pursue claims linked to the assets:

> Plaintiff continues to make references to potential profits from the Hovensa opportunity. . . .  Because the Court has already ruled that the Sale Order precludes Plaintiff from pursuing claims that involve a linkage or connection to the Hovensa assets, the Court construes these references as being for contextual purposes, rather than a description of the damages which Plaintiff seeks.  In other words, Plaintiff make only seek the value of the Confidential Information—not the value of the Hovensa acquisition.

*Id.* at 9 n.3.  The Court upheld the remaining claims as so construed.  *Id.* at 12-20.

### C.    ABR Repeatedly Shifts Its Theories of Damages

ABR then proceeded to repeatedly propose, and then withdraw, various theories of damages.  First, ABR served an expert report, by David Lerman, that sized, for the first time, the value of the CI (the "Lerman Report").  This report, dated April 14, 2022, opined that the market value of the CI that ABR provided as of July 9, 2015 was $12 million.  Lerman Rpt. at 8.  The Lerman Report estimated the value of the CI as "part of a going-concern business enterprise" based on the "value of time/effort expended" by two executives who developed the CI.  *Id.* at 11-22.

After Defendants indicated their intent to challenge the validity of the Lerman Report, ABR withdrew it and supplemented its initial disclosures to state that it would instead rely on its principals as fact witnesses to substantiate a new damages claim of $18 million.  At a status conference on October 4, 2022, ABR stated that its damages theory remained focused on the value of the CI.  Dkt. 333 (Oct. 4, 2022 Tr. at 17-18) (Plaintiff's Counsel agreeing that "value of damages is still the value of . . . confidential information").

Then, after Defendants were granted leave to take discovery of ABR's principals with respect to ABR's latest damages theory, on November 1, 2022, ABR again amended its disclosures.  In an apparent attempt to sidestep the ordered discovery, ABR resumed its reliance on its *initial* model to seek the $2.9 billion in lost profits estimated by the House Report.  *See* Dkt. 334.  ABR acknowledged at a December 14, 2022 status conference that the Court had previously deemed such a model "not a viable theory," and expressed interest in obtaining a final judgment in order to appeal the ruling dismissing their other claims.  Dkt. 343 (Dec. 14, 2022 Tr. at 4, 38).

On January 26, 2023, the parties filed a joint stipulation for entry of judgment in favor of Defendants on the remaining claims.  Dkt. 346 at 4.  On August 18, 2023, the Court held a conference on the joint stipulation at which it stated that its prior holding that "claims that are

linked to the assets are barred" did not reach the question of which *damages* are barred.  Aug. 18, 2023 Tr. at 25-29.  That day, ABR withdrew the joint stipulation.  Dkt. 351.

On December 5, 2023, the Court requested briefing to clarify ABR's theory of damages. Dkt. 358 ("Order").  It directed that ABR "state whether [its] current position remains the same" as stated in its opposition to the second MTD, in which it proclaimed that its damages "are not tied to the Hovensa assets."  *Id.* at 2-3 (citation omitted).  If ABR's position differed "in any respect," the Court directed that ABR: (1) "state how it is different"; (2) "describe with specificity its damages theories and methodologies" for each claim; and (3) "brief whether the claims . . . constitute Title 11 U.S.C. § 363(f) 'interests' that are 'connected to, or arise from,' the purchased assets . . . as a result of Plaintiff's theories of damages," explaining such arguments "in detail."  *Id.*

On January 30, 2024, ABR filed its opening brief.  Dkt. 362 ("Pl. Br.").  In it, ABR states that it has "reverted" to its damages claim as described in its opposition to the second MTD.  *Id.* at 1.  Relying on the House Report, ABR now again seeks the $2.9 billion in the lost profits ABR believes it should have received had it purchased the assets—but now reframed as profits ABR purportedly would have received absent the alleged breach of the NDA or, alternatively, $4.0 billion in profits that Defendants purportedly stood to (but never did) receive from the acquisition. *See id.* at 12-15.  In reality, Defendants lost millions of dollars on the Hovensa Assets.

## III.    ARGUMENT

ABR's brief confirms that it is simply seeking to transform its remaining claims into its dismissed ones, and to attempt once more to target the integrity of the Hovensa Assets sale and relitigate its entitlement to lost profits from those assets.  The Court should dismiss ABR's claims, for two reasons:  *First*, ABR's remaining claims, as refashioned, are barred by the Sale Order because ABR itself now links them to the Hovensa Assets and they thus constitute an impermissible collateral attack on the Sale Order.  *Second*, ABR's remaining claims simply do not

permit recovery of such sweeping, profits-based damages because ABR cannot establish as a matter of law the requisite connection between the lost profits and the remaining claims.

### A. ABR'S REFORMULATED CLAIMS ARE TIED TO THE HOVENSA ASSETS AND THUS PRECLUDED BY THE SALE ORDER

ABR suggests that it has "reverted" to its damages claim from its opposition to the second MTD, Pl. Br. 1, and that its remaining claims "are not linked to the assets and are independent of ABR's inability to acquire those assets," *id.* at 7. This is wrong. As explained below, ABR's current formulation of its remaining claims is that they are fully dependent on ABR's ability to acquire the assets and encompass the loss of the Hovensa opportunity. ABR's latest position contradicts the very premise upon which ABR avoided dismissal of those claims at the second MTD. There, ABR argued that "the damage to ABR occurred irrespective of Hovensa declaring bankruptcy and defendants/Limetree Bay acquiring the Hovensa assets." Opp. to MTD #2 at 12. On that basis, the Court allowed those claims to go forward, because "the damages that Plaintiff seeks in Counts II, IV, and VI do *not* encompass Plaintiff's loss of the Hovensa opportunity." MTD #2 at 8-9 (emphasis added). But, as refashioned, ABR's claims are now the exact opposite— as with the claims already dismissed, they are undeniably linked to the assets and premised on ABR's inability to acquire the assets and receive the related profits. Because ABR's claims, as reformulated, constitute "interests" that are connected to or arise from the Hovensa Assets, the Court should dismiss the claims as barred by the Sale Order.

#### 1. ABR's Reformulated Claims Are Tied To The Hovensa Assets

ABR argues that it "has not changed its damage theory" from the theory asserted on the second MTD. Pl. Br. 1. To support this position, ABR claims that, in its opposition to the second MTD, it sought damages "tangentially related to the assets," *id.* at 7, including, purportedly, the lost profits damages that it seeks now.

This is flatly contradicted by the record.  In briefing the second MTD, ABR recognized that this Court's first MTD decision barred the pursuit of any claims that depended on Defendants' acquisition of the Hovensa Assets at the bankruptcy sale.  *See* MTD #1 at 34-37 (dismissing ABR's principal claims because Sale Order precluded claims "linked to the sold property," and ABR's failure to intervene in the bankruptcy proceedings served as "consent to releasing its claims that were *derivative of the purchased assets*" (emphasis added)).  Accordingly, ABR characterized its remaining claims as *not* depending on Defendants' acquisition of the Hovensa Assets.  ABR made multiple representations in its opposition brief to this effect, including:

- Listing "several ways" of measuring damages, including "the value of the confidential information itself," and stating that "*[n]one* of these measures of damages *are linked to Limetree Bay's ultimate acquisition of Hovensa* and, indeed, *the damage to ABR occurred irrespective of Hovensa declaring bankruptcy* and defendants/Limetree Bay acquiring the Hovensa assets," Opp. to MTD #2 at 12 (emphasis added);

- Omitting any reference to the House Report, which sized the lost profits from the Hovensa Assets, and stating that ABR instead "*will* present two damages models . . . which will address (i) the lost value to ABR and (ii) the increased value to Arclight from defendants' misappropriation of the information," *id.* at 11 n.8 (emphasis added);

- Maintaining that its damages "are not tied to the Hovensa assets and are based upon the respective value of that information to ABR and ArcLight," *id.* at 12; and

- Stating that its opposition brief was "limited to explaining why Counts II, IV, and VI were not released by the bankruptcy sale using the reasoning articulated by the Court" in the first MTD decision, *id.* at 12 n.9.

The Court's decision on the second MTD confirms that ABR may only seek damages arising from the CI exchanged by the parties—and not the ultimate acquisition.  The Court noted that Defendants argued that "[b]ecause ABR has failed to identify any theory of damages other than its alleged loss of the Hovensa opportunity—which is precluded by the Sale Order—its claims must be dismissed."  MTD #2 at 8 (citation omitted).  The Court then explained that, in response, ABR contended that its damages "*are not tied to the Hovensa assets* and are based upon the respective value of [the Confidential Information] to ABR and ArcLight."  *Id.* (citation omitted)

(emphasis added). Based on that representation, the Court found that the remaining claims could go forward because "the damages that Plaintiff seeks in [those counts] do not encompass Plaintiff's loss of the Hovensa opportunity, but instead arise from Defendants' alleged breach of the NDA resulting from the alleged improper use of Confidential Information." *Id.* In other words, this Court allowed those counts to go forward only because of Plaintiffs' unequivocal representation that the claims did "not encompass [the] loss of the Hovensa opportunity." *Id.* The Court reaffirmed that it had "already ruled that the Sale Order precludes Plaintiff from pursuing claims that involve a linkage or connection to the Hovensa assets," *id.* at 9 n.3, and upheld ABR's claims precisely because ABR's claims—as then presented—"relate[d] to the value of the Confidential Information *rather than the potential value of the Hovensa opportunity*," *id.* at 9 (emphasis added). The Court thus construed any references to lost profits as "being for contextual purposes, rather than a description of the damages." *Id.* at 9 n.3.

ABR's subsequent filing of the Lerman Report and disclosures supporting its claims of $12 million and $18 million in damages from use of the CI reinforces that, consistent with the Court's decision on the first MTD, ABR's claims could not be tied to the assets and ABR could seek damages based on the information exchanged between the parties, not the ultimate acquisition.

ABR's position in its most recent brief directly contradicts both its prior representation that its claims do not encompass the loss of the Hovensa Assets and this Court's order. Now, ABR seeks damages of the $2.9 billion in profits it purportedly would have received *from the Hovensa Assets* absent the alleged breach of the NDA or, in the alternative, the $4.0 billion in profits that Defendants purportedly stood to receive *from the Hovensa Assets*. Pl. Br. 12-15. That is the exact theory that ABR assured the Court it was *not* pursuing—that, as a result of Defendants' actions, Limetree was able to purchase the Hovensa Assets, and ABR was deprived of the profits from

- 10 -

those assets. *See* Aug. 18, 2023 Tr. at 17 (Plaintiff's counsel: proposed damages "essentially calculated the exact same way as the damages we were seeking in the dismissed counts"). And that theory is unequivocally precluded by this Court's decision on the first MTD, where it held that ABR could not pursue claims "center[ed] on the deprivation of ABR's expected earnings from the Hovensa transaction," MTD #1 at 25, and "undeniabl[y] link[ed] to the property being sold," *id.* at 30 (citations omitted).

ABR vaguely asserts that its claims are "not linked to the assets" and "independent of ABR's inability to acquire those assets." Pl. Br. 7. But despite this Court's clear instruction that ABR describe "with specificity" why its damages are "not tied" to the Hovensa Assets, Order at 2, ABR provides no such explanation. Nor could it. The lost profits that ABR now seeks arise directly and exclusively from the Hovensa Assets; it argues that, but for Defendants' alleged breach of the NDA and misappropriation of the CI, Defendants *would not have purchased* those assets—and thus ABR was deprived of the profits it would have gained by purchasing those assets instead. There is therefore an "undeniable linkage between Plaintiff's allegations . . . and the purchased Hovensa assets." MTD #1 at 26 (citation omitted).[2]

### 2. ABR's Reformulated Claims Are Precluded By The Sale Order

ABR entirely sidesteps the Court's directive to "brief whether the claims in Counts II, IV, and VI constitute Title 11 U.S.C. § 363(f) interests that are connected to, or arise from, the

---

[2] ABR suspiciously distorts its own language from the opposition brief on the second MTD, asserting that, when it stated that none of its proposed damages were "linked" to the acquisition, it used the word "linked" "in the manner that the Court used it in its opinion as explained by Judge Lewis at the November 27, 2023 hearing." Pl. Br. 7. This is a highly implausible, and opportunistic, reading. ABR filed its opposition brief five years before the hearing. At the hearing, Plaintiff's counsel expressed *surprise* at the Court's description of its holding and withdrew the stipulation of dismissal based on what it learned, making it improbable that ABR previously used "linked" in the same manner five years earlier. *See* Aug. 18, 2023 Tr. at 28-29 ("I think we can withdraw the stipulation because obviously we did misinterpret your order.").

purchased assets . . . as a result of Plaintiff's theories of damages." Order at 3 (citation omitted). For the reasons articulated by this Court on the first and second MTDs, ABR's remaining claims— as currently formulated by ABR—constitute "interests" under Section 363(f) and are barred by the Sale Order. Under each of the three remaining claims, liability, and damages, arise only *because* of Limetree's purchase of the Hovensa Assets, which purportedly deprived ABR of the profits it would have received from those assets. ABR's proposed theory of damages therefore renders its claims impermissibly tied to the Hovensa Assets in *exactly* the same way as the dismissed claims. In each instance, liability is imposed on Defendants as a result of the bankruptcy sale purchase, meaning that the sale necessarily was not made "free and clear" of "any interest."

As this Court has noted, the Third Circuit and other courts have recognized a trend toward a "broader" reading of the phrase "any interest" in Section 363(f) to include "obligations that are connected to, or arise from, the property being sold." *Folger Adam Sec., Inc. v. DeMatteis/MacGregor JV*, 209 F.3d 252, 258-59 (3d Cir. 2000); *see, e.g.*, *In re Trans World Airlines, Inc.*, 322 F.3d 283, 290 (3d Cir. 2003); *Precision Indus., Inc. v. Qualitech Steel SBQ*, 327 F.3d 537, 545 (7th Cir. 2003) (word "any" counsels in favor of broad reading). Courts analyze what qualifies as an "interest" on a case-by-case basis, with the "overarching factor" being whether there is an "undeniable linkage" to the property sold. *In re Christ Hosp.*, 502 B.R. 158, 171-72 (Bankr. D.N.J. 2013), *aff'd*, 2014 WL 4613316 (D.N.J. Sept. 12, 2014).

In deciding the first MTD, the Court held that three of ABR's claims constituted "interests" subject to the preclusive effect of the Sale Order. MTD #1 at 25. The Court reasoned that these claims had a "clear factual connection," *id.* (citing *In re Christ Hosp.*, 502 B.R. at 181), to the sale of the assets, emphasizing: as to Count I, the "link between Defendants' actions . . . and Plaintiff's loss of its expected profits," *id.* at 27; as to Count V, the link between "Defendants' self-dealing

. . . which deprived Plaintiff of the profits it had expected," *id.* at 28; and as to Count VII, the link between Defendants' withdrawal of the committed funding and "Plaintiff's loss of the Hovensa assets and Defendants' acquisition of the same," *id.* at 29. As the Court put it, the dismissed claims implicated a "series of actions" that led to "ABR [being] deprived of the benefits it anticipated[,] . . . the loss of which forms the bases of Plaintiffs claims."[3] *Id.* at 30. The fact that liability arose *as a result* of the asset purchase was critical to the Court's analysis, since allowing the claims to forward would mean that the asset purchase was not "free and clear" of other interests. The Court denied dismissal of the pending claims because—as then presented by ABR—those claims "arose independently from an NDA" and "are not linked to the sold property." *Id.* at 35, 37.

With ABR having clarified its damages theory, the Court should dismiss the remaining counts as "interests" precluded by the Sale Order. ABR has refashioned these claims to relitigate the exact issue (Defendants' involvement in the acquisition of the assets) and seek the exact damages (profits from the assets) targeted by its dismissed claims. Indeed, ABR seeks the *same* amount, or more, in lost profits that it originally sought, and relies on the *same* (non-CI) expert report that it used to size the lost profits, rather than any estimate of the value of the CI.

As to the contract claim, ABR alleges that, "had defendants adhered to the requirements of the NDAs," Limetree would not have acquired the assets, and, instead, either "ABR and ArcLight would have proceeded as planned," or "ABR would have found a different investor that would have agreed to substantially the same terms"—leaving ABR entitled to lost profits from the assets. Pl. Br. 12. ABR alternatively seeks "disgorgement" of what Defendants "improperly obtained": "100% of the terminal plus 100% of the refinery." *Id.* at 13. In other words, ABR's claim depends

---

[3] The Court reaffirmed its ruling on the first MTD in denying ABR's motion for reconsideration and motion to seek interlocutory appeal. *See* Dkt. 246 at 7-8; Dkt. 265 at 9.

on the successful purchase of the assets, not merely a violation of the NDA. Any liability under ABR's theory arises only *as a result* of the Hovensa sale. There is thus a "clear factual connection," *In re Christ Hosp.*, 502 B.R. at 181, between ABR's contract claim, as now presented, and the sale of the assets. The fact that the claim implicates the NDA makes no difference given that, as it did with the already-dismissed claims, ABR "alleges that Defendants' deliberate and successive acts directly resulted in Plaintiff's loss of the Hovensa assets and Defendants' acquisition of the same." MTD #1 at 29. ABR asserts that these damages "are not based upon the 'loss of the deal,'" but rather "the loss in value to ABR caused by defendants' breach." Pl. Br. 12. But that is wrong: there is no meaningful difference in ABR's conception of the "loss of the deal"—measured by lost profits—and its conception of the "loss in value to ABR"—which ABR also measures by its lost profits from the deal. (And, as explained below, ABR's view of the "lost value" overlooks the facts that (1) the CI, if *at all* a factor in the acquisition, could have been only one of many factors that enabled the acquisition, as ABR itself retained any CI at issue, and (2) Limetree, allegedly in possession of the CI, ultimately *lost* millions of dollars on the assets.)

ABR's misappropriation and *quantum meruit* claims, which rely on the same restitution theory, similarly fail. As now presented, these claims, like the earlier-dismissed claims, fundamentally allege a "series of actions" that led to the deprivation of ABR's expected profits, "the loss of which forms the *bases* of [ABR's] claims." MTD #1 at 29-30 (emphasis added). ABR disagrees, contending that its claims "are independent of ABR's inability to acquire those assets because of defendants' conduct." Pl. Br. 7. Yet ABR does not offer any method by which to estimate the value of the CI except through profits from the assets—proving that, in fact, its claims depend entirely on "ABR's inability to acquire those assets because of defendants' conduct." The Court's original grounds for allowing the outstanding claims to go forward—that they "are not

linked to the sold property," MTD #1 at 37, and "do not encompass Plaintiff's loss of the Hovensa opportunity," MTD #2 at 8—no longer apply. ABR's remaining claims are undisputedly "connected to," *Folger Adam Sec., Inc.*, 209 F.3d at 259, the assets and fail to allege "truly independent tort[s]," *In re Farmland Indus., Inc.*, 376 B.R. 718, 725 (Bankr. W.D. Mo. 2007).

The policy goals underlying bankruptcy sales further favor dismissal. As this Court has noted, the "free and clear" provision of Section 363(f) serves "to foster finality in bankruptcy sales and to maximize the value of the debtor's assets." MTD #1 at 20. If ABR—which chose not to participate at all in the bankruptcy—could proceed with these claims, the entities who purchased the assets would be exposed to the exact liability intended to be precluded by the Sale Order, undermining the sale's finality and jeopardizing recovery of the full value of the assets. For these reasons, the Sale Order bars the reformulated pending claims, which the Court should dismiss.

## B.  ABR CANNOT RECOVER LOST PROFITS DAMAGES THROUGH ITS REMAINING CLAIMS

ABR's damages theories also fail for the independent reason that its remaining causes of action do not permit recovery of damages based on the loss of the Hovensa opportunity.[4] Each of these claims turn on the NDAs and Defendants' alleged misuse of CI. But neither of the NDAs

---

[4] ABR seeks damages for its breach of contract and misappropriation claims under Virgin Islands law. *See* Pl. Br. 10, 14. It is unclear that damages for those claims should be assessed under Virgin Islands law, however, given that ABR's NDA with ArcLight provided that the NDA "shall be governed by the laws of the State of Delaware, without regard to the principles of conflict of laws thereof." Dkt. 227-2 ¶ 15; *see, e.g.*, *Bell v. USAA Cas. Ins. Co.*, 2009 WL 2524351, at *2 (D.V.I. Aug. 14, 2009) (contract must be interpreted by parties' choice of law); *Enzo Life Scis., Inc. v. Adipogen Corp.*, 82 F. Supp. 3d 568, 595 (D. Del. 2015) (same, under Delaware law). Under Delaware law, a court considers several factors, including place of performance, when determining which law to apply. *See, e.g.*, *Enzo Life Sci.*, 82 F. Supp. 3d at 595; *Automated Precision, Inc. v. Pare*, 631 F. Supp. 3d 185, 196 n.2 (D. Del. 2022). Moreover, although ABR refers only to its NDA with ArcLight, its claims with respect to JPE implicate its NDA with JPE, which was governed by Texas law. *See* Dkt. 227-1 ¶ 12. Nonetheless, the Court need not decide which law applies, as ABR's theories fail under the law of all three jurisdictions.

required that the parties commit to the acquisition, let alone a partnership. *See* Dkt. 227-2 ¶ 6 (ABR and ArcLight NDA); Dkt. 227-1 ¶ 8 (ABR and JPE NDA). Accordingly, any damages flowing from these claims would amount to the value of the CI at the time of the alleged breach— not the total profits from the assets that *might* have been acquired based *in part* on the CI. Indeed, ABR was not deprived of the alleged CI—and yet, ABR did not acquire the Hovensa Assets and earn billions of dollars in profits. Perhaps just as notable, Limetree, allegedly in possession of that same CI, did acquire the Hovensa Assets, and *lost* billions of dollars. ABR fails to explain, as ordered by the Court, exactly "*how* the damages claimed for each Count relate to the value of its Confidential Information," Order at 2 (emphasis added). Instead, ABR relies solely on the lost profits estimated in the House Report (which makes no reference to CI), and assumes without further explanation that there is a relationship between the CI and theoretical profits from the assets.[5] But vague, conclusory statements cannot establish the requisite connection to the lost profits to support such a damages claim.[6] Because ABR has made clear that it will pursue its claim only if lost profits damages are available, and because its remaining claims do not provide the basis for such damages, the Court should dismiss the remaining claims.

### 1. Breach of Contract Claim

As to its contract claim, ABR now seeks damages purportedly under theories of expectation interest and restitution. ABR asserts that its expectation damages would amount to $2.9 billion—

---

[5] Defendants assume for the purpose of briefing this damages issue that the House Report accurately reflects the respective value of the Hovensa Assets to ArcLight and ABR.

[6] To be sure, even though ABR cannot recover lost profits, it may be able to prove damages on other measures. Indeed, ABR itself recognizes the possibility of such a recovery: the now-withdrawn Lerman Report sized the value of the CI at $12 million, and ABR later posited that the value of the CI was approximately $18 million. Lerman Rpt. at 8; Dkt. 333 (Oct. 4, 2022 Tr. at 17-18). But, because ABR has made clear that it will not pursue this case without the potential of profits-based recovery, the Court should dismiss its remaining claims.

that is, the lost profits as sized in the House Report—and restitution would amount to $4.0 billion through disgorgement of Defendants' "improperly obtained" gains.  Pl. Br. 12-13.

However, no matter how ABR measures its damages, it cannot obtain the profits related to the assets as contractual damages.  The NDA provided only that the parties agree not to disclose CI to nondesignated individuals and limit their "use" of the CI "to evaluat[ing] and engag[ing] in discussions concerning a potential business relationship."  Dkt. 227-2 ¶ 3.  Thus, the harm from breach of the NDA is the harm of a party's *use* of the CI outside of that purpose—as sized by the knowledge gained from the CI or the cost to develop that CI—not, as ABR contends, the harm of a party's eventual *application* of the CI to enter another agreement.[7]  In fact, the NDA explicitly stated that neither party was obligated "to proceed with any transaction, relationship or venture" and that each party could "terminate the discussions contemplated."  *Id.* ¶ 6.  Those provisions would be utterly defeated if a party's choice to "terminate discussions" and proceed independently could give rise to profits damages to the counter-party for their purported "loss" of the opportunity to do the transaction.  Given the NDA's focus on the exchange of *information* and express detachment from the *outcomes* of that exchange, it would make no sense, and run contrary to the parties' terms, for a breach of the NDA to result in an award of the full profits from that acquisition.

Accordingly, ABR cannot argue that it had an "expectation interest" that entering into the NDA would guarantee its share of profits from the assets, or that restoring the benefit it conferred to Defendants through the NDA would require full disgorgement of their profits from the acquisition.  Granting such damages would yield the absurd result that the breach of any agreement

---

[7] For avoidance of doubt, as stated above, Defendants disagree with ABR's characterization of what information could be classified as CI pursuant to the NDA.  Defendants accept ABR's theory that they relied on information that was classified as CI solely for the purposes of briefing this damages issue.

related to a potential transaction (the consummation of which is speculative at the time and will depend on thousands of other variables) would permit full recovery of the proceeds of the broader transaction—regardless of the scope and maturity of that transaction. Two simple facts demonstrate the absurdity of ABR's damages request: (1) ABR was not deprived of the alleged CI, yet failed to earn $2.9 billion in profits with it; and (2) ArcLight and other investors in Limetree did not make $4.0 billion in profits, but in fact lost millions of dollars in the acquisition, with Limetree filing for bankruptcy in 2021.[8]

It is revealing that ABR cites no examples of courts awarding profits-based damages for similar contract claims. This is because courts generally require that plaintiffs prove expectation damages to a "reasonable certainty," including with reference to specific discussions and profit-sizing. *Cf., e.g.*, *ATACS Corp. v. Trans World Commc'ns, Inc.*, 155 F.3d 659, 669-70 (3d Cir. 1998) (noting rule in "most jurisdictions," and rejecting "lost profits calculus based solely on unsubstantiated speculation and conjecture"); Restatement (Second) of Contracts § 344 (1981) (expectation damages lacking "sufficient certainty" or foreseeability may be barred); *id.* § 352 ("main impact" of certainty requirement "in connection with recovery for lost profits").[9] "The expectation interest is not based on the injured party's hopes when he made the contract but on the actual value that the contract would have had to him." *Id.* § 344. ABR cannot reasonably allege

---

[8] *See Bankruptcy Judge Approves $62 Million Limetree Bay Sale To Jamaican Company*, Reuters (Dec. 22, 2021), https://www.reuters.com/business/energy/bankruptcy-judge-approve-62-million-limetree-bay-sale-jamaican-company-2021-12-21.

[9] *See, e.g.*, *VICI Racing, LLC v. T-Mobile USA, Inc.*, 763 F.3d 273, 294, 302-04 (3d Cir. 2014); *SIGA Techs., Inc. v. PharmAthene, Inc.*, 67 A.3d 330, 351 n.99 (Del. 2013) (under Delaware law, lost profits unavailable where "conjectural" (citation omitted)); *Chemipal Ltd. v. Slim-Fast Nutritional Foods Int'l, Inc.*, 350 F. Supp. 2d 582, 597 (D. Del. 2004) (under Delaware law, lost profits unavailable where beyond "performance of the particular contract" (citation omitted)); *Stallworth Timber Co. v. Triad Bldg. Supply*, 968 F. Supp. 279, 283 (D.V.I. 1997) (lost profits available only where loss "proximately caused" by breach); *Bennington Foods, L.L.C. v. St. Croix Renaissance Grp., L.L.L.P.*, 2010 WL 1608483, at *11 (D.V.I. Apr. 20, 2010) (same).

that, absent a breach of the NDA, it would have acquired the assets and made $2.9 billion in profits, as there was *zero* certainty about the acquisition or its value at the time of the alleged breach of the NDA.

Likewise, as to restitution, courts typically require that a plaintiff seeking a defendant's allegedly ill-gotten profit "demonstrate that the value of the benefit it conferred . . . corresponds to the breaching parties' net . . . profits." *Fishkin v. Susquehanna Partners, G.P.*, 340 F. App'x 110, 117 (3d Cir. 2009); *see, e.g.*, *Gener8, LLC v. Castanon*, 2023 WL 6381635, at *31-32 (Del. Ch. Sept. 29, 2023) (under Delaware law, restitution cannot be "untethered from the harm caused by . . . breaches"). Restitution usually constitutes restoration of "a specific thing" or "a sum of money equivalent to the benefit that [the other party] has derived from that thing." Restatement (Second) of Contracts § 345. Here, as a matter of law, ABR cannot reasonably claim that value of its CI corresponds to Defendants' full profits from the Hovensa Assets—especially given that the underlying NDA expressly disclaimed any requirement to jointly acquire the assets and Defendants, in fact, made no profits that could be disgorged.

### 2.    Misappropriation Claim

ABR's misappropriation damages theory suffers from similar defects. ABR contends, by analogy to the tort of conversion, that it would be owed the "full value of the chattel," which, it states, would be equal to restitution of $4.0 billion. Pl. Br. 14. It also claims that the Virgin Islands Uniform Trade Secrets Act ("UTSA") allows for expectation damages or restitution. *Id.* at 14 n.8.

The Court should reject ABR's claim for conversion-based damages. Even if the Court finds it proper to award damages in the form of the "full value of the chattel," that would translate only to the value of the *information*, which, for the reasons above, is distinct from the total profits from the Hovensa Assets. Likewise, any damages claim under the UTSA fails as a matter of law for the same reasons that ABR's claim for contract-related damages fails: the connection between

Defendants' alleged misappropriation and the profits from the Hovensa Assets is too remote to support such damages. *Cf., e.g.*, *Beard Rsch., Inc. v. Kates*, 8 A.3d 573, 619-20 (Del. Ch.), *aff'd sub nom. ASDI, Inc. v. Beard Rsch., Inc.*, 11 A.3d 749 (Del. 2010) (requiring sufficient evidence to permit "responsible estimate" of damages from misappropriation). Merely having access to the allegedly misappropriated CI is no guarantee that a party will acquire the assets, let alone whether the assets will be profitable—after all, ABR *also* had the information at issue, but ultimately did not acquire the assets. (And assuming Defendants had information that constituted CI under the NDA, Defendants nevertheless made no profits (and lost millions) on the acquisition.) The Court therefore should find that ABR cannot seek profits-based damages based on its misappropriation claim.

### 3. *Quantum Meruit* Claim

Finally, ABR seeks restitution of $4.0 billion for its *quantum meruit* claim. Pl. Br. 15. This claim, asserted in the alternative to the contract claim, similarly does not support recovery of Defendants' alleged profits (which do not exist), as the relationship between any benefits accrued from work performed pursuant to the NDA and any profits ultimately gained by Defendants from the Hovensa Assets is too attenuated to support damages. *Cf. USA Mach. Corp. v. CSC, Ltd.*, 184 F.3d 257, 265-66 (3d Cir. 1999) (requiring "reasonable certainty" in quantifying benefit bestowed) (citation omitted).

## IV.    CONCLUSION

For the foregoing reasons, the Court should dismiss this case because (1) ABR's remaining claims, as now presented, are precluded by the Sale Order as "interests" arising from or connected to the Hovensa Assets; and (2) ABR cannot recover lost profits through the remaining claims, which turn on the information exchanged before the acquisition, and not the acquisition itself.

Dated: March 1, 2024        Respectfully submitted,
New York, New York

**LATHAM & WATKINS LLP**

*/s/ P. Anthony Sammi*
P. Anthony Sammi (admitted *pro hac vice*)
Rachel Blitzer (admitted *pro hac vice*)
Gregory Mortenson (admitted *pro hac vice*)
1271 Avenue of the Americas
New York, New York 10020
Telephone:  (212) 906-1200
Facsimile:  (212) 751-4864
tony.sammi@lw.com
rachel.blitzer@lw.com
gregory.mortenson@lw.com

**DUDLEY NEWMAN FEURZEIG LLP**

*/s/ Charles E. Lockwood*
Charles E. Lockwood
1131 King Street, Suite 204
Christiansted, U. S. V. I. 00820-4974
Telephone:  (340) 773-3200
Facsimile:  (340) 773-3409
Clockwood@dnfvi.com

*Attorneys for Defendants Arclight Capital Partners,*
*LLC & JP Energy Partners, LP*

<u>**CERTIFICATE OF SERVICE**</u>

**I HEREBY CERTIFY** that on March 1, 2024, I electronically filed the foregoing with the

Clerk of the Court using the CM/ECF system, which will send a notification of such filing (NEF)

to the following.

**ANDREW C. SIMPSON, P.C**.

Andrew C. Simpson, Esq.
VI Bar No. 451
2191 Church Street, Suite 5
Christiansted, VI 00820
Tel: 340.719.3900
asimpson@coralbrief.com

Joseph P. Klock, Jr., Esq.
FBN 156678 (admitted pro hac vice)
Gabriel E. Nieto, Esq.
FBN 147559 (admitted pro hac vice)
RASCO KLOCK PEREZ NIETO
2555 Ponce De Leon Blvd., Suite 600
Coral Gables, Florida 33134
Telephone: 305.476.7105
Facsimile: 305.675.7707
Jklock@rascoklock.com

Attorneys for Plaintiff, Atlantic Basin
Refinery, Inc.

Dated: March 1, 2024           Respectfully submitted,
       New York, New York

**LATHAM & WATKINS LLP**


<u>/s/ P. Anthony Sammi</u>
P. Anthony Sammi (admitted *pro hac vice*)
Rachel Blitzer (admitted *pro hac vice*)
Gregory Mortenson (admitted *pro hac vice*)
1271 Avenue of the Americas
New York, New York 10020
Telephone:  (212) 906-1200
Facsimile:  (212) 751-4864
tony.sammi@lw.com
rachel.blitzer@lw.com
gregory.mortenson@lw.com


**DUDLEY NEWMAN FEURZEIG LLP**


<u>/s/ Charles E. Lockwood</u>
Charles E. Lockwood
1131 King Street, Suite 204
Christiansted, U. S. V. I. 00820-4974
Telephone:  (340) 773-3200
Facsimile:  (340) 773-3409
Clockwood@dnfvi.com

*Attorneys for Defendants Arclight Capital Partners,*
*LLC & JP Energy Partners, LP*