# EXHIBIT 1

UNITED STATES DISTRICT COURT
DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. CROIX

ATLANTIC BASIN REFINING, INC.,

                              Plaintiff,

        v.                                      Case No. 15 Civ. 0071 (WAL) (GWC)

ARCLIGHT CAPITAL PARTNERS, LLC and
JP ENERGY PARTNERS, LP,

                              Defendants.

**DEFENDANTS' RESPONSE TO PLAINTIFF'S NOTICE OF SUPPLEMENTAL AUTHORITY**

Defendants write in response to Plaintiff Atlantic Basin Refining, Inc.'s ("ABR") notice of supplemental authority regarding *Harrington v. Purdue Pharma L. P.*, No. 23-124, 603 U.S. ---, 2024 WL 3187799 (June 27, 2024). *See* Dkt. 367 ("ABR Notice"). ABR contends—without actual explanation—that *Harrington* "calls into question" this Court's previous rulings regarding the breadth of "interests" under 11 U.S.C. § 363(f) and implicates the parties' pending briefing as to ABR's theory of damages and whether its claims constitute interests under Section 363(f). *Id.* But ABR is wrong. *Harrington* has no bearing on the pending damages question, and ABR's notice is yet another attempt to resuscitate a theory of damages that this Court has repeatedly—and correctly—rejected.

*Harrington* concerned a release provision in a Chapter 11 bankruptcy reorganization plan for Purdue Pharma L. P. that sought to discharge, without the consent of any claimants, all current and future claims against the Sackler family (the non-debtor owners of Purdue). 2014 WL 3187799, at *4. The release encompassed claims by both creditors participating in the bankruptcy proceeding and any non-creditors who may sue the Sackler family (including for claims related to prescription opioid abuse). *Id.* Multiple creditors, including the U.S. Trustee and various states and municipalities, objected to the release, and the Supreme Court stayed the plan. *Id.* at *4-5. The Supreme Court struck down the release, holding that Section 1123(b)(6) of the Bankruptcy Code, which governs the contents of certain provisions in reorganization plans, did not permit the "discharge [of] the debts of a nondebtor without the consent of affected nondebtor claimants." *Id.* at *7. In doing so, the Court was careful to confine its holding to only the type of nonconsensual third-party release at issue in the case, noting that the case did not bear on "*consensual* third-party releases," nor "what qualifies as a consensual release" or when a plan may permissibly "provide[] for the full satisfaction of claims against a third-party nondebtor." *Id.* at *11. The Court also

declined to opine on whether its decision "would justify unwinding reorganization plans that have already become effective and been substantially consummated." *Id.*

By contrast, this case does not involve a stayed reorganization plan with a nonconsensual third-party release, but rather a consented-to bankruptcy sale order that provided for the sale of assets "free and clear" of any interests under Section 363(f). *See* Dkt. 239, Ex. A ("Sale Order") at 3 (listing statutory bases for approval). Importantly, *Harrington* pertained to the scope of Section 1123(b)(6), a provision in Chapter 11 of the bankruptcy code related to the contents of reorganization plans; this case implicates Section 363(f), a provision in Chapter 3 of the bankruptcy code related to case administration and the power to authorize sales of assets in an estate. *Harrington* made no mention of Section 363 or bankruptcy sale orders, and there is no indication that the Supreme Court intended for the decision to alter the scope of Section 363.

Moreover, the holding in *Harrington* turned in part on the fact that the release precluded a wide range of pending and future claims by creditors and non-creditors against non-debtor *third parties* (the Sackler family) who were not formally involved in the proceeding. *See* 2024 WL 3187799, at *7-9. As an initial matter, a reorganization plan—which governs the distribution of the assets of an estate and, subject to approval by a bankruptcy court, and binds the debtor and creditors to that plan—differs from a bankruptcy sale order, which controls only the sale of certain assets by the debtor to another entity. But even putting aside the fact that a sale order facilitates an inherently different transaction than a reorganization plan, the Sale Order here does not protect third parties in the same manner as the plan in Harrington. The "free and clear" provision in the Sale Order, which is standard in such transactions, pertains only to claims related *to the Hovensa Assets*, which were the *object* of the sale, against the buyer of those assets, which was a *party* to the sale, and its affiliates and subsidiaries. *See* Sale Order ¶¶ 8-10 (providing for sale of Hovensa

-2-

Assets "free and clear of all Interests" and enjoining claims as to interests against "the Buyer, any of its Affiliates and Subsidiaries, and any of their respective Representatives"); *see also id.* at 8-9 (parts Q and S); Dkt. 227 ¶ 131 (Second Amended Complaint: stating that Limetree Bay Holdings, LLC, which purchased Hovensa Assets, was wholly owned by Defendant ArcLight Capital Partners, LLC). Any "release" of claims under the Sale Order was made with respect to a party to the transaction, not a third party.

Furthermore, *Harrington* arose from objections by various parties in the bankruptcy proceeding to a nonconsensual release in a reorganization plan. But this case involves a consented-to sale order that was approved *after* "all known interested Persons and entities" had a "reasonable opportunity to object," Sale Order at 3 (part D), 5 (parts G and H), and the Bankruptcy Court denied and overruled all objections asserted, *see id.* ¶ 3. Notably, as the Court held, ABR did not lodge *any* objections to the sale order, signifying its consent to the terms of the sale. *See* Dkt. 217 at 34 (finding that, under Section 363(f)(2), "ABR's conduct [in failing to object to or intervene in the sale] is thus properly deemed 'consent' to releasing its claims that were derivative of the purchased assets"); Dkt. 260 at 9 n.4 (noting ABR "could have, but did not object" to sale order); *see also* 11 U.S.C. § 363(f)(2). And the sale order has not been stayed or otherwise invalidated, putting this case well outside the realm of *Harrington*, which involved an objected-to and stayed reorganization plan. *See Harrington*, 2024 WL 3187799, at *11 (declining to address whether ruling would "justify unwinding reorganization plans that have already become effective").

In short, *Harrington* is inapposite. In suggesting that *Harrington* "calls into question" the breadth of Section 363(f) "as applied in this case," ABR Notice at 1, ABR is suggesting that this Court extend the Supreme Court's interpretation of Section 1123(b)(6) to an entirely different context. There is simply no legal basis to do so. And doing so would run contrary to the Supreme

Court's express limitation of its decision to the propriety of nonconsensual third-party releases in stayed reorganization plans pursuant to Section 1123(b)(6). *See Harrington*, 2024 WL 3187799, at *11. Tellingly, ABR does not even explain *how* the Court should apply *Harrington* to this case, merely stating vaguely that the case "relates to" the pending briefing on damages. ABR Notice at 1. Accordingly, this Court should decide the pending damages issue based on the briefs already submitted.[1]

---

[1] For the same reasons, to the extent that ABR seeks—yet again— to relitigate the Court's ruling on the first motion to dismiss on the basis of *Harrington*, *see* ABR Notice at 2 n.2, such a challenge is meritless, as the decision has no relevance to the issues in this case.

Dated: July 10, 2024

New York, New York

Respectfully submitted,

**LATHAM & WATKINS LLP**

By: /s/ *P. Anthony Sammi*
P. Anthony Sammi (admitted *pro hac vice*)
Rachel Blitzer (admitted *pro hac vice*)
Gregory Mortenson (admitted *pro hac vice*)
1271 Avenue of the Americas
New York, New York 10020
Telephone: (212) 906-1200
Facsimile: (212) 751-4864
tony.sammi@lw.com
rachel.blitzer@lw.com
gregory.mortenson@lw.com

**DUDLEY NEWMAN FEURZEIG LLP**

By: /s/ *Charles E. Lockwood*
Charles E. Lockwood
1131 King Street, Suite 204
Christiansted, U. S. V. I. 00820-4974
Telephone: (340) 773-3200
Facsimile: (340) 773-3409
Clockwood@dnfvi.com

*Attorneys for Defendants Arclight Capital Partners, LLC & JP Energy Partners, LP*

-5-