IN THE DISTRICT COURT OF THE VIRGIN ISLAND
DIVISION OF ST. CROIX

ATLANTIC BASIN REFINING, INC.

    PLAINTIFF,

VS.

ARCLIGHT CAPITAL PARTNERS, LLC
AND JP ENERGY PARTNERS, LP,

    DEFENDANTS.

CASE NO.: 1:15-cv-00071

ABR'S REPLY TO DEFENDANTS' RESPONSE TO
ABR'S NOTICE OF SUPPLEMENTAL AUTHORITY

The fundamental premise of *Harrington v. Purdue Pharma L. P.*, Case No. 23-124, 603 U.S. –, 2024 WL 3187799 (June 27, 2024)) is that a non-debtor may not obtain a non-consensual release of claims of non-parties to the bankruptcy proceeding. The policy behind *Harrington* recognized that the bankruptcy code only discharges liabilities of the *debtor* who has agreed to subject itself to all of the burdens imposed upon the debtor who enters bankruptcy—including making all, or virtually all, of the debtors assets available for distribution to the creditors. While *Harrington* was a Chapter 11 case, that policy of limiting the benefits of bankruptcy to the debtor is not limited to Chapter 11.

To fully appreciate the breadth of the *Harrington* decision, it is necessary to

review the structure of the entire bankruptcy code. The first three chapters[1] are general in nature and apply to the six specific types of bankruptcies recognized in the Bankruptcy Code. Those six specific types of bankruptcies are found in the remaining six chapters.[2]

Thus, while *Harrington* involved a Chapter 11 bankruptcy proceeding, it was not enough for the Supreme Court to simply look to Chapter 11. Indeed, the Court begins its opinion in *Harrington* by observing that "[t]he bankruptcy code contains hundreds of interlocking rules" regarding the relations between a debtor and its creditors. 2024 WL 3187799 at * 3 (citing *Wright v. Union Central Life Ins. Co.*, 304 U.S. 502, 513–14 (1938)). Later in the opinion, the Court looked to other provisions of the bankruptcy code, including Chapter 7,[3] and noted that "the bankruptcy code reserves the benefit of a discharge to 'the debtor'—the entity that files for bankruptcy." 2024 WL 3187799 at * 9. The Court further commented that the *Harrington* plan's proponents and the dissent "would defy these rules by effectively affording to a nondebtor a discharge

---

[1] Chapter 1:   General Provisions;
Chapter 3:   Case Administration; and
Chapter 5:   Creditors, The Debtor, and the Estate.

[2] Chapter 7:   Liquidation;
Chapter 9:   Adjustment of Debts of a Municipality;
Chapter 11:  Reorganization;
Chapter 12:  Adjustment of Debts of a Family Farmer or Fisherman with Regular Income;
Chapter 13:  Adjustment of Debts of an Individual with Regular Income; and
Chapter 15:  Ancillary and Other Cross-Border Cases.

[3] Hovensa's bankruptcy was a Chapter 7 proceeding.

usually reserved for the debtor alone." *Id.*

The Court also rejected the "word games" played by the plan proponents and the dissent, because they tried to argue that the proponents (the Sacklers) were seeking a "'release' not a 'discharge.'" *Id.* at 10. As the Court stated, "word games cannot obscure the underlying reality," *id.*, and it concluded that part of the opinion with the admonition "[d]escribe the relief the Sacklers seek how you will, nothing *in the bankruptcy code* contemplates (much less authorizes) it." *Id.* (emphasis added).[4]

So too, here—but even more so. Defendants, unlike the Sacklers, did not have any prior relationship to the debtor, Hovensa. And Defendants' liability arose prior to Hovensa ever declaring bankruptcy and existed whether or not Hovensa declared bankruptcy and whether or not the party related to Defendants (Limetree Bay Terminals, LLC) acquired the Hovensa assets or not.[5] Unlike the Sacklers' liability, ArcLight's liability had no connection to Hovensa's operations or actions whereas the Sackler's liability was directly related to the marketing of the debtor's products that ultimately led it into bankruptcy. The bankruptcy code was never intended to absolve a party related to the successful bidder in a Section 363 sale to be released from

---

[4] The emphasized language refers to the entire bankruptcy code and is not limited to Chapter 11.

[5] The relationship of Hovensa's assets to Defendants in this case (under all theories ABR has asserted in the litigation) is—and always has been—solely a matter of damages. When Defendants breached their fiduciary duties to ABR and interfered with ABR's contractual relationship with Hovensa, the damage was done. It did not matter at that point whether Hovensa declared bankruptcy, sold its assets to Defendants' related entity without a bankruptcy, or sold its assets to a completely unrelated entity whether through bankruptcy or not.

liability to third parties for its own tortious conduct that was not derivative of the debtor's liability.

Defendants place great emphasis on the argument that ABR consented to the release of its assets despite the fact that it was never given notice that the sale of Hovensa's assets would wipe out its claim against Defendants. But the Court should be cognizant of how this issue came before it—on a motion to dismiss where the well-pled allegations of ABR's complaint must be accepted as true and all reasonable inferences are drawn in favor of ABR. *Alston v. Parker*, 363 F.3d 229, 233 (3d Cir. 2004). "A court must ask whether the complaint contains either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Am. Resort Dev. Ass'n-Resort Owners' Coal. v. Gov't of the Virgin Islands*, Case No. 3:17-cv-32, 2017 WL 6519020, at *2 (D.V.I. Dec. 19, 2017), *aff'd*, 848 Fed.Appx. 79 (3d Cir. 2021) (cleaned up) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 562 (2007)).

Consent was not, and is not, an element of ABR's claim. Rather, consent was a *defense* to ABR's claim that could be raised by Defendants in an answer (and ABR's lack of notice would have been a counter-defense to the claim of consent. Thus, at the motion to dismiss stage, consent was not an issue that was properly before the Court and to the extent that the Court based its ruling on a finding that ABR had appropriate notice an dconsented to the 363 sale, the Court improperly granted summary judgment.

Should the Court desire oral argument on this issue, ABR would welcome it.

4

Respectfully submitted,

Atlantic Basin Refining, Inc.

**Dated**: August 2, 2024

   /s/ Andrew C. Simpson
By:  Andrew C. Simpson, Esq.
VI Bar No. 451
**ANDREW C. SIMPSON, P.C.**
2191 Church Street, Suite 5
Christiansted, VI 00820
Tel: 340.719.3900
asimpson@coralbrief.com

Joseph P. Klock, Jr., Esq.
FBN 156678 (admitted PHV)
**RASCO KLOCK PEREZ NIETO**
2555 Ponce De Leon Blvd., Suite 600
Coral Gables, Florida 33134
Telephone: 305.476.7105
Facsimile: 305.675.7707
Jklock@rascoklock.com

Attorneys for Plaintiff, Atlantic Basin
Refinery, Inc.