# EXHIBIT 1

UNITED STATES DISTRICT COURT
DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. CROIX

| | |
|---|---|
| ATLANTIC BASIN REFINING, INC., <br><br> Plaintiff, <br><br> v. <br><br> ARCLIGHT CAPITAL PARTNERS, LLC and JP ENERGY PARTNERS, LP, <br><br> Defendants. | Case No. 15 Civ. 0071 (WAL) (EAH) |

**DEFENDANTS' SUR-REPLY TO PLAINTIFF'S NOTICE OF SUPPLEMENTAL AUTHORITY**

Plaintiff Atlantic Basin Refining, Inc.'s ("ABR") reply to its notice of supplemental authority regarding *Harrington v. Purdue Pharma L. P.*, 144 S. Ct. 2071 (2024), still provides no insight as to why it believes *Harrington* is relevant to the damages question pending before the Court. *See* Dkt. 371 ("ABR Reply"). Instead, the reply reads more like yet another motion for reconsideration of the Court's order on Defendants' motion to dismiss. ABR Reply at 4; *see* Dkts. 223, 245. In any event, in its reply, ABR finally explains its position as to why *Harrington*, a case about a nonconsensual release in a Chapter 11 reorganization plan of claims against non-debtor third parties, is relevant to this case. But ABR's logic is deeply flawed and utterly inconsistent with the law.

The Supreme Court in *Harrington* could not have been more clear about the limitations of its holding: "Today's decision is a narrow one." 144 S. Ct. at 2074. "[T]his case involves only a stayed reorganization plan." *Id.* at 2088. "Confining ourselves to the question presented, we hold only that the bankruptcy code does not authorize a release and injunction that, as part of a plan of reorganization under Chapter 11, effectively seeks to discharge claims against a nondebtor without the consent of affected claimants." *Id.* Moreover, the Supreme Court made clear that policy considerations have no bearing on the legal issues presented: "[T]his Court is the wrong audience for [] policy disputes." *Id.* at 2074; *see also id.* at 2087. Nevertheless, in direct contravention of the Supreme Court holding, ABR opens its reply by claiming, "While Harrington was a Chapter 11 case, that policy of limiting the benefits of bankruptcy to the debtor is not limited to Chapter 11." ABR Reply at 1.

*Harrington* addressed an extreme situation not at issue here: an attempt to extend the discharge available for a bankruptcy-declaring debtor company to the company's individual owners, and granting those individuals a discharge of all civil tort claims against them. The

-1-

Supreme Court reasoned that, while a debtor like Purdue filing for bankruptcy receives a discharge of debts *in exchange* for providing virtually all assets for distribution to creditors, their owners (the Sackler family) made no such provision of assets and thus have no entitlement to a discharge of claims (including "claims for fraud and willful misconduct"). 144 S. Ct. at 2079. There is no such issue in the present case. Neither Defendants nor a related company has declared bankruptcy. Defendants have not sought—nor been given—immunity from all claims that may be brought against them. This is evident from the posture of the present case, where this Court has—pursuant to 11 U.S.C. § 363(f) and a consented-to bankruptcy sale order[1] that provided for the sale of certain assets "free and clear" of interests under Section 363(f) (*see* Dkt. 239, Ex. A ("Sale Order") at 3)— dismissed *only* claims arising from the Hovensa Assets as "subject to the Sale Order's injunction." Dkt. 217 ("MTD #1") at 25; *see also* Dkt. 260 ("MTD #2") at 9 n.3 (reaffirming holding on second MTD). But, the Court has *permitted* ABR's separate claims for breach of contract, misappropriation, and quantum meruit to proceed. MTD #2 at 20.

Nevertheless, Plaintiffs insist that the holding of *Harrington* can be manipulated to fit the facts of this case, even though *Harrington* addresses (and its holding is explicitly limited to) a

---

[1] ABR protests—presumably as part of its quasi-motion for reconsideration of the Court's motion to dismiss ruling—that the question of its consent to the Sale Order "was not an issue that was properly before the Court," and that the Court's reliance on ABR's consent in ruling on the MTDs constituted an "improper[]" grant of summary judgment. ABR Reply at 4. This argument is meritless. The Court correctly found that ABR "did not object or intervene in the bankruptcy proceedings to protect its interests," which is conduct that is "properly deemed consent to releasing its claims that were derivative of the purchased assets." MTD #1 at 34 (quotation omitted) (citing Sale Order at 2-4, 7-8); *see also* MTD #2 at 9 n.4. In reaching this conclusion, the Court properly considered the Sale Order, which was attached to the MTD. As this Court noted in denying ABR's motion for reconsideration, "Plaintiff's suggestion that the Court is precluded from using information in the record . . . in support of its conclusions is misguided." Dkt. 246 at 9 n.5; *see also Mator v. Wesco Distribution, Inc.*, 102 F.4th 172, 178 (3d Cir. 2024) (on MTD, courts may consider "documents integral to or explicitly relied upon in the complaint or any undisputedly authentic document that a defendant attaches" (citation omitted)).

completely different provision of the bankruptcy code than that at issue here. *Harrington* addressed the permissibility under Section 1123(b)(6) of a nonconsensual release provision in a Chapter 11 reorganization plan of claims against non-debtor third parties that was subject to objections by creditors and stayed by the Court. 144 S. Ct. at 2079-80. The opinion hinges on a textual analysis of Section 1123(b), *see id.* at 2081-84, and invokes other parts of the bankruptcy code merely to buttress its holding, *see id.* at 2085-86. The case has nothing to do with—and does not at all mention—Section 363(f), bankruptcy sale orders, and unobjected-to releases. That makes sense, given that Section 363 sales contemplate different relief—the sale of certain assets of the debtor—than relief under a reorganization plan, which provides for the rehabilitation and continued operation of the debtor. *See In re ICL Holding Co., Inc.*, 802 F.3d 547, 549 (3d Cir. 2015) (Section 363 is "tool of choice to put a quick close to a bankruptcy case" and "avoids time, expense, and . . . the Bankruptcy Code's unbending rules"). Indeed, the *Harrington* Court emphasized that "[a]s important as the question we decide today are ones we do not," stressing that its decision does not bear on "consensual third-party releases" or "reorganization plans that have already become effective"—characteristics that are present in this case, which involves a finalized, unobjected-to sale order. 144 S. Ct. at 2087-88.

Because ABR's overly broad reading of *Harrington* is misguided, its suggestion that the case applies "even more so" here is unavailing. ABR Reply at 3. For instance, ABR contends that "Defendants, unlike the Sacklers, did not have any prior relationship to the debtor." *Id.* This is wrong. As this Court held, the Sale Order "plainly encompasses Defendants" as affiliates of Limetree Bay Holdings, LLC, which was the purchaser of the Hovensa Assets and thus a party to the sale. MTD #1 at 33. The Sacklers, on the other hand, were *third parties* not formally involved in the plan. ABR also confusingly asserts that Defendants' purported "liability" arose "prior to

-3-

Hovensa ever declaring bankruptcy" and "existed whether or not Hovensa declared bankruptcy," whereas the Sacklers' liability "was directly related to the marketing of the debtor's products that ultimately led it into bankruptcy." ABR Reply at 3. But *Harrington* concerns whether releases of claims against nondebtor third parties require the *consent* of affected claimants, not the extent to which the released claims are "related" to the bankruptcy. Furthermore, this Court has correctly held that the Sale Order precludes even claims "arising prior to" the bankruptcy. MTD #1 at 32 (quoting Sale Order ¶ V (emphasis omitted)). And as explained in Defendants' principal brief on the pending damages issue, ABR, despite repeatedly reformulating its claims, has made clear that its claims and the lost profits that it presently seeks *are* in fact related to, and wholly dependent on, the purchase of the Hovensa Assets—and thus barred by the Sale Order. *See* Dkt. 365 at 8-15.

For these reasons, the Court should decide the pending damages issue based on the briefs already submitted.

Dated: August 12, 2024

New York, New York

Respectfully submitted,

**LATHAM & WATKINS LLP**

By: /s/ P. Anthony Sammi
    P. Anthony Sammi (admitted *pro hac vice*)
    Rachel R. Blitzer (admitted *pro hac vice*)
    Gregory Mortenson (admitted *pro hac vice*)
    1271 Avenue of the Americas
    New York, New York 10020
    Telephone: (212) 906-1200
    Facsimile: (212) 751-4864
    tony.sammi@lw.com
    rachel.blitzer@lw.com
    gregory.mortenson@lw.com

**DUDLEY NEWMAN FEURZEIG LLP**

By: /s/ Charles E. Lockwood
    Charles E. Lockwood
    1131 King Street, Suite 204
    Christiansted, U. S. V. I. 00820-4974
    Telephone: (340) 773-3200
    Facsimile: (340) 773-3409
    Clockwood@dnfvi.com

*Attorneys for Defendants Arclight Capital Partners, LLC & JP Energy Partners, LP*