**IN THE DISTRICT COURT OF THE VIRGIN ISLANDS**
**DIVISION OF ST. CROIX**

| | |
|---|---|
| ATLANTIC BASIN REFINING, INC.,     ) | |
|     ) | |
|     Plaintiff,     ) | |
|     ) | **Case No. 1:15-cv-0071** |
|     v.     ) | |
|     ) | |
| JP ENERGY PARTNERS, LP, and     ) | |
| ARCLIGHT CAPITAL PARTNERS, LLC,     ) | |
|     ) | |
|     Defendants.     ) | |
|     ) | |

**ATTORNEYS:**

JOSEPH P. KLOCK, ESQ.
RASCO KLOCK PEREZ NIETO, P.L.
CORAL GABLES, FL

ANDREW C SIMPSON, ESQ.
EMILY A. SHOUP, ESQ.
LAW OFFICES OF ANDREW SIMPSON
ST. CROIX, USVI
    *FOR PLAINTIFF ATLANTIC BASIN REFINING, INC.*

MICHAEL LACOVARA, ESQ.
PARAMJEET SINGH SAMMI, ESQ.
SERRIN TURNER, ESQ.
BLAIR G. CONNELLY, ESQ.
BRITTANY DAVIS, ESQ.
RACHEL RENEE BLITZER, ESQ.
LATHAM & WATKINS LLP
NEW YORK, NY

CHARLES EDWARD LOCKWOOD, ESQ.
NICHOLS, NEWMAN, LOGAN & GRAY P.C.
ST. CROIX, USVI

GREGG R KRONENBERGER, ESQ.
DUDLEY NEWMAN FEUERZEIG LLP
ST. CROIX, USVI
    *FOR DEFENDANTS JP ENERGY PARTNERS, LP AND ARCLIGHT CAPITAL PARTNERS, LLC*

*Atlantic Basin Refining, Inc. v. JP Energy Partners, LP*
Case No. 1:15-cv-0071
Memorandum Opinion
Page 2 of 20

## MEMORANDUM OPINION[1]

### ROBERT A. MOLLOY, Chief Judge

**THIS MATTER** comes before the Court on Plaintiff Atlantic Basin Refining, Inc.'s ("ABR" or "Plaintiff") Response to the Court's December 5, 2023 Order Regarding Clarification of Plaintiff's Damage Claim filed on January 30, 2024. (ECF No. 362.) Defendants JP Energy Partners, LP, and Arclight Capital Partners, LLC ("Defendants") filed a Response in Opposition on March 5, 2024. (ECF No. 365.) Plaintiff filed a Reply to Defendants' Opposition on March 14, 2024. (ECF No. 366.) Plaintiff additionally filed a Notice of Supplemental Authority on June 27, 2024. (ECF No. 367.)[2] This briefing was ordered by Magistrate Judge Emile A. Henderson on December 5, 2023, following a status conference held on November 27, 2023, based on a need for Plaintiff to "specify its damages theory or theories" and whether certain causes of action in Plaintiff's Second Amended Complaint, ECF No. 227, constitute "interests," under 11 U.S.C. § 363(f),[3] that are "connected to, or arise from," the purchased assets, as a result of Plaintiff's theories of damages. (ECF No. 358 at 1-3.)

The parties agree that this issue is potentially dispositive, and that Plaintiff's claims face dismissal if Plaintiff's theories of damages are not legally sufficient.[4] Accordingly, the

---

[1] Due to the retirement of the judge previously assigned to this case, the undersigned, exercising his authority as Chief Judge of the District Court, reassigned this case to himself on February 17, 2026.

[2] This Notice triggered additional supplemental briefings by both parties between July 2024 and March 2025, with leave of the Court. (ECF Nos. 368, 368-1, 369, 370, 371, 372, 372-2, 373, 377, 378.)

[3] *See also Folger Adam Sec., Inc. v. DeMatteis/MacGregor, JV,* 209 F.3d 252, 259 (3d Cir. 2000) ("[S]ection 363(f) of the Bankruptcy Code[] authorizes the trustee, under any one of five prescribed conditions, to sell property of the estate free and clear of 'any interest' that an entity has in such property.").

[4] *See* ECF 365 at 5 ("ABR's claims [should be] dismissed, for two reasons."); ECF No. 366 at 1-2 ("If this Court [] determines that damages linked to the asset are also barred . . . then the Defendants are correct that—under such a ruling—ABR's remaining claims should be dismissed.").

Court construes Defendants' Response, ECF No. 365, as a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons that follow, the Court finds that Plaintiff's damages theories are insufficient to state a claim upon which relief can be granted, and additionally are barred under 11 U.S.C. § 363(f). Thus, the Court will grant Defendants' motion to dismiss, will dismiss the remaining claims in this matter with prejudice, and will direct the Clerk of Court to close this case.

## I.    BACKGROUND

A detailed analysis of the factual background involved in this matter is contained in Judge Lewis' July 16, 2018 and June 30, 2021 Memorandum Opinions. *See Atl. Basin Ref., Inc. v. ArcLight Capital Partners, LLC*, Civil No. 2015-0071, 2018 U.S. Dist. LEXIS 117974 (D.V.I. July 16, 2018), ECF No. 217; *Atl. Basin Ref., Inc. v. Arclight Capital Partners, LLC*, 2021 U.S. Dist. LEXIS 122177 (D.V.I. June 30, 2021), ECF No. 260. Thus, only a summary of the facts necessary for the resolution of the instant Motion will be set forth here.

Plaintiff filed a Complaint against Defendants on November 16, 2015, ECF No. 1, and a First Amended Complaint ("FAC") on January 22, 2016, ECF No. 14. Plaintiff represents that it "sought to restart and operate the petroleum refinery and storage facility on St. Croix" (the "Refinery"), which was owned by Hovensa, LLC ("Hovensa") at the time. (ECF No. 14 at 3.) Plaintiff negotiated a purchase and sale agreement with Hovensa. *Id.* at 6. Plaintiff later sought to bring Defendants into the deal as "financial partner[s]." *Id.* at 8. Two Nondisclosure Agreements (the "NDAs") were signed between Plaintiff and each Defendant to protect "the high value of the confidential business and operational plans[.]" *Id.* Plaintiff alleges that Defendants used the confidential information provided pursuant to the NDAs to "steal" the

transaction and "eliminate" Plaintiff's "ability close on the Refinery" by "withdrawing its financial commitment" at critical timing. *Id.* at 11. Plaintiffs allege that Defendants subsequently negotiated and executed a separate agreement with Hovensa to purchase the Refinery through a newly-formed subsidiary of Defendants' called Limetree Bay Holdings, LLC ("Limetree"). *Id.* at 15.

Plaintiff alleged the following causes of action in the FAC: (1) Tortious Interference with Existing and Prospective Business Relationships; (2) Breach of Contract; (3) Breach of Contract (Injunction); (4) Misappropriation; (5) Unjust Enrichment; (6) *Quantum Meruit*; and (7) Breach of Fiduciary Duty. *Id.* at 18-27. On July 16, 2018, Judge Lewis granted in part, and denied in part, Defendants' motion to dismiss, ECF No. 20. 2018 U.S. Dist. LEXIS 117974, ECF Nos. 216, 217. Judge Lewis' Memorandum divided the causes of action alleged into counts that constituted "interests" that were "'connected to or arise from' the purchased Hovensa assets," and those counts that did not constitute "interests." 2018 U.S. Dist. LEXIS 117974, at *26, 51.

When Limetree purchased the Refinery via Hovensa's bankruptcy auction, the Bankruptcy Court entered a Sale Order (the "Sale Order") by which "all Persons and entities holding Interests" were "forever barred, estopped and permanently enjoined from asserting their respective Interests against the Buyer, any of its Affiliates and Subsidiaries," including the "Purchased Assets." *Id.* at *11-12. On this basis, Judge Lewis found that Count I (Tortious Interference), Count V (Unjust Enrichment), and Count VII (Breach of Fiduciary Duty) constituted "interests" that were "'connected to or arise from' the purchased Hovensa assets," and thus were "an impermissible collateral attack on the Sale Order." *Id.* at *26, *35-

*Atlantic Basin Refining, Inc. v. JP Energy Partners, LP*
Case No. 1:15-cv-0071
Memorandum Opinion
Page 5 of 20

*51. Conversely, Judge Lewis held that the remaining Counts—Two (Breach of Contract), Three (Injunction), Four (Misappropriation), and Six (*Quantum Meruit*)—were not "interests" that were "connected to, or arise from," the purchased Hovensa assets because they "arose independently" from the NDA which Defendants "allegedly breached by using Confidential Information . . . for their own self-dealings outside the parameters of the NDA." *Id.* at *51. Judge Lewis dismissed three of these four remaining Counts, and granted Plaintiffs leave to amend two of the counts.[5]

On August 15, 2018, Plaintiff filed its Second Amended Complaint ("SAC").[6] (ECF No. 227.) *Id.* The surviving causes of action in the SAC were numbered in the same fashion as in the FAC, and the facts underlying those counts can be summarized as:

> **Count II (Breach of Contract)**: Plaintiff alleges that Defendants misused the Confidential Information that ABR developed and subsequently provided to Defendants in their dealings with Hovensa, in violation of the parties' NDA. Plaintiff further alleges that Defendants continued to use this Confidential Information even after completing the purchase of Hovensa's terminal facility.

> **Count IV (Misappropriation)**: Plaintiff alleges that Defendants are using Confidential Information gained from ABR in their dealings with Hovensa and in their future plans for the terminal facility. Defendants obtained the Confidential Information "for use in acting as ABR's partners" and "with the express understanding that the material would be confidential." However, the information has been used by Defendants "to pursue the Hovensa transaction without ABR."

> **Count VI (*Quantum Meruit*)**: Plaintiff alleges that since it was ABR which "introduced" Defendants to the Hovensa transaction and provided them with the necessary information, which the latter in turn improperly used for their

---

[5] Judge Lewis dismissed Count Two and Count Four for failure to state a claim, and granted Plaintiffs leave to amend these allegations to sufficiently plead Breach of Contract and Misappropriation, respectively. 2018 U.S. Dist. LEXIS 117974, at *67. Judge Lewis dismissed Count Three for failure to state a claim, and permitted Plaintiff to instead amend its Complaint "to seek injunctive relief as an additional remedy for the alleged breach of contract." *Id* . at *68. Finally, Judge Lewis permitted the *Quantum Meruit* cause of action in Count Six to proceed. *Id.* at *74.

[6] On September 19, 2018, Defendants filed a motion to dismiss the SAC. (ECF No. 237.)

> own benefit, "[i]t would be inequitable for Defendants to retain the benefits of ABR's work, prior negotiations, contacts, and business, engineering and operational plans without payment of value to ABR."

2018 U.S. Dist. LEXIS 117974, at *33-35 (ECF No. 217 at 24 (citations omitted).)

On June 30, 2021, Judge Lewis ruled on Defendants' second motion to dismiss, ECF No. 237. The Court permitted Count Two, Count Four, and Count Six to proceed. *Id.* at 20. In doing so, however, the Court held that "Plaintiff may only seek the value of the Confidential Information—not the value of the Hovensa acquisition." *Id.* at 9 n.3. This was based on the Court's prior ruling "that the Sale Order preclude[d] Plaintiff from pursuing claims that involve a linkage or connection to the Hovensa assets," and thus any reference to "potential profits from the Hovensa opportunity" could only be "for contextual purposes, rather than a description of the damages which Plaintiff seeks." *Id.*

From October 2021 to November 2022, discovery proceeded between the parties. (ECF No. 356 at 4-7.) Plaintiff originally obtained an expert report in 2018, related to the dismissed claims, valuing damages as exceeding $3 billion. *Id.* at 2. Following Judge Lewis' ruling that Plaintiff "may only seek the value of the Confidential Information—not the value of the Hovensa acquisition," ECF No .260 at 9 n.3, Plaintiff submitted an expert report valuing damages at $12 million, "as the value of the confidential information." (ECF No. 356 at 5.) Plaintiff later withdrew this expert report. *Id.* at 6. Plaintiff then represented it would rely on two of its principals to establish damages of $18 million. *Id.* Following a discovery dispute about further discovery of these two principals, Plaintiff withdrew its reliance on these executives' testimony. *Id.* at 6-7. Instead, Plaintiff sought to "return to its original damages model" of $3 billion for its remaining claims. (ECF No. 334 at 2.) In doing so, Plaintiff stated

that its "primary objective at this point is to appeal and obtain the reversal of this Court's earlier rulings on the motion to dismiss so that it finally get its three billion dollar damage claim before a jury." *Id.*

On January 26, 2023, in accordance with its stated intent, Plaintiff filed a Stipulation for Entry of Judgment ("Stipulation"), ECF No. 346, jointly with Defendants, seeking judgment on Plaintiff's remaining claims in favor of Defendants. The Stipulation stated that Plaintiff "seeks damages through a methodology . . . that involves a linkage or connection with the Hovensa assets within the meaning of the Court's Orders . . . and has withdrawn and will not present an alternative damages model" for its remaining counts. *Id.* at 3. Plaintiff "concede[d] that its damages position is inconsistent with the Court's earlier rulings on the motions to dismiss." *Id.* Plaintiff's Stipulation stated that the purpose of the Stipulation was to obtain a judgment so that Plaintiff may appeal the District Court's prior rulings dismissing Counts I, V, and VII in the FAC. *Id.* at 3-4.[7]

On August 18, 2023, Judge Lewis held a status conference regarding the Stipulation. (ECF No. 350.) The parties represent that, during the status conference, Judge Lewis "explained that, despite the language in Dkt. No. 260 at 9 n.3, it is an open question whether ABR might (or might not) be able to obtain damages linked to the Hovensa assets based on claims that are not linked to the Hovensa assets." (ECF No. 356 at 7.) On August 18, 2023,

---

[7] The Stipulation stated that "the United States Court of Appeals for the Third Circuit has rendered decisions allowing a party to appeal a judgment entered by consent . . . or stipulation . . . and ABR is relying on such precedent in entering into this stipulation" *Id.* at 3. Plaintiff represented that it expressly reserved its rights to "(i) to appeal the Court's dismissal of Counts I, V, and VII of its First Amended Complaint; (ii) to appeal the Court's holdings regarding the damages available with respect to Counts II, IV, and VI; and (iii) to appeal a final judgment and all 'antecedent issues[.]' in this matter" and sought "immediate appeal of the Court's rulings." *Id.* at 3-4 (citations omitted).

following the status conference, Plaintiff filed a Notice of Withdrawal from Stipulation, withdrawing from the Stipulation. (ECF No. 351.) Subsequently, on December 5, 2023, Magistrate Judge Henderson ordered briefing on the "potentially dispositive" issue of "whether ABR [i]s or [i]s not able to obtain lost profit damages linked to the Hovensa assets for the three remaining counts in ABR's amended complaint that were not linked to the Hovensa assets." (ECF No. 358 at 2.) That question, and the resulting briefing brings us to today.

## II.    LEGAL STANDARD

A complaint should be dismissed if it "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). The Third Circuit follows the analysis set forth by the Supreme Court in *Bell Atlantic v. Twombly* and *Ashcroft v. Iqbal* when considering a Rule 12(b)(6) motion:

> Under the pleading regime established by *Twombly* and *Iqbal*, a court reviewing the sufficiency of a complaint must take three steps. First, it must take note of the elements the plaintiff must plead to state a claim. Second, it should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Finally, when there are well-pleaded factual allegations, the court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Connelly v. Lane Construction Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (quotations omitted).

"When assessing the merits of a Rule 12(b)(6) motion, we accept as true all factual allegations in the complaint and view those facts in the light most favorable to the non-moving party." *Doe v. Univ. of the Scis.*, 961 F.3d 203, 208 (3d Cir. 2020). Further the district court must "draw all reasonable inferences" from the allegations and also construe them "in the light most favorable" to the plaintiff. *Connelly*, 809 F.3d at 791 & n.2 (3d Cir. 2016). To

*Atlantic Basin Refining, Inc. v. JP Energy Partners, LP*
Case No. 1:15-cv-0071
Memorandum Opinion
Page 9 of 20

survive a motion to dismiss, a complaint must contain sufficient factual allegations, taken as true, to state a claim to relief that is plausible on its face. *See Nekrilov v. City of Jersey*, 45 F.4th 662, 668 (3d Cir. 2022). "A facially plausible claim is one that permits a reasonable inference that the defendant is liable for the misconduct alleged." *Univ. of the Scis.*, 961 F.3d at 208 (quotations omitted).

## III.    DISCUSSION

Damage to the plaintiff is an element of the each of the three remaining counts in this litigation: Count Two (Breach of Contract),[8] Count Four (Misappropriation),[9] and Count Six (*Quantum Meruit*).[10] Thus, Plaintiff must properly allege that Defendants' conduct resulted in damages sustained by Plaintiff—framed as Defendants' enrichment at Plaintiff's expense

---

[8] The elements of breach of contract under Delaware law are: (1) the existence of the contract, whether express or implied; (2) the breach of an obligation imposed by that contract; and (3) the resultant damage to the plaintiff. *See VLIW Tech., LLC v. Hewlett-Packard Co.*, 840 A.2d 606, 612 (Del. 2003). Judge Lewis previously found that because the breach of contract cause of action pertains to the parties' NDA, that the NDA's choice of law provision requiring claims to adjudicated under the laws of the state of Delaware apply. *Atl. Basin Ref., Inc.* 2018 U.S. Dist. LEXIS 117974, at *57 (ECF No. 217 at 39).

[9] The elements of misappropriation under Delaware law are: (1) plaintiff "had a property interest in the confidential information"; (2) the defendant "wrongfully exerted dominion over the confidential information"; and (3) the plaintiff :sustained damages as a result." *Sustainable Energy Generation Grp., LLC v. Photon Energy Projects B.V.*, 2014 Del. Ch. LEXIS 90, at *50 (Del. Ch. May 30, 2014). Judge Lewis previously found that because the misappropriation cause of action pertains to the parties' NDA, that the NDA's choice of law provision requiring claims to adjudicated under the laws of the state of Delaware apply. *Atl. Basin Ref., Inc.* 2018 U.S. Dist. LEXIS 117974, at *57 (ECF No. 217 at 39).

[10] The elements of *quantum* meruit—which is coextensive with the tort of unjust enrichment under Virgin Islands law—are that: (1) the defendant "was enriched," (2) such enrichment was "at the plaintiff's expense," (3) the defendant "had appreciation or knowledge of the benefit," and (4) "the circumstances were such that in equity or good conscience the defendant should return the money or property to the plaintiff." *Whitaker v. Martin*, Civil No. 2020-0024, 2020 U.S. Dist. LEXIS 239152, at *10-11 (D.V.I. Dec. 18, 2020) (citing *Walters v. Walters*, 60 V.I. 768, 779-80 (2014) (conducting a *Banks* analysis of the soundest rule for the Virgin Islands for a "cause of action for quantum meruit, also known as unjust enrichment" and rejecting a three-element formulation of the tort in favor of four elements). Thus, the Court does not adopt a three-element formulation of this tort previously articulated in this litigation. *See Atl. Basin Ref., Inc.*, 2021 U.S. Dist. LEXIS 122177, at *24-25 (ECF No. 260 at 18-19). The Court does adopt the finding, however, that Virgin Islands law applies, because the choice of law provision in the NDA is inapplicable to the *quantum meruit* cause of action. *See id.* at *24 (ECF No. 260 at 18).

*Atlantic Basin Refining, Inc. v. JP Energy Partners, LP*
Case No. 1:15-cv-0071
Memorandum Opinion
Page 10 of 20

for the *quantum meruit* cause of action—in order to state a claim upon which relief can be granted. *See, e.g.*, *Caerus Group, LLC, v. Chemicar Europe NV*, Civil No. 2025-0393, 2026 Del. Ch. LEXIS 123, at *16 (Del. Ch. Mar. 10, 2026) ("I do not understand established Delaware precedent to excuse a plaintiff from pleading facts supporting every element of a claim for breach of contract, including that a contractual breach caused some harm." (collecting cases)).

Plaintiff makes three salient arguments in favor of their theory of damages.[11] First, Plaintiff argues that two types of damages apply for Count Two (Breach of Contract): (1) expectation interest; and (2) restitution interest. *Id.* at 10-13. Second, Plaintiff duplicates its argument regarding restitution interest regarding Count Two for Count Four (Misappropriation), and Count Six (*Quantum Meruit*). *Id.* at 14-16. Third, and finally, Plaintiff argues that the value of these forms damages is a "conservative" estimate of "$3.971 billion"[12] in assets and revenue that Plaintiff was unable to obtain due to Defendants' alleged

---

[11] Plaintiff also argues that despite the NDA's choice of law provision establishing Delaware law as the governing law, "[u]nder Delaware law, the measure of damages for breach of contract is based upon the place of performance of the contract," and thus asks the Court to apply Virgin Islands law regarding damages. (ECF No. 362 at 10.) The Court rejects Plaintiff's contention that Virgin Islands law should apply to the Breach of Contract and Misappropriation claims, notwithstanding the choice of law provision in the NDA. None of the cases cited by Plaintiff support its position, as each case appears to relate to either an issue of moratory interest (prejudgment interest) or a scenario in which no choice of law provision existed in the contract in question. *See* ECF No. 362 at 10 (citing *Stentor Elec. Mfg. Co. v. Klaxon Co.*, 125 F.2d 820, 822 (3d Cir. 1942); *Canadian Indus. Alcohol Co. v. Nelson*, 38 Del. 26, 188 A. 39, 53 (1936); *Tisch Fam. Found., Inc. v. Texas Nat. Petroleum Co.*, 336 F. Supp. 441, 443 (D. Del. 1972); *Cooper v. Ross & Roberts, Inc.*, 505 A.2d 1305, 1307 (Del. Super. Ct. 1986)). For example, one of the cases cited by Plaintiff states: "if a contract contains a choice of law provision regarding prejudgment interest, that choice will be honored" but "[i]f the contract does not include such a provision, Delaware courts have concluded that the subject of prejudgment interest is governed by the substantive law of the state where the contract was to be performed." *Cooper*, 505 A.2d at 1306. Ultimately, choice of law would not affect the outcome of this case, because each of Plaintiff's other arguments are fundamentally flawed.

[12] This estimate is based upon Plaintiff's expert report by Donald House, Ph.D. (the "House Report"), submitted on June 18, 2018. (ECF No. 362 at 2.) The House Report estimated the value of: (1) the proposed 50% ownership of the terminal unit at the Refinery to be worth $1.0216 billion; (2) the proposed 100% ownership of the

*Atlantic Basin Refining, Inc. v. JP Energy Partners, LP*
Case No. 1:15-cv-0071
Memorandum Opinion
Page 11 of 20

misconduct. *Id.* at 13 & n.7. Notably, Plaintiff makes no argument regarding the value of the confidential information itself.[13]

While Plaintiff characterizes these arguments as "revert[ing] to the damage claim it described in its opposition to the second motion to dismiss," ECF No. 362 at 1, this articulation of damages is at odds with Plaintiff's prior position. In its prior Opposition, Plaintiff identified three measurements of the damages: (1) "the lost value to ABR once the defendants began using ABR's confidential information"; (2) "the value gained by defendants once they began using ABR's confidential information"; and (3) "the value of the confidential information itself." *Id.* at 12. In conclusion, Plaintiff flatly states: "[n]one of these measures of damage[s] are linked to Limetree Bay's ultimate acquisition of Hovensa and, indeed, the damage to ABR occurred irrespective of Hovensa declaring bankruptcy and defendants/Limetree Bay acquiring the Hovensa assets." *Id.*

Defendants argue that Plaintiff's theories of damages, as most recently articulated, are directly tied to the Refinery assets and thus are precluded by the Sale Order. (ECF No. 365 at 12-19.) Defendants also argue that Plaintiff's "remaining causes of action do not permit recovery of damages based on the loss of the Hovensa opportunity" because "[e]ach of these claims turn on the NDAs and Defendants' alleged misuse of CI" and "neither of the NDAs required that the parties commit to the acquisition, let alone a partnership." *Id.* at 19-20.

---

refining unit at the Refinery to be worth $1.9278 billion; and (3) projected gross revenues between 2016 and 2022 to be $921.6 million. *Id.*

[13] Plaintiff briefly indicated a desire to establish the value of the confidential information itself as either $12 million or $18 million through the alternative uses of an expert report or testimony by its executives. (ECF No. 356 at 5.) However, as noted previously, Plaintiff withdrew this expert report and withdrew its reliance on its executives, and reverted to its "reliance on the House Report" to establish damages. *Id.* at 6.

*Atlantic Basin Refining, Inc. v. JP Energy Partners, LP*
Case No. 1:15-cv-0071
Memorandum Opinion
Page 12 of 20

In Plaintiff's Reply, Plaintiff acknowledges that it differs with Defendants on "whether a plaintiff can recover *damages* linked to a bankrupt [company]'s assets under an NDA claim after this Court has already clarified that its prior rulings were limited to the linkage between the *liability theory's* relationship with the asset." (ECF No. 366 at 1.) Plaintiff concedes that if the Court determines "that damages linked to the asset are also barred when the liability theory is not linked to the asset, then the Defendants are correct that—under such a ruling—ABR's remaining claims should be dismissed." *Id.* at 1-2.

### A.    Expectation Interest

Plaintiff argues that, under Virgin Islands law,[14] expectation damages "that flow from the breach of its NDA/confidentiality agreements" should give it "the benefit of its bargain and award a sum of money that will, to the extent possible, put it in as good a position as it would have been had the contract been performed." (ECF No. 362 at 11.) Specifically, Plaintiff argues that it if "defendants adhered to the requirements of the NDAs, there would have been one of two outcomes," namely that: (1) "ABR and ArcLight would have proceeded as planned and ABR would have ended up owning 100% of the refinery and 50% of the terminal"; or (2) "ABR would have found a different investor that would have agreed to substantially the same terms as the agreement between ABR and ArcLight." *Id.* at 12. Further, Plaintiff argues that "[u]nder either scenario, because ArcLight was bound by the NDA, it could not have proceeded to purchase the refinery or terminal on its own." *Id.* These are not serious

---

[14] The Court will address Plaintiff's arguments as alleged under Virgin Islands law. The Court notes that expectation damages are also a "standard remedy for breach of contract" under Delaware law, and are "based on the reasonable expectations of the parties that existed before or at the time of the breach." *Siga Techs., Inc. v. PharmAthene, Inc.*, 132 A.3d 1108 (Del. 2015), *as corrected* (Dec. 28, 2015).

*Atlantic Basin Refining, Inc. v. JP Energy Partners, LP*
Case No. 1:15-cv-0071
Memorandum Opinion
Page 13 of 20

arguments given Plaintiff's other pleadings in this matter and the language of the NDAs themselves.

First, as Defendants correctly identify, the NDAs unequivocally state that Defendants were not obligated to enter into any transaction or partnership with Plaintiff beyond the NDAs. (ECF No. 365 at 20.) The NDA between Plaintiff and Defendant JP Energy Partners LP states:

> It is expressly understood that this Agreement is not and shall not be construed as any obligation or form of a letter of intent or agreement to enter into definitive agreements associated with the Authorized Purpose [of evaluating a possible business relationship between the Parties]. The approval and execution of any such other definitive agreements shall be subject to each party's sole discretion and satisfaction, which may be withheld for any reason.

(ECF No. 227-1 at 3.) The NDA between Plaintiff and Defendant ArcLight Capital Partners, LLC states:

> Nothing herein shall obligate either Party to proceed with any transaction, relationship or venture contemplated hereunder, and each Party reserves the right, in its sole discretion, to terminate the discussions contemplated by this Agreement concerning the business opportunity. This Agreement does not create any agency, partnership or joint venture relationship between the Parties.

(ECF No. 227-2 at 3.) Thus, as Defendants argue, ECF No. 365 at 21, there is no "benefit of the bargain" or "expectation" in the NDAs that grants Plaintiff a benefit or any expectation in the form of a further transaction or any interest—ownership or otherwise—over the Refinery. Accordingly, Plaintiff's assertion—that absent Defendants' alleged breach of the NDA, "ABR would have ended up owning 100% of the refinery and 50% of the terminal"—is extremely tenuous. (ECF No. 362 at 12.) This argument cannot conceivably reach the "reasonable certainty" standard required to establish expectation damages. *See Siga Techs., Inc. v.*

*Atlantic Basin Refining, Inc. v. JP Energy Partners, LP*
Case No. 1:15-cv-0071
Memorandum Opinion
Page 14 of 20

*PharmAthene, Inc.*, 132 A.3d 1108, 1111 (Del. 2015), *as corrected* (Dec. 28, 2015) ("[E]xpectation damages can be established as long as the plaintiff can prove the *fact* of damages with reasonable certainty." (emphasis in original)).

Second, Plaintiff's operative pleadings concede that it could not find another investor for this opportunity following Plaintiff's failure to secure the Refinery opportunity for itself. *See* ECF No. 227. For example, Plaintiff detailed an initial investment banking outreach to 142 prospective investors that resulted in only four investors submitting indications of interest. *Id.* at 8-10. Plaintiff further noted that "most bidders" saw "no value" in the Refinery and "too much investment risk." *Id.* Plaintiff detailed its failure to obtain ratification of its proposed solo Operating Agreement by the Virgin Islands Legislature and its subsequent search for a financial partner for a second attempt at legislative approval. *Id.* at 14. Finally, Plaintiff—in its own words—described its identification of a financial partner as "time sensitive" and required for its "ability to close" on the Refinery opportunity. *Id.* at 19. Thus, Plaintiff's claim—nine years after the events in question—that "ABR would have found a different investor that would have agreed to substantially the same terms as the agreement between ABR and ArcLight" is, at best, speculative, and unsupported by the totality of its own pleadings. (ECF No. 362 at 12). Thus, any expectation that—absent Defendants' entering into the NDAs and scoping out a potential business arrangement related to the Refinery—Plaintiff would have found a different investor and would have closed on the Refinery opportunity— much less on "the same terms as the agreement" with Defendants—is extremely tenuous. This argument also cannot conceivably reach the "reasonable certainty" standard required to establish expectation damages. *See Siga Techs.*, 132 A.3d at 1111.

Third, Plaintiff's claim that "because ArcLight was bound by the NDA, it could not have proceeded to purchase the refinery or terminal on its own," ECF No. 362 at 12, is a non-sequitur. There is no provision in either NDA that categorically restricts either Defendant from purchasing any component of the Refinery on its own. If Plaintiff wished to obtain the "benefit" of such a restrictive "bargain," then they should have bargained for such a restriction in writing.

In conclusion, Plaintiff's articulation of its damages under an "expectation interest" theory—namely, that its "damages are exactly the same as the damages as if it had acquired the refinery and terminal but those damages are not based upon the 'loss of the deal'" but "rather, these damages represent the loss in value to [Plaintiff] caused by [D]efendants' breach"—is legally insufficient. This is not a reasonable expectation stemming from the NDA and is precisely the type of consequential "loss of the deal" argument that courts appear to reject. *See Beard Rsch., Inc. v. Kates*, 8 A.3d 573, 618-19 (Del. Ch.), *aff'd sub nom. ASDI, Inc. v. Beard Rsch., Inc.*, 11 A.3d 749 (Del. 2010) (declining to base a damages award on the loss of a contract renewal that plaintiff claimed stemmed from the breach of an NDA because of insufficient evidence in the record to support a finding that the third-party would, in fact, renew the contract); *Paul Johnson Drywall Inc. v. Sterling Grp. LP*, Civil No. 2021-01408, 2025 U.S. Dist. LEXIS 29091, at *128-29 (D. Ariz. Feb. 18, 2025) (declining to base a damages award on the difference in purchase price of a company that plaintiff claimed stemmed from the breach of an NDA because the record reflected that the third-party company's sale price was firmly set irrespective of any NDA breach).

*Atlantic Basin Refining, Inc. v. JP Energy Partners, LP*
Case No. 1:15-cv-0071
Memorandum Opinion
Page 16 of 20

Notwithstanding Plaintiff's arguments under Virgin Islands law, the Court grounds this finding in Delaware law which states that the "standard remedy for breach of contract" of expectation damages must be "based on the reasonable expectations of the parties that existed before or at the time of the breach." *Siga Techs., Inc.*, 132 A.3d at 1132-33. The value of the assets acquired by Defendants in the Hovensa bankruptcy, and any future profits derived thereof, is not a reasonable expectation stemming from the contract at time of the alleged breach, given the facts described by Plaintiff and the explicit language of the NDA disclaiming any obligation to consummate any further transaction. The Court finds that—based upon Plaintiff's well-pleaded factual allegations, and assuming the veracity of the pleadings—Plaintiff's specific claim to have been damaged in the amount of $3.971 billion in expectation interest stemming from its valuation of the Refinery units and the Refinery's expected profits—rather than some valuation of the confidential information itself—does not "plausibly give rise to an entitlement to relief" for breach of the NDA contracts. *Connelly*, 809 F.3d at 787. Accordingly, to the extent that Count Two (breach of contract) is predicated on damages resulting from a fundamentally flawed theory of expectation interest, Plaintiff has failed to adequately plead an element essential—damages—to a breach of contract claim. *See VLIW Tech., LLC v. Hewlett-Packard Co.*, 840 A.2d 606, 612 (Del. 2003).

Finally, as Defendants correctly identify, Plaintiff's arguments constitute an impermissible collateral attack on the Sale Order entered by the Bankruptcy Court. (ECF No. 365 at 15-19.) Judge Lewis analyzed this issue extensively in her July 16, 2018 Memorandum Opinion, and concluded that where Plaintiff's allegation "portray a link between Defendants' actions—which form the basis of the claim—and Plaintiff's loss of its expected profits from

owning and operating the Hovensa facilities" such claims are "interests" under 11 U.S.C. § 363(f) that are barred by the "free and clear" provision of the Bankruptcy Court's Sale Order. 2018 U.S. Dist. LEXIS 117974, at *39-40, 44-45 (ECF No. 217 at 27, 34). This Court adopts Judge Lewis's analysis.[15] Because Plaintiff's expectation interest theory of damages for Count Two, alleging breach of contract, portrays a link between Defendants' breach of the NDAs and Plaintiff's loss of its expected profits from owning and operating the Refinery, such a claim is—in addition to be being subject to dismissal for failure to state a claim upon which relief can be granted—barred by the Sale Order.

### B. Restitution

Plaintiff argues that, under Virgin Islands law,[16] a restitution theory would require Defendants to "disgorge the value of what they improperly obtained" through their breach

---

[15] Plaintiff filed a Notice of Supplemental Authority, ECF No. 367, suggesting that the Supreme Court recently held in *Harrington v. Purdue Pharma L. P.* that a "bankruptcy court lacks the power to extinguish the claims that non-consenting victims of a tort have against a nondebtor tortfeasor" and the *Purdue* decision "calls into question the breadth of the definition of 'interests' under 11 U.S.C. § 363(f) as applied in this case[.]" (ECF No. 367 at 1 (citing 603 U.S. 204 (2024)).) Defendants correctly identify the factual incongruencies of that case to the one at hand: *Purdue* "concerned a release provision in a Chapter 11 bankruptcy reorganization plan for Purdue Pharma L.P. that sought to discharge, without the consent of any claimants, all current and future claims against the Sackler family (the non-debtor owners of Purdue)." (ECF No. 368-1 at 3.) Every court to consider the issue appears to have declined to apply *Purdue*'s holding to bankruptcy sale orders under 11 U.S.C. § 363(f), and this Court will follow suit. *See, e.g.*, *In re Hopeman Bros., Inc.*, 667 B.R. 101, 107-08 (Bankr. E.D. Va. 2025) ("[T]he Court has not found, and has not been pointed to, any decision extending *Purdue*'s decision to § 363 sales. . . Nothing in its opinion suggests that the protections afforded a buyer pursuant to § 363, including the ability of the purchaser to obtain the asset free of the claims of the debtor's creditors, were intended to be abrogated."); *In re Com. Express, Inc.*, 670 B.R. 573, 592 (Bankr. M.D. Fla. 2025) ("*Purdue* is so distinguishable from the instant case that it does not preclude the [Section 363(f)] bar orders at issue here."); *In re Nash. Eng'g Co.*, Civil No. 2025-00055, 2025 U.S. Dist. LEXIS 188646, at *23 (D. Conn. Sep. 25, 2025) ("In *Purdue*, the Supreme Court did not issue a sweeping change. Instead, the Court cautioned that the decision is 'narrow' and answers only 'the question presented.' The Supreme Court did not prohibit all third party releases and injunctions. Section 363(f) expressly allows the sale of estate property free and clear of third-party claims.").

[16] The Court will address Plaintiff's arguments as alleged under Virgin Islands law. The Court notes that restitution is "simply an alternative remedy for the breach which a plaintiff may elect under certain circumstances." *R.M. Williams Co. v. Frabizzio*, Civil No. 90C-MY-10, 1993 Del. Super. LEXIS 55, at *44 (Del. Super. Ct. Feb. 8, 1993); *Segovia v. Equities First Holdings, LLC*, Civil No. 2006-09-149, 2008 Del. Super. LEXIS 197, at *79 (Del. Super. Ct. May 30, 2008) (noting that it is "it is appropriate to award breach damages on a restitution or 'restoration' theory of recovery" when the non-breaching party is "excused from future

of contract, namely: "100% of the terminal [unit] plus 100% of the refinery [unit]" of the Refinery, totaling $3.971 billion. (ECF No. 362 at 13.) Plaintiff argues that restitution is also an appropriate theory of damages for their misappropriation claim because "[t]he remedy for conversion may require the misappropriating party to pay the full value of the chattel" and "misappropriation appears to be a more specific form of conversion." *Id.* at 14. Finally, Plaintiff argues that "[a]n action brought in *quantum meruit*" also "sounds in restitution." *Id.* at 15. Plaintiff correctly identify that the purpose of restitution is to restore "any benefit" conferred upon the other party. *Id.* at 12.

Seeking disgorgement of the value of the Refinery, however, fundamentally misframes the facts at the heart of these three surviving causes of action. The value of the Refinery was not "any benefit" that Plaintiff conferred upon Defendants through any arrangement between the parties—contractual or otherwise. Rather, Plaintiff's three causes of action revolve around the benefit of confidential information that Plaintiffs conferred upon Defendants, and Defendants' alleged misuse of that confidential information. Thus, restoration of that benefit—the confidential information—back from Defendants to Plaintiff would fundamentally require either return of the confidential information, or the return of the value of that confidential information. However, Plaintiff has not plead such a theory of restitution, and to the extent that it briefly proposed such a theory during the pendency of this litigation, Plaintiff has withdrawn its reliance on such a theory. (ECF No. 356 at 5-6.)

---

performance," in order for the non-breaching party to be "returned to the position . . . that it occupied before it entered the [contract]").

The Court finds that—based upon Plaintiff's well-pleaded factual allegations, and assuming the veracity of the pleadings—Plaintiff's specific claim to restitution and disgorgement in the amount of $3.971 billion—as the damages it sustained due to Defendants' alleged breach of contract, misappropriation, and unjust enrichment (*quantum meruit*) conduct related to the NDAs and the confidential information exchanged—does not "plausibly give rise to an entitlement to relief," *Connelly*, 809 F.3d at 787, because the restitution theory that Plaintiff espouses does not seek the return of "a benefit" that Plaintiff, in fact, conferred upon Defendants. Accordingly, to the extent that Count Two (breach of contract), Count Four (Misappropriation), and Count Six (*Quantum Meruit*) are predicated on damages resulting from a fundamentally flawed theory of restitution, Plaintiff has failed to adequately plead an element essential (damages) for a breach of contract claim[17] and a misappropriation claim,[18] as well as essential elements (defendants' enrichment, at the plaintiff's expense) for *quantum meriut*.[19]

Additionally, because Plaintiff's restitution theory of damages "portray[s] a link between Defendants' actions—which form the basis of the claim—and Plaintiff's loss of its expected profits from owning and operating the Hovensa facilities," such claims are "interests" under 11 U.S.C. § 363(f) that are barred by the "free and clear" provision of the Bankruptcy Court's Sale Order. 2018 U.S. Dist. LEXIS 117974, at *39-40, 44-45. Thus, these claims, to the extent they are based on a restitution theory of damages seeking the full value

---

[17] *See VLIW Tech., LLC*, 840 A.2d at 612.

[18] *See Sustainable Energy Generation Grp., LLC*, 2014 Del. Ch. LEXIS 90, at *50.

[19] *See Whitaker*, 2020 U.S. Dist. LEXIS 239152, at *10-11.

of the Refinery, are—in addition to be being subject to dismissal for failure to state a claim upon which relief can be granted—barred by the Sale Order.

## IV.     CONCLUSION

For the reasons outlined above, the Court finds that Plaintiff has failed to articulate a viable theory of damages and therefore has failed to state a claim upon which relief can be granted. Accordingly, Defendants' Response, ECF No. 365, seeking relief in the form of the dismissal of Plaintiff's claims and which the Court construes as a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, is granted. The Court will dismiss Plaintiff's remaining claims—Count Two (Breach of Contract), Count Four (Misappropriation), and Count Six (*Quantum Meruit*)—with prejudice, and will dismiss this case.

An appropriate Order accompanies this Memorandum Opinion.

**Dated:** March 27, 2026                          */s/ Robert A. Molloy*
                                                              **ROBERT A. MOLLOY**
                                                              **Chief Judge**