IN THE DISTRICT COURT OF THE VIRGIN ISLAND
DIVISION OF ST. CROIX

ATLANTIC BASIN REFINING, INC.

    PLAINTIFF,

VS.

ARCLIGHT CAPITAL PARTNERS, LLC
AND JP ENERGY PARTNERS, LP,

    DEFENDANTS.

CASE NO.: 1:15-cv-00071

### ABR"S OPPOSITION TO DEFENDANTS" MOTION FOR AN AWARD OF ATTORNEYS" FEES AND COSTS[1]

Defendants seek approximately $4.2 million in combined fees and costs for defending a commercial dispute that their own local counsel has sworn under oath "is not complex or novel."[2] The Declaration of Attorney Sammi seeks $3,411,040 in fees for ten Latham & Watkins timekeepers and $730,429.95 in costs, and the Declarations of Attorney Lockwood and Attorney Kronenberger seek an additional $53,802.05 for local counsel Dudley Newman Feuerzeig, LLP ("DNF"). Section 541(b) of Title 5 of the Virgin

---

[1] ABR moved to stay (Doc. No. 388) briefing on the Defendants' motion for fees and costs and by filing this opposition within its deadline for filing same, ABR does not withdraw that motion. The Court should still stay the briefing and its decision pending the resolution of ABR's appeal for all of the reasons set forth in ABR's motion to stay.

[2] Attorney Lockwood is correct. Other than a bankruptcy issue that involves the interpretation of 11 U.S.C. § 363, which is a matter of pure legal/statutory analysis, the case is a simple commercial dispute. The bulk of the time in the case has dealt with the two motions to dismiss (concerning the interpretation of Section 363) and economic experts. While the economic damages are large and may require a skilled economic expert, there is no need for specialized legal counsel in this case.

1

Islands Code is an indemnity statute. It entitles the prevailing party only to "a fair and reasonable portion" of its fees, "not . . . the whole amount charged." *Lucerne Inv. Co. v. Estate Belvedere, Inc.*, 411 F.2d 1205, 1207 (3d Cir. 1969) (citing *Smith v. Government of the Virgin Islands*, 361 F.2d 469 (3d Cir. 1966); *Good Timez, Inc. v. Phoenix Fire & Marine Ins. Co.*, 754 F. Supp. 459, 461 (D.V.I. 1991). The moving party bears the burden of proving the reasonableness of every hour billed, every rate charged, and every cost claimed.

Defendants fail to meet their burden. As explained in Part I, the supporting records are deficient in their proof: they are voluminous and unsegregated, they state no per-task rate or dollar amount, and the cost figures shift between the Motion and the supporting declaration and are largely unsupported by invoices. As explained in Parts II and III, even taking the records as Defendants present them, the fees are unreasonable in both their rates and their hours, and the costs are, with limited exceptions, not recoverable at all under Section 541(a).

ABR submits the Court should cap all hourly rates at the prevailing Virgin Islands rates, disallow $364,534 (calculated at capped rates) in non-compensable Latham attorney time by category, reduce the DNF fee claim from $49,542.50 to $27,030, and award no costs (or, in the most generous alternative, no more than approximately $12,858 of the $730,429.95 claimed).

## I. DEFICIENCIES IN DEFENDANTS" PROOF

Before turning to the reasonableness of the rates and hours, ABR addresses a threshold problem that pervades the entire submission: the records Defendants filed

2

do not present their request in a form that permits the entry-by-entry review the law requires, and they impose that burden on ABR and the Court instead.

### A. DEFENDANTS PRODUCED AN UNDIFFERENTIATED MASS OF BILLING RECORDS RATHER THAN THE RECORDS SUPPORTING WHAT THEY ACTUALLY SEEK.

Although the Motion and the supporting declarations state the totals Defendants seek and identify the ten timekeepers whose fees are sought, Defendants did not produce records segregated to that request. They instead submitted their law firm"s billing records in bulk— including the time of paralegals, law clerks, and staff counsel whose time Defendants properly do not seek to recover—leaving ABR and the Court to sort the time that is sought from the far larger body of time that is not. The result is that the work of identifying, isolating, and analyzing the ten timekeepers" entries fell to ABR. Compounding the problem, the records were produced as invoice images rather than as analyzable data, so that ABR"s counsel was required to spend many hours, even with the assistance of an artificial-intelligence tool, simply to reconstruct the entries into a format in which they could be reviewed and totaled. ABR's reconstruction of the invoices are attached to this memorandum as Exhibit 1 (Latham time entries); Exhibit 2 (Latham cost entries) and Exhibit 3 (DNF fee and cost entries).[3] A party that seeks to shift several million dollars in fees and costs to its

---

[3] Defendants produced the Latham & Watkins billing records as a series of invoice images rather than as analyzable data. To permit a comprehensive, entry-by-entry review, ABR"s counsel used an artificial-intelligence tool to transcribe and reconstruct the invoice line items into a structured spreadsheet. The accuracy of that reconstruction was confirmed through several independent cross-checks: the reconstructed line items for each of the twenty-seven invoices were reconciled to that invoice"s own "Total Costs and Disbursements" figure, with zero variance; the per-category totals were reconciled to the invoice subtotals stated on the face of each

opponent bears the burden of presenting its request in a form the Court and the opposing party can test; Defendants did the opposite.

### B. THE FEE ENTRIES STATE NO PER-TASK RATE OR DOLLAR AMOUNT, WHICH PREVENTS ANY MEANINGFUL REVIEW OF REASONABLENESS.

The individual time entries do not state the rate applied to the task or the dollar amount charged for it. This matters for several concrete reasons. First, because no rate appears on the entry, neither the Court nor ABR can determine which timekeeper"s rate was applied to a given task, or test whether that rate is reasonable for that work. Second, because no dollar amount appears on the entry, the reasonableness of any individual charge cannot be assessed from the face of the record, and the firm"s own arithmetic cannot be verified. Third, the entries are heavily block-billed, grouping several distinct tasks into a single time entry, so that even the hours cannot be allocated among the tasks performed. *MRL Dev., LLC v. Whitecap Inv. Corp.*, Case No. 3:18-cv-48, 2017 WL 4863902, at \*9 (D.V.I. Mar. 23, 2017), report and recommendation adopted sub nom. *MRL Dev. I, LLC v. Whitecap Inv. Corp.*, 2017 WL 1173922 (D.V.I. Mar. 29, 2017). The lodestar method requires the Court to examine the reasonableness of the time spent on each task at the rate properly applicable to it, and a record that omits both the per-task rate and the per-task amount does not permit that examination.

---

invoice; and the aggregate fee and cost figures were reconciled to the totals stated in the Declaration of Attorney Sammi. The reconciliation exhibits are submitted in PDF format. Excel versions of the spreadsheets cannot be filed electronically. The Excel versions can be submitted to the Court upon request.

### C. THE COST REQUEST IS A MOVING TARGET AND IS LARGELY UNSUPPORTED. THE DEFECTS IN THE COST SUBMISSION ARE OF THE SAME CHARACTER.

The amount sought is not even consistent within Defendants" own filings: the Motion requests $734,689.50 in costs, while the Declaration of Attorney Sammi states a lower figure of $730,429.95.[4] Beyond that inconsistency, the cost records are incomplete, and—with the sole exception of the invoices from Complete Discovery Source and AlixPartners—they are unsupported by any invoice or receipt, notwithstanding that LRCi 54.1(b) requires supporting invoices for each item. Here again, ABR was left to reconstruct and reconcile the cost records, invoice by invoice, in order to analyze those costs that might be recoverable and those that are not. As Part III demonstrates, that reconstruction reveals that nearly a quarter of the claimed costs is undocumented and that the documented remainder consists overwhelmingly of non-recoverable overhead.

In short, the Defendants failed to present records that carry their burden of proof. The reductions set out below should be understood against that backdrop: where Defendants" own records leave a charge unexplained, unsupported, or untestable, the burden of that deficiency falls on the movant, not on ABR or the Court.

## II. LEGAL STANDARD

Section 541(b) permits the Court to award a reasonable indemnity, not full reimbursement of the amounts a party was charged. *Lucerne*, 411 F.2d at 1207. The

---

[4] The $4,259.55 difference between the two figures is precisely the amount of the DNF costs, which the Motion folded into its total and the Declaration of Attorney Sammi did not. The DNF costs are addressed in Part IV.C below.

5

Court determines a reasonable fee using the lodestar method together with the seven factors set forth in *Lucerne*, and it excludes hours that are excessive, redundant, or otherwise unnecessary. *Allahar v. Clinical Lab"y, Inc.*, Case No. 1:11-cv-00001, 2022 WL 18284857, *6 (D.V.I. Oct. 14, 2022).

With respect to hourly rates, the prevailing market rate in the Virgin Islands spans roughly $125 to $300 per hour, with rates as high as $350 per hour recognized only recently and only for especially experienced attorneys. *George v. Allison Indus. Servs.*, 2024 WL 111820, *3 (D.V.I. Jan. 10, 2024) (setting Attorney Lockwood"s rate at $300/hour and Attorney Kronenberger at $200/hour; *id.* at *4); *High Times VI Enters., LLC v. Rahhal*, 74 V.I. 304, 317 (V.I. Super. 2021) (finding $350 per hour consistent with the customary and prevailing rate for experienced counsel); *Roy v. Poleon*, 2018 WL 6721399, *4 (V.I. Super. Dec. 14, 2018) (approving $350 per hour for in-court services and $300 per hour for other services). The moving party bears the burden of producing "satisfactory evidence—in addition to the attorney"s own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984); *Maldonado v. Houstoun*, 256 F.3d 181, 184 (3d Cir. 2001); *Interfaith Cmty. Org. v. Honeywell Int"l, Inc.*, 426 F.3d 694, 708 (3d Cir. 2005). Attorneys admitted pro hac vice from jurisdictions with higher prevailing rates are held to the local Virgin Islands rates. *MRL Dev., LLC*, 2017 WL 4863902 at *4. Where a claimed rate exceeds the customary range, this Court reduces it to the customary figure, as it did in *Vitalis*, where the Court reduced an experienced

shareholder"s claimed rate of $375 per hour to $300 per hour. *Vitalis,* 2024 WL 4466773 at *11 (and reducing rates even lower based upon the fact that they were incurred several years earlier, when rates were lower).

As for the hours billed, this Court reduces or excludes time that is block-billed, vaguely described, or clerical in nature, as well as charges for computerized legal research. *Morcher*, 32 F. Supp. 2d at 243; *Roy*, 2018 WL 6721399 at *4. Paralegal and other non-attorney time is treated as firm overhead and is not recoverable. *Vitalis*, 2024 WL 4466773 at 11 n.9; *Chapa v. Sepe*, 2013 WL 8609242, *1 (V.I. Super. June 3, 2013); *Mahabir v. Heirs of George*, 2014 WL 1392954, *2 (V.I. Super. Apr. 4, 2014).

With respect to costs, the recoverable categories are fixed exclusively by the closed, six-item list in Section 541(a). The general federal cost-taxing statute, 28 U.S.C. § 1920, does not apply in this Court, and any expense that constitutes overhead and falls outside the statutory list is not recoverable. *Dr. Bernard Heller Found. v. Lee*, 847 F.2d 83, 86-88 (3d Cir. 1988); *Vitalis*, 2024 WL 4466773 at *14. In addition, each cost item must be supported by an invoice. The Local Rule is explicit: "Counsel shall append to the verified Bill of Costs copies of all invoices in support of the request for each item." LRCi 54.1(b); *Vitalis*, 2024 WL 4466773, at 14–5 (disallowing deposition and witness costs that were submitted without supporting invoices).

## III. THE REQUESTED FEES SHOULD BE REDUCED

The fee request fails for two independent reasons: the hourly rates of both firms exceed the prevailing Virgin Islands rates, and the Latham hours are inflated by categories of time that this Court routinely reduces or excludes. The DNF fee claim

suffers from the additional defects of non-recoverable paralegal time.

### A. THE HOURLY RATES OF BOTH FIRMS SHOULD BE CAPPED AT THE PREVAILING VIRGIN ISLANDS RATES.

The governing standard for a reasonable hourly rate is the same for both firms: the rate must reflect what attorneys of comparable skill and experience customarily charge *in the Virgin Islands*, a range this Court has fixed at roughly $125 to $350 per hour, with $300 the figure most recently applied to an experienced attorney in *Vitalis*. The rates of both firms exceed that range, and Defendants" own local counsel has [accurately] sworn that this matter "is not complex or novel," which forecloses any departure to the upper end of the range, let alone above it.

#### 1. THE LATHAM & WATKINS RATES

The Latham partner rates range from $1,025 to $1,860 per hour, and the associate rates range from $725 to $1,380 per hour. The Declaration of Attorney Sammi concedes that these rates exceed the range that this Court has recognized as reasonable, and Defendants offer no evidence that their New York rates prevail in the Virgin Islands. The Court should cap these rates at $300 per hour for partners, $225 per hour for senior associates, and $175 per hour for junior associates. This single correction reduces the $3,411,040 fee request to approximately $843,000, before any of the category reductions discussed below.

#### 2. THE DNF RATES

Attorney Lockwood billed at rates that climbed from $380 to $480 per hour over the course of the representation, and Attorney Kronenberger billed at $425 per hour. These local rates are far closer to the prevailing Virgin Islands rate than the Latham rates

8

are, but they still exceed it, and they should be capped at the same $300 per hour. *Vitalis*, 2024 WL 4466773 at \*11; *George*, 2024 WL 111820 at \*3. Indeed, the DNF rates make the point that decides the Latham rates as well: if even local Virgin Islands counsel, billing at $480 per hour, must be reduced to the customary $300, then out-of-jurisdiction counsel billing as much as $1,860 per hour—for a matter that local counsel has sworn is not complex or novel—plainly cannot stand. Capping DNF"s 90.1 hours of compensable attorney time at $300 per hour yields $27,030.

## B. THE LATHAM HOURS ARE INFLATED AND MUST BE REDUCED BY CATEGORY

Independent of the rate cap, the Latham hours must be reduced for several categories of non-compensable or unreasonable time. Each reduction below is calculated at the capped Virgin Islands rates, and the categories are defined so as not to overlap.[5]

### 1. BLOCK BILLING (REDUCED FIFTY PERCENT)

Roughly 1,833 hours, more than half of the total claimed, are block-billed, with several distinct tasks grouped within a single entry so that the time attributable to each cannot be determined. After the higher-priority objections below are assigned

---

[5] In Exhibit A, ABR has analyzed the time entries for the attorneys that Attorney Sammi attested were reasonably necessary to the defense of the case. The spreadsheet (in Excel) was set up to prioritize rate reductions by category so that only one rate reduction could be applied per entry. As an example, if an entry was for a non-compensable secretarial task (reduced to zero) and also reflected block billing (with a 50% reduction applied to all block billing), only the largest reduction would be applied (and only applied once if there were two independent grounds for taking the largest reduction).

first,[6] 400 block-billed entries comprising 1,427.9 hours remain, and a fifty-percent reduction removes 714.0 hours, or approximately $172,055. *Cf. MRL Dev.*,2017 WL 4863902, at *9 and n.28 (excluding block-billed entries *in their entirety*).

### 2. ROTE AND TEMPLATE ENTRIES (DISALLOWED IN FULL)

The records contain numerous identical, templated descriptions billed repeatedly. For example, "Review documents potentially responsive to ABR"s first set of requests" appears eighteen times for 86.2 hours; "Attention to outstanding discovery requests; existing discovery limitations; draft/edit/revise discovery requests; confer with team regarding same" recurs verbatim; and "set strategy regarding motion for summary judgment" appears ten times (repeatedly billing for a motion that was never filed).[7] Because these descriptions are identical from one entry to the next, it is impossible to determine what work was performed, whether it was duplicative, or whether the time was reasonable, and the moving party"s burden is not met by a description that could apply to any task on any day. These 207 entries, comprising 588.1 hours, should be disallowed in full, removing approximately $148,122.

### 3. VAGUE ENTRIES AND LATE-COUNSEL RAMP-UP (DISALLOWED IN FULL)

Thirteen entries (39.9 hours) describe only a generic activity with no identified subject, such as "Review of case file" and "Conduct document review," and should be disallowed in full, removing approximately $9,970. In addition, Attorney Sammi

---

[6] See footnote 5, *supra*.

[7] The docket will reflect that no motion for summary judgment was ever filed in this case.

entered the case on March 8, 2022, and Attorney Blitzer shortly thereafter; the time these attorneys spent familiarizing themselves with a years-old matter is ramp-up time that should not be charged to the opposing party, particularly at rates of $1,570 to $1,860 per hour. Those twenty-one entries (31.7 hours) should be disallowed in full, removing approximately $9,510.

### 4. CLERICAL AND PRO HAC VICE TIME (DISALLOWED IN FULL)

Two entries (7.1 hours, approximately $1,642) reflect clerical work that is firm overhead. *MRL Developement, LLC*, 2017 WL 4863902 at *10. A further forty-eight entries (103.3 hours, approximately $23,235) reflect time obtaining the pro hac vice admission of out-of-jurisdiction counsel, which is likewise firm overhead. Both are disallowed in full.

### 5. SUMMARY OF REDUCTIONS TO LATHAM FEES

The following table summarizes the category-based reductions to the Latham fees.

| Category | Entries | Hours Disallowed | Reduction |
|---|---|---|---|
| Block billing (reduced fifty percent) | 400 | 714.0 | $172,055 |
| Rote and templated entries (disallowed in full) | 207 | 588.1 | $148,122 |
| Pro hac vice admission (disallowed in full) | 48 | 103.3 | $23,235 |
| Vague entries with no subject (disallowed in full) | 13 | 39.9 | $9,970 |
| Late-counsel ramp-up (disallowed in full) | 21 | 31.7 | $9,510 |
| Clerical and secretarial (disallowed in full) | 2 | 7.1 | $1,642 |
| Total | 691 | 1,484.1 | $364,534 |

11

These category reductions are calculated at the capped rates and are in addition to the rate cap itself.[8]

### C.  THE DNF FEE CLAIM INCLUDES NON-RECOVERABLE PARALEGAL TIME

Beyond the rate cap addressed above, the DNF claim of $49,542.50 includes time that is not recoverable: $7,227.00 represents time billed by the paralegal JoAnn Brumant at $160 to $190 per hour, and an additional $519.00 represents other non-attorney staff time; paralegal and non-attorney time is firm overhead and is not recoverable. *Vitalis*, 2024 WL 4466773 at *11;. After the rate cap and these reductions, the recommended DNF fee award is $27,030.

### IV. THE REQUESTED COSTS SHOULD BE REDUCED TO ZERO

Of the $730,429.95 in costs claimed, the Court should award nothing. The threshold defect— the absence of supporting invoices— is dispositive as to both firms" costs. In the alternative, the request fails on the merits, item by item.

### A.  THE THRESHOLD DEFECT: NO INVOICES, NO COSTS

LRCi 54.1(b) is unambiguous: "Counsel shall append to the verified Bill of Costs copies of all invoices in support of the request for each item." LRCi 54.1(c) is likewise clear: "Upon failure of the prevailing party to comply with this Rule, all costs not properly supported *shall be waived*." (Emphasis added.)

With the sole exception of the CDS and AlixPartners invoices, which are addressed and independently disallowed below, Defendants submitted no supporting invoices or

---

[8] The Latham invoices attached to the motion reflect additional time billed by other timekeepers that is not supported by the Declaration of Attorney Sammi. Because Defendants do not seek recovery of that time, ABR does not address it here.

receipts whatsoever—none for depositions, none for transcripts, none for filing fees, and none for any other item, by either Latham or DNF (except the single category of DNF transcripts noted below). In *Vitalis*, this Court disallowed every deposition cost for which the moving party failed to submit an invoice, reducing a claim of $10,495.73 to the $6,217.13 actually documented, and disallowed the claimed witness fees in their entirety for the same reason. *Vitalis*, 2024 WL 4466773 at 14-15. The Third Circuit has affirmed the denial of all costs where the required invoice documentation was not attached. *Michael J. Benenson Assocs., Inc. v. Orthopedic Network of New Jersey*, 54 F. App"x 33, 37 (3d Cir. 2002). Because Defendants" submission suffers the identical defect, on a far larger scale, the proper cost award is zero.

The remaining subparts demonstrate that, even if the Court were to excuse the absence of invoices and reach the merits, the cost request fails item by item.

### B. THE LATHAM COSTS

Even if the Court reaches the merits of the Latham cost claim despite the lack of invoices, four points combine to defeat it. The four points are discussed below, but the following table summarizes the claim and the four points:

| Step | Component | Amount |
|---|---|---|
| | Total costs claimed (Declaration of Attorney Sammi) | $730,429.95 |
| 1 | Less undocumented and unsupported costs (no explanation found in Latham invoices) | ($168,524.40) |
| 2 | Less CDS (electronic-discovery vendor) | ($113,791.61) |
| 3 | Less AlixPartners (litigation consultant) | ($231,024.90) |
| 4 | Less Latham non-recoverable overhead | ($204,231.44) |
| | **Allowable costs, primary position (no invoices; LRCi 54.1(b))** | **$0.00** |
| | **Allowable costs, alternative (most generous reading)** | **$12,857.60** |

13

### 1. NEARLY ONE-QUARTER IS WHOLLY UNDOCUMENTED

When every invoice Defendants submitted is added together— all twenty-seven Latham invoices ($217,089.04), all eighty CDS invoices ($113,791.61), and all six AlixPartners invoices ($231,024.90)— the sum is $561,905.55. That is the entire universe of documented cost. It leaves $168,524.40, or 23.1 percent of the $730,429.95 claimed, with no invoice, no itemization, and no explanation anywhere in the record. A party cannot carry its burden as to costs it never documented, and this amount should be deducted at the threshold.

### 2. THE ALIXPARTNERS CONSULTANT CHARGE ($231,024.90) IS NOT RECOVERABLE

The single largest documented cost is the fee of a litigation consultant, not a cost of suit. AlixPartners did not testify; its invoices describe assisting counsel with the review of documents for "alleged confidential information" and with the damages analysis, billed at $700 to $975 per hour. Consultant fees of this kind fall within none of the categories in Section 541(a), and to the extent Defendants would recharacterize AlixPartners as a testifying expert, expert compensation is capped at $40 per day. 28 U.S.C. § 1821; *Heller*, 847 F.2d at 86-88. The charge should be disallowed.

### 3. THE CDS ELECTRONIC-DISCOVERY CHARGE ($113,791.61) IS OVERHEAD

Across eighty invoices spanning September 2019 through March 2026, the vendor Complete Discovery Source billed Defendants $113,791.61 for hosting, storing, and processing their litigation database— a recurring monthly overhead charge spanning more than six years. Nearly three-quarters of it, $83,537.70, is pure data-storage rent ("Monthly Near Line Data Storage" at $5 per gigabyte and "Monthly Data Hosting" at

14

$12 per gigabyte). This Court has "previously declared that charges related to overhead expenses are not compensable as costs under section 541(a)." *Morcher*, 32 F. Supp. 2d at 242. Electronic data storage is the modern equivalent of filing cabinets in a file room, and just as the *Morcher* court treated computerized research as non-recoverable overhead because it "differs from traditional research only in the mode of retrieval," electronic document hosting differs from physical storage only in the mode of retention. The remaining CDS charges—vendor "Project Management" time ($15,295.00), "Monthly User License" platform fees ($6,800.00), data-processing charges ($2,027.50), and undocumented "opening-balance" carry-forwards ($6,131.41)—are of the same overhead character. The entire CDS charge should be disallowed.

### 4. THE LATHAM INVOICES THEMSELVES ARE OVERWHELMINGLY OVERHEAD

The $217,089.04 in Latham costs, itemized in full from the twenty-seven invoices, is dominated by two categories of overhead: in-house electronic-discovery database labor ("Practice Support") at $72,745.50 (33.5 percent), and computerized legal research through Westlaw and Lexis at $62,290.43 (28.7 percent). Together these constitute 62 percent of the Latham cost claim, and this Court has excluded both as non-compensable in past cases. *Morcher*, 32 F. Supp. 2d at 242. The balance is of the same character— travel expenses of $26,245.98 (which includes counsel"s airfare and lodging to attend a hearing in Austin, Texas, rather than travel necessary to a deposition), in-house photocopying, meals and ground transportation for working late, docket-monitoring subscriptions, and similar items— none of which appears on the closed list in Section 541(a). Travel in particular is "generally not permitted as "costs"

under section 541(a)" and is recoverable, if at all, only for travel reasonably necessary to a deposition, which is not the case here. *Vitalis*, 2024 WL 4466773 at *15; *Heller*, 847 F.2d at 89.

### 5. THE CEILING, EVEN IN THE ALTERNATIVE, IS **$12,857.60**

Of the entire $730,429.95, the only items that even arguably fall within Section 541(a)"s enumeration are the Latham deposition charges ($10,918.61) and the hearing and deposition transcripts ($1,938.99)— a combined $12,857.60, or 1.8 percent of the request. These too were submitted without any supporting invoice and fail under LRCi 54.1(b) and *Vitalis* for that reason. Accordingly, even on the most generous possible reading, the recoverable cost award should not exceed $12,857.60; but the correct award, given the complete absence of supporting invoices, is zero.

### C. THE DNF COSTS

The $4,259.55 in DNF costs consists of three categories, two of which are non-recoverable on their face. First, $1,500.00 represents pro hac vice admission fees incurred to admit the Latham & Watkins attorneys, which is firm overhead, not a cost of suit. Second, $1,500.00 represents mediation fees, which do not appear on the list in Section 541(a) and are routinely disallowed. *Dorval v. Sapphire Vill. Condo. Owners Ass"n*, Case No. 3:18-cv-29, 2020 WL 2487315, *3 (D.V.I. May 14, 2020); *Solis v. V.I. Tel. Corp.*, 2016 WL 6304476, *2 (D.V.I. Feb. 18, 2016) (holding that "mediation costs are not among the costs listed in 5 V.I.C. § 541, and are typically disallowed"); Third, $1,259.55 represents hearing transcripts but these are not supported by an invoice. Further, there has been no showing that the hearing transcripts fall within the scope

16

of recoverable costs.

## CONCLUSION

Section 541(b) provides for a reasonable indemnity, not a windfall. But to earn even reasonable indemnity, the claim must be proven with competent evidence. Because Defendants generally fail in their burden of proof, ABR submits that the Court should deny the motion as filed and, to the extent any award is given, it should:

1. Cap all Latham & Watkins rates at the prevailing Virgin Islands rates of $300, $225, and $175 per hour, which reduces the $3,411,040 fee request to approximately $843,000;

2. Disallow a further $364,534 in Latham fees by category, on the grounds of block billing, rote and templated entries, vague entries, late-counsel ramp-up, clerical work, and pro hac vice time;

3. Reduce the DNF local-counsel fee claim from $49,542.50 to $27,030, on the grounds of the rate cap, the non-recoverable paralegal and non-attorney time;

4. Award no costs, for failure to submit the supporting invoices that Local Rule 54.1(b) requires, or, in the most generous alternative, award no more than approximately $12,858 of the $730,429.95 claimed; and

5. In all events, disallow the $168,524.40 undocumented balance, the $231,024.90 AlixPartners consultant charge, the $113,791.61 CDS charge, and the DNF pro hac vice and mediation costs.

Respectfully submitted,

Atlantic Basin Refining, Inc.

**Dated**: May 26, 2026

   /s/ Andrew C. Simpson
By: Andrew C. Simpson, Esq.
VI Bar No. 451
**ANDREW C. SIMPSON, P.C.**
2191 Church Street, Suite 5
Christiansted, VI 00820
Tel: 340.719.3900
asimpson@coralbrief.com

Joseph P. Klock, Jr., Esq.
FBN 156678 (admitted PHV)
**RASCO KLOCK PEREZ NIETO**
2555 Ponce De Leon Blvd.,
Suite 600
Coral Gables, Florida 33134
Telephone: 305.476.7105
Facsimile: 305.675.7707
Jklock@rascoklock.com

18