**UNITED STATES DISTRICT COURT OF THE VIRGIN ISLANDS**
**DIVISION OF ST. CROIX**

|  |  |
|---|---|
| ATLANTIC BASIN REFINING, INC.,<br><br>                Plaintiff,<br><br>     v.<br><br>ARCLIGHT CAPITAL PARTNERS, LLC and<br>JP ENERGY PARTNERS, LP,<br><br>                Defendants. | Case No. 15 Civ. 0071 (RAM) (EAH) |

**DEFENDANTS' REPLY IN SUPPORT OF**
**DEFENDANTS' MOTION FOR ATTORNEYS' FEES AND COSTS**

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ...................................................................................................................1

ARGUMENT .........................................................................................................................2

I.    ABR'S "THRESHOLD" ARGUMENTS ABOUT DEFENDANTS' RECORDS
      ARE MERITLESS...........................................................................................................2

      A.    Defendants' Fees Submission Is Sufficient, And Defendants Nonetheless
            Will Produce A Spreadsheet Containing The Information In The Fees
            Records ...................................................................................................................2

      B.    Defendants' Cost Submission Is Adequately Supported And Could Not
            Include Invoices That Are Unavailable Due To External Factors...........................4

II.   DEFENDANTS ARE ENTITLED TO FULL ATTORNEYS' FEES ...............................5

      A.    ABR Does Not Dispute That Defendants Are The Prevailing Parties.....................5

      B.    Defendants' Rates Reflect The Complexity Of The Litigation ...............................6

      C.    Defendants' Hours Are Reasonable.......................................................................11

III.  DEFENDANTS ARE ENTITLED TO COSTS ...............................................................14

      A.    Defendants Have Attached All Available Cost Invoices.......................................14

      B.    ABR's Request To Deny All Costs Should Be Rejected........................................15

      C.    Defendants' Requested Costs by Category............................................................16

CONCLUSION.....................................................................................................................17

## TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Chapa v. Sepe*,
2013 WL 8609242 (V.I. Super. Ct. June 3, 2013) ........................................................7

*Conexus Metals, LLC v. CRH Canada Grp., Inc.*,
2026 WL 1593208 (W.D. Pa. Apr. 17, 2026) ...............................................................7

*Equivest St. Thomas, Inc. v. Gov't of V.I.*,
2004 WL 3037953, 46 V.I. 447 (D.V.I. Dec. 31, 2004) ..............................................7

*Freund Tr. of Evelyn Freund Tr. u/t/a Dated 1/29/98 v. Liburd*,
2017 WL 11596465 (V.I. Super. Ct. Dec. 20, 2017) ....................................................8

*Frompovicz v. Niagara Bottling, LLC*,
2021 WL 601100 (E.D. Pa. Feb. 16, 2021) ..................................................................8

*George v. Allison Indus. Servs.*,
2024 WL 111820 (D.V.I. Jan. 10, 2024) ............................................................8, 9, 10

*Harrington v. Purdue Pharma, L.P.* ...................................................................................6

*High Times VI Enters., LLC v. Rahhal*,
2021 WL 3292442, 74 V.I. 304 (V.I. Super. Ct. Apr. 14, 2021) ...........................8, 10

*In re Paoli R.R. Yard PCB Litig.*,
221 F.3d 449 (3d Cir. 2000) .......................................................................................15

*Interocean Ins. Agency v. Joseph*,
2014 V.I. LEXIS 73 (V.I. Super. Ct. 2014) .................................................................9

*M & N Aviation, Inc. v. United Parcel Serv., Inc.*,
No. 2010-083, 2014 WL 1178200 (D.V.I. Mar. 21, 2014) ....................................6, 15

*Mercedes Palermo v. World Fresh Market, LLC*,
2020 WL 456952, 72 V.I. 415 (V.I. Super. Ct. 2020) ...............................................15

*Morcher v. Nash*,
32 F. Supp. 2d 239 (D.V.I. 1998) ...............................................................................13

*MRL Dev., LLC v. Whitecap Inv. Corp.*,
2017 WL 4863902 (D.V.I. Mar. 23, 2017) .................................................................11

*Pennsylvania v. Del. Valley Citizens' Council for Clean Air*,
478 U.S. 546 (1986) ....................................................................................................13

*Roy v. Poleon*,
   2018 WL 6721399 (V.I. Super. Ct. Dec. 14, 2018) ..................................................8, 10

*Simring v. Rutgers*,
   634 F. App'x 853 (3d Cir. 2015) ..........................................................................7, 12

*Tenafly Eruv Ass'n, Inc. v. Borough of Tenafly*,
   195 F. App'x 93 (3d Cir. 2006) ....................................................................................7

*Terrell v. Coral World*,
   55 V.I. 580 (V.I. 2011) ..............................................................................................15

*Vitalis v. Sun Constructors, Inc.*,
   2021 WL 3272198 (D.V.I. July 30, 2021)...............................................................8, 11

*Vitalis v. Sun Constructors, Inc.*,
   Civil Action No. 2005-0101, 2024 WL 4466773, 2024 U.S. Dist. LEXIS
   184891 (D.V.I. Oct. 9, 2024) .........................................................................10, 11, 14

**STATUTES**

5 V.I.C.
   § 541(a)(1)-(5) ....................................................................................................15, 16
   § 541(a)(2) ..................................................................................................................15
   § 541(b).........................................................................................................................6

**RULES**

Fed. R. Civ. P. 54(d)(2)...........................................................................................................6

**INTRODUCTION**

In opposing Defendants' request for attorneys' fees and costs, ABR does not deny that Defendants secured dismissal with prejudice of all seven counts in this case and, as the prevailing parties, are entitled to attorneys' fees and costs as a matter of law. Nor does ABR deny that this litigation spanned more than a decade, including multiple dispositive motions, motions for reconsideration, and extensive written discovery on novel questions of bankruptcy law and difficult choice-of-law issues—challenges that were further exacerbated by ABR's numerous, shifting damages theories. *See, e.g.*, Dkt. 332 at 2 n.1 (Court describing case as "long-running"); *id.* at 6 (Court noting ABR "changed its theory of damages . . . essentially at the eleventh hour"). And ABR cannot deny the stakes of this case, as its latest damages theory sought nearly ***$4 billion*** in damages, Dkt. 362 at 13; indeed, ABR concedes that the damages sought in this case were "large" and required a "skilled economic expert," Dkt. 394 ("Opp.") at 1 n.2. These are the hallmarks of an extraordinary and complex litigation with commensurate attorneys' fees and costs.

Nonetheless, ABR asks this Court for dramatic reductions—more than 85% in total—of Defendants' requested and substantiated fees and costs on the basis that this ten-year, multi-claim litigation is a "simple commercial dispute." *Id.*; *see id.* at 17. But ABR does not seriously defend that assertion or otherwise credibly question the specialized expertise and time-intensive work involved in litigating the complex statutory interpretation and factual questions raised in the case. And while ABR takes issue with the format of Defendants' fee records, its own complete, reverse-engineered analysis of those records—with "zero variance" from Defendants' invoices, *see* Dkts. 394-1, 394-2, 394-3—confirms that the underlying billing data is complete, accurate, and susceptible to meaningful review, thus undermining ABR's suggestion that Defendants' fees records are in any way "deficient," Opp. at 2. Defendants nonetheless will file a supplemental spreadsheet to facilitate the Court's entry-by-entry analysis of the fees. Moreover, in the interest

of compromise and reducing the burden on the Court, Defendants hereby reduce their request for costs to those directly supported by vendor invoices, for a total of $353,260.92 in costs.

Defendants respectfully submit that the fees and costs sought are reasonable in light of the complex, protracted nature of this litigation. The Motion should be granted.

**ARGUMENT**

## I. ABR'S "THRESHOLD" ARGUMENTS ABOUT DEFENDANTS' RECORDS ARE MERITLESS

### A. Defendants' Fees Submission Is Sufficient, And Defendants Nonetheless Will Produce A Spreadsheet Containing The Information In The Fees Records

ABR takes issue with Defendants' Latham & Watkins attorneys' fees records, claiming that the records are "undifferentiated" and do not permit "meaningful review." Opp. at 3-4 (emphasis omitted). To address ABR's purported concern, Defendants will file, contemporaneous with this Reply, a spreadsheet listing the Latham & Watkins timekeepers and per-task hours and rates for only those fees claimed by Defendants (which, notably, are only a portion of the fees incurred in this case). This spreadsheet, which includes timekeeper records extracted from Latham & Watkins' internal systems, addresses any concerns about the "undifferentiated," comprehensive set of fees records Defendants filed with the Motion.

In any event, however, ABR's arguments are baseless. In requesting fees, Defendants filed with this Court the complete body of Latham & Watkins invoices containing the fees charged in this case. *See* Dkt. 383-1 ("Invoices"). Each invoice lists the pertinent fees information for each billed task for the given time period, including the task date, timekeeper, hours spent, task description, and, at the end of the invoice, the rate for each timekeeper listed in the invoice. *See, e.g.*, Invoices at 1-14.

ABR challenges the Invoices because they contain time billed by timekeepers that "Defendants properly do not seek to recover." Opp. at 3 (criticizing Defendants for declining to

- 2 -

seek recovery for the more than 20 additional attorneys who billed time to this matter).  But ABR does not cite any case law suggesting that a comprehensive production of the invoices such as Defendants' undermines an attorneys' fees request.  To the contrary, a full production of all of the invoices as transmitted to the client permits the Court to understand the universe of fees incurred in the matter, including fees for which Defendants voluntarily declined to seek recovery, so that the Court may assess the claimed fees in the full context of the work involved in litigating Defendants' position.

ABR further claims that the fee entries "do not state the rate applied to the task or the dollar amount charged for it" and that its analysis of the records was complicated by the fact that they were produced as "images." *Id.* at 3-4.  But the Invoices plainly state the rates of each timekeeper, *see, e.g.*, Invoices at 14, 32, 57-58, and the Sammi Declaration provides the rate ranges for each timekeeper, which is enough for lodestar calculation, Dkt. 383 ("Sammi Decl.") ¶ 9.[1]  Indeed, ABR states that it was able to extract the pertinent entry-by-entry fees information "with zero variance" from the Invoices totals, confirming that extraction of the relevant information from the Invoices was fairly straightforward, the image format of the Invoices does not pose any analytical barrier, and the Invoices themselves are complete and accurate.  *Id.* at 3 n.3.  Finally, ABR's complaint about "block-billed" entries is similarly unavailing and fully addressed *infra* at 11-12.

ABR points out certain clerical errors in the calculations of the Sammi Declaration. The supplemental spreadsheet filed herewith, which was extracted directly from Latham & Watkins' internal billing systems, corrects these errors and provides the Court with a line-item breakdown

---

[1] In some instances, the Invoices list more than one rate for the timekeeper, due to the timekeeper's progression to a higher billing rate or other changes in fees during the period covered by the invoice.  But because the Invoices also list the corresponding number of hours billed in the invoice at a given rate, there is enough information to determine the billing rate for each task.  In any event, the spreadsheet to be filed contemporaneously with this Reply delineates the rates for each task.

of the hours and rates for each of the ten timekeepers whose fees are sought.  To address the discrepancy between the Declaration's previously stated total Latham & Watkins fees of $3,411,040 and the sum reflected in the spreadsheet, Defendants hereby seek only Latham & Watkins fees in the amount reflected in the spreadsheet:  $3,355,160.74.  The amount sought by DNF remains the same—$49,542.50 in fees—for a total fees request of $3,404,703.24.  This correction does not affect the underlying invoices, which remain complete and accurate as filed, but rather reflects certain fees discounts not previously included, among other factors.

> **B.      Defendants' Cost Submission Is Adequately Supported And Could Not Include Invoices That Are Unavailable Due To External Factors**

ABR also challenges Defendants' claimed costs, asserting that they are "inconsisten[t]," "incomplete," and "unsupported."  Opp. at 5.  But any discrepancy in Defendants' claimed costs is easily reconcilable:  As ABR itself notes (Opp. at 5 n.4), the $734,689.50 figure cited in the Motion refers to the combined costs incurred by Latham & Watkins and DNF, while the lower figure cited in the Sammi Declaration includes only the costs incurred by Latham & Watkins.  *See* Dkt. 384 ¶ 6 (Lockwood Decl.) (seeking $4,259.55 in costs on behalf of DNF); Dkt. 383 ¶¶ 10-11 (Sammi Decl.) (seeking $730,429.95 in costs on behalf of Latham & Watkins).

Furthermore, as with the claimed attorneys' fees, ABR was able to extract and reverse-engineer more than $550,000 of the claimed costs based on Defendants' offered cost records, confirming the sufficiency of the cost records as to three-quarters of the claimed costs.  Of those claimed costs, (1) more than $200,000 of various litigation costs such as deposition-related transcript, shipping, and conferencing services are listed on the same invoices that contain Latham's fees, *see, e.g.*, Invoices at 228; (2) $231,024.90 of costs in connection with Defendants' independent damages expert AlixPartners are substantiated by AlixPartners invoices, *see* Invoices at 488-508; and (3) more than $100,000 of e-discovery costs from Defendants' vendor Complete

Discovery Source ("CDS") are substantiated by CDS invoices between September 2019 and March 2026, *see* Invoices at 509-694.[2] *See* Opp. at 12 (acknowledging that Defendants produced AlixPartners and CDS invoices). As explained in the contemporaneously filed declaration of Tony Sammi ("Sammi Reply Decl."), Latham & Watkins was able to locate only a share of the supporting vendor invoices for the more than $200,000 of various litigation costs, including $15,178.96 costs related to depositions. *See* Sammi Reply Decl. ¶¶ 6-7. This is due to the ten-year duration of this litigation, during which many vendor invoices were automatically deleted. *See* Sammi Reply Decl. ¶ 7. To facilitate the Court's review, Defendants will file, contemporaneously with this Reply, a spreadsheet further detailing the various litigation costs and the invoices that are available to substantiate the deposition-related costs.

As for the remaining amount of costs not included in the Invoices produced to date, those costs include e-discovery costs between 2015 and September 2019 for which Defendants are unable to share invoices because CDS migrated storage systems and no longer can access invoices from before September 2019. *See* Sammi Reply Decl. ¶ 7; Opp. at 14 (noting that approximately $170,000 of costs were not supported by invoices). In the interest of compromise and reducing the burden on the Court, Defendants withdraw their request for any costs for which Defendants could not furnish invoices, as further detailed below.

## II.    DEFENDANTS ARE ENTITLED TO FULL ATTORNEYS' FEES

### A.    ABR Does Not Dispute That Defendants Are The Prevailing Parties

Although ABR attempts (unsuccessfully) to downplay the sprawling, complex nature of this litigation, ABR does not dispute that Defendants are the prevailing parties in this case who

---

[2] ABR calculates the net CDS e-discovery costs supported by invoices as $107,250.06. Dkt. 394-2 at 8. By Defendants' calculation, the amount is $102,797.51 in post-September 2019 CDS e-discovery costs. *See* Invoices at 509-694.

achieved "total success through a judgment in [their] favor on all claims." *M & N Aviation, Inc. v. United Parcel Serv., Inc.*, No. 2010-083, 2014 WL 1178200, at *11 (D.V.I. Mar. 21, 2014) (citation omitted). As prevailing parties, Defendants are entitled to an award of reasonable attorneys' fees and costs as a matter of law. *See* 5 V.I.C. § 541(b); Fed. R. Civ. P. 54(d)(2).

### B.    Defendants' Rates Reflect The Complexity Of The Litigation

ABR contends that the rates for both Latham & Watkins attorneys and DNF attorneys should be capped at up to $300 per hour. *See* Opp. at 8-9. Yet ABR does not at all grapple with the difficulty of this high-stakes litigation and the heightened skill required to resolve all claims. This Court should award fees at the requested rates or, alternatively, at least at $350 per hour.

As detailed in the Motion and accompanying Sammi Declaration, this case demanded extraordinary effort from Defendants' Counsel, including: (1) analyzing and defending against four theories of damages that sought up to $4 billion; (2) litigating complex questions of bankruptcy law, choice-of-law issues, the interplay between common law and federal claims, factual issues across multi-party negotiations and bankruptcy proceedings, and the applicability of the Supreme Court's recent decision in *Harrington v. Purdue Pharma, L.P.*; and (3) conducting extensive motions practice, discovery, mediation, and briefing, as reflected by the lengthy docket in this case. *See* Motion at 8-10; Sammi Decl. ¶ 5. Indeed, ABR's own concessions establish the complexity of this case. It admits that "the economic damages are large and may require a skilled economic expert," and that the case required "pure legal/statutory analysis" of a complex bankruptcy scheme, which—contrary to ABR's implication—requires legal expertise on a number of statutes and evolving precedent. Opp. at 1 n.2. Such complexity warrants the requested rates.

ABR fixates on DNF counsel's statement that this action is "not complex or novel." Opp. at 8; *see* Dkt. 384 (Lockwood Decl.) ¶ 4. But, when read in context, that statement pertained to DNF's work as local counsel, which entailed handling filings, consulting on local practice, and

- 6 -

other work that did not consistently implicate the complex statutory questions, damages analysis, or substantive strategy that consumed the bulk of the litigation. ABR cannot cherry-pick a single phrase from DNF's affidavit to override the objective record: a decade of litigation, seven causes of action, multiple rounds of dispositive motions, and tremendous stakes for Defendants.

Furthermore, and tellingly, ABR has no response to Defendants' arguments that ABR's own litigation tactics—including shifting its damages theories, pursuing the case even after conceding that it had no viable damages theory, and failing to sufficiently plead its claim in the first instance—contributed significantly to the claimed defense fees and costs. *See* Motion at 11; *see also, e.g.*, Dkt. 332 at 2 n.1 (Court describing case as "long-running"); *id.* at 6 (Court noting ABR "changed its theory of damages . . . essentially at the eleventh hour").

Against this backdrop, the rates sought here—by highly skilled and experienced members of well-reputed law firms—are reasonable. *See* Sammi Decl. ¶¶ 4-7 (outlining experience of timekeepers). Courts in this jurisdiction, and the Third Circuit more broadly, routinely award higher than prevailing market rates in complex cases, especially where the parties have agreed to the prevailing party's ability to seek fees. *See, e.g.*, *Chapa v. Sepe*, 2013 WL 8609242, at *2 (V.I. Super. Ct. June 3, 2013) (even in case that did not present "particularly novel or complex issue of law," awarding $395 per hour for certain tasks); *Equivest St. Thomas, Inc. v. Gov't of V.I.*, 2004 WL 3037953, at *8, 46 V.I. 447, 461-62 (D.V.I. Dec. 31, 2004) (in 2004 litigation challenging territory's property tax system, awarding up to $403.75 per hour); *see also, e.g.*, *Simring v. Rutgers*, 634 F. App'x 853, 858-59 (3d Cir. 2015) (in False Claims Act litigation, upholding rate of $625 per hour for experienced attorney); *Tenafly Eruv Ass'n, Inc. v. Borough of Tenafly*, 195 F. App'x 93, 97 (3d Cir. 2006) (in civil rights action, finding $500 and $550 per hour rates reasonable for "experienced lawyers working at highly regarded law firms" in region); *Conexus Metals, LLC*

*v. CRH Canada Grp., Inc.*, 2026 WL 1593208, at *4 (W.D. Pa. Apr. 17, 2026) (in commercial dispute, deeming $700 per hour "reasonable"); *Frompovicz v. Niagara Bottling, LLC*, 2021 WL 601100, at *3-4 (E.D. Pa. Feb. 16, 2021) (in complex commercial litigation, finding rates of $912.25, $712, and $556.25 per hour reasonable for "experienced commercial litigation attorneys" from Jones Day "selected by the opposing parties at the reasonable rate charged for comparable disputes . . . commensurate with their experience, reputation, and the complexity of the issues involved").

Finally, to the extent that the Court is inclined to cap awarded fees at Virgin Islands rates, the cap should be at least $350 per hour for all Latham & Watkins attorneys, as Virgin Islands courts have awarded fees at such rates in less complex cases as far back as more than a decade ago in light of "the experience level of the attorney and the complexity of the case." *George v. Allison Indus. Servs.*, 2024 WL 111820, at *3 (D.V.I. Jan. 10, 2024) (citing cases); *see, e.g.*, *Vitalis v. Sun Const., Inc.*, 2021 WL 3272198, at *3 (D.V.I. July 30, 2021) ("*Vitalis I*") (in employment dispute, awarding $350 for services from 2015 to 2021 "[b]ased on the prevailing market rates in this District, the complexity of the issues raised, and the experience of counsel"); *High Times VI Enters., LLC v. Rahhal*, 2021 WL 3292442, at *6, 74 V.I. 304, 317-18 (V.I. Super. Ct. Apr. 14, 2021) (in litigation for approximately $16,000 judgment, awarding $350 per hour as "consistent with the customary and prevailing market rates"); *Roy v. Poleon*, 2018 WL 6721399, at *4 (V.I. Super. Ct. Dec. 14, 2018) (in two-count litigation, noting that Virgin Islands courts "in the past" have "accepted rates of $300 and higher in the past" and awarding $350 per hour "in line with prevailing rates in the Virgin Islands"); *Freund Tr. of Evelyn Freund Tr. u/t/a Dated 1/29/98 v. Liburd*, 2017 WL 11596465, at *3 (V.I. Super. Ct. Dec. 20, 2017) (in guaranty enforcement action, deeming $350 per hour for managing attorney to be "consistent with the customary charges of

similarly experienced attorneys of the Virgin Islands bar"); *Interocean Ins. Agency v. Joseph*, 2014 V.I. LEXIS 73, at *10 (V.I. Super. Ct. 2014) (in insurance dispute, awarding attorney $350 per hour "as fair and reasonable for an attorney with his experience and record").

As for the DNF attorneys, the cap similarly should be at least $350 per hour. In arguing for a reduction in DNF's fees, ABR presents an incomplete and inaccurate description of Virgin Islands court opinions addressing the reasonability of rates. ABR cites four cases on the issue. *See* Opp. at 6-7.

First, ABR cites *George v. Allison Industrial Services, Inc.*, in which the court set Attorney Lockwood's rate at $300 per hour and Attorney Kronenberger's rate at $200 per hour. 2024 WL 111820, at *4. While that is a correct description of the rate set by the court, ABR leaves out important details underlying the court's reasoning. In the *Allison Industrial* opinion, as quoted in the Opposition, the court cited five cases (ranging in years from 2016 to 2019) for the proposition that Virgin Islands courts "have generally concluded that a reasonable hourly rate in this jurisdiction spans from $125 to $300 per hour." *See id.* at *3; Opp. at 6. But in the same paragraph, the court cites to opinions that approved rates up to $395 per hour for noncomplex cases:

> Across the years, however, hourly rates of up to $350.00—or higher depending on the experience level of the attorney and the complexity of the case—have been found to be reasonable rates charged in the Virgin Islands. *See, e.g., Herishetapaheru v. Firstbank Puerto Rico*, Civil Action No. 2016-0057, 2022 WL 991327, at *3 (D.V.I. Mar. 31, 2022) (allowing $325.00 per hour and $250.00 per hour in attorneys' fees based on the attorney's level of experience); *Equivest St. Thomas, Inc. v. Gov't of the Virgin Islands*, No. 01-CV-00155, 2004 WL 3037953, at *8 (D.V.I. Dec. 31, 2004) (concluding that rate of $403.75 per hour was reasonable rate for senior partner and noting that the rate was justified by the expertise of the attorney and "unusual complexity of the litigation"); *High Times VI Enterprises, LLC v. Rahhal,* 74 V.I. 304, 310 (V.I. Super. Ct. Apr. 14, 2021) ("The Court finds that Plaintiff's counsel's rate of $350.00 per hour to be consistent with the customary and prevailing market rates that similarly experienced attorneys charge in the U.S. Virgin Islands."); *Chapa v. Sepe*, No. 12-cv-504, 2013 WL 8609242, at *2 (V.I. Super. Ct. June 3, 2013) (concluding that rate of $395 per hour is "at the high end of the customary and prevailing market rates" charged by

- 9 -

experienced attorneys in the Virgin Islands).

2024 WL 111820, at *3.  Thus, the District Court acknowledged that the more recent trend is to approve rates higher than $300 per hour.[3]

The *Allison Industrial* court set the fees on the low end of the range for two reasons, neither of which applies here.  First, the court pointed out that the underlying litigation was exceedingly simple, in that it was never arbitrated or litigated on the merits.  *See id.* at *4.  Second, the affidavit submitted in support of the fee application in *Allison Industrial* did not describe the credentials or experience for Attorney Kronenberger.  *See id.*  Neither of those applies here; this case was actively litigated, and Attorney Kronenberger's declaration submitted here shows that he is qualified and experienced.  *See* Dkt. 385.  The *Allison Industrial* rates do not apply here.

Furthermore, as ABR notes, the opinions in *High Times VI Enters., LLC v. Rahhal*, 74 V.I. 304, 317 (V.I. Super. Ct. 2021), and *Roy v. Poleon*, No. ST-2013-CV-525, 2018 WL 6721399, at *4, 2018 V.I. LEXIS 136 (V.I. Super. Ct. Dec. 14, 2018) both support a rate of $350 per hour.  *See* Opp. at 6.

The fourth case the Opposition cites (albeit in incomplete fashion) is *Vitalis v. Sun Constructors, Inc.*, Civil Action No. 2005-0101, 2024 WL 4466773, 2024 U.S. Dist. LEXIS 184891 (D.V.I. Oct. 9, 2024) ("*Vitalis II*").  *See* Opp. at 6-7.  The court in *Vitalis II* acknowledged the language from the *Allison Industrial* opinion about the hourly rate spanning from $125 to $300 per hour, but like the court in *Allison Industrial*, it goes on to say that "[o]nly more recently have courts found that billing rates up to $350 per hour was within 'the customary and reasonable rate' for experienced attorneys."  2024 WL 4466773, at *11, 2024 U.S. Dist. LEXIS 184891, at *29-30

---

[3] As noted below, ABR cites the *High Times* opinion in its opposition as approving $350 per hour rates.

(citations omitted, citing cases also cited by *Allision Industrial* opinion, as well as *Roy v. Poleon*).

The *Vitalis II* court continued:

> To determine a reasonable rate in this case, the Court will focus on the time in which these fees were incurred while considering the skill, experience, and reputation of the attorneys involved.  For the time period of 2005 to 2010, the Court finds that a reasonable hourly rate for Attorney Engeman [whose stated rate was up to $375 per hour] is $275 per hour for 2006 through 2008 and $300 per hour for 2009 through 2010.  Likewise, Attorney Cattie's and the remaining attorneys' hourly rates will be calculated at $225 per hour for 2006 through 2008 and $250 per hour for 2009 through 2010.

*Id.*  Thus, to the extent that the court reduced a rate from $375 to $300, the reduced rate was tied to the time period the services were rendered, ending at 2010.  As shown above, the more recent cases agree that at least $350 per hour is a reasonable rate.  Indeed, in a case with the same parties as *Vitalis II* but addressing legal work provided in a later time period, the District Court found that for Attorney Engeman a reasonable rate for work performed after 2015 was $350 per hour.  *See Vitalis I,* 2021 WL 3272198, at *3.

ABR's contention that $300 per hour is a reasonable rate is inconsistent with the applicable caselaw.  The appropriate rate is at least $350.

### C.    Defendants' Hours Are Reasonable

ABR next argues that Defendants' counsel's hours are "inflated and must be reduced." Opp. at 9 (emphasis omitted).  But its requests for reduction are overbroad and unsupported.

*Latham & Watkins Fees.*  Principally, ABR asks for a 50% reduction in supposedly block-billed entries.  *See id.* at 9-10.  But ABR cites only one case calling for such an across-the-board reduction (and even then, only with respect to travel time and where it was "nearly impossible" to determine whether "unreasonable time" was allocated to specific tasks).  *See MRL Dev., LLC v. Whitecap Inv. Corp.*, 2017 WL 4863902, at *9 (D.V.I. Mar. 23, 2017) (cited at Opp. at 10).  Although the inclusion of block-billed entries may complicate the task of "review[ing] hours

expended," at most it would require that the Court "clarify which specific entries of each lawyer are unreasonable"—not preclusion of the fees altogether. *Simring*, 634 F. App'x at 859. Moreover, ABR deems various entries block-billed even where the entry expressly delineates the specific hour allotment for each task, *see, e.g.*, Dkt. 394-1 at 48, 107 (row 2520, task description breaking down 2.1-hour task into .9-, .8-, and .4-hour increments); or the "blocks" include multiple tasks obviously related to the same subject matter, *see, e.g.*, *id.* at 3, 102 (row 3152, listing three tasks for 2.5-hour period that involved corresponding regarding, strategizing about, and drafting responses and objections to second request for production). To the extent the Court is inclined to reduce hours for block-billed entries, it should do so only where the entries actually preclude review for reasonableness, and not accept ABR's blunt across-the-board reductions.

ABR also seeks to disallow in full "identical," "rote," "template," and "vague" entries. *See* Opp. at 10-11. But "identical" descriptions for a task do not render hours unreasonable or "rote"; instead, they reflect that the same task required multiple hours—unsurprising for a task such as "Review documents potentially responsive to ABR's first set of requests" in a case involving voluminous, sprawling discovery from multiple parties, which reasonably would take 86.2 hours (example cited at Opp. at 10). ABR complains that it is "impossible" to understand what work was performed across such identical tasks, but the task description explains precisely what was done: the attorney reviewed documents to determine what was potentially responsive to ABR's discovery requests. Nor does ABR suggest that entries with the same task description are necessarily duplicative or unreasonable or otherwise show why multiple entries with the same task description should be excluded altogether. *See also* Sammi Decl. ¶ 8 (noting that Latham & Watkins attorneys do not bill duplicative tasks).

ABR also complains that entries referencing "set strategy regarding motion for summary judgment" are improper because no such motion was ever filed. *See* Opp. at 10. But the fact that a motion for summary judgment was not ultimately filed does not render the strategic analysis underlying that decision unreasonable or non-compensable. Counsel's evaluation of whether to pursue summary judgment—including analysis of the factual record, legal standards, and strategic implications—is precisely the type of work "ordinarily necessary to secure the final result obtained from the litigation." *Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 561 (1986) (citation omitted). Indeed, the decision *not* to file a premature motion may itself reflect sound strategy that ultimately contributed to Defendants' complete success on the motions to dismiss.

As to ABR's vagueness objections, none of the 13 identified by ABR are as vague as those described in its only supporting authority on vagueness. *See Morcher v. Nash*, 32 F. Supp. 2d 239, 242 n.5 (D.V.I. 1998) (cited at Opp. at 7) (vague entries included "Telephone conference . . . re status" and "Complete memorandum"). And ABR does not cite any authority supporting its claim that the time undersigned counsel spent "familiarizing themselves with a years-old matter," Opp. at 11, is somehow unrecoverable. That cannot be the rule where, as here, ABR itself was responsible for the lengthy nature of this litigation due to its repeated reconsideration and recusal motions and shifting theories, which prolonged the case and necessitated the introduction of new counsel as counsel in the case turned over throughout the course of the litigation. Notably, moreover, Attorneys Sammi and Blitzer performed the work that ultimately led to the dismissal of the case, underscoring that their familiarization with the record was reasonably necessary.

ABR further seeks to disallow time spent on pro hac vice admissions and clerical tasks. *See* Opp. at 10-11. As to the pro hac vice entries, the admission of experienced national counsel

was reasonably necessary to defend against ABR's complex, high-stakes claims, and the time spent securing those admissions is properly part of the cost of litigation—not mere overhead—where, as here, the case demanded specialized expertise.[4]  As to the two clerical entries identified by ABR (7.1 hours), Defendants do not oppose a reduction of those entries if the Court deems them non-compensable.  The combined amount at issue—approximately $24,877 at ABR's proposed capped rates—is de minimis relative to the overall fee request and does not warrant denial of the Motion.

*DNF Fees*.  ABR also requests that the Court reduce DNF's claimed fees by time billed by paralegals and non-attorneys.  *See* Opp. at 12.  But the case that ABR cites recognizes that "there are inconsistent opinions in the District Court and the Superior Court" as to whether such fees are recoverable.  *Vitalis II*, 2024 WL 4466773, at *11 n.9 (cited at Opp. at 12).  Given the unsettled nature of any rule to excluded non-attorney time, the Court should analyze the at-issue entries on an entry-by-entry basis to determine what is reasonable.  *See* Dkt. 384 (listing paralegal and non-attorney entries).

## III.    DEFENDANTS ARE ENTITLED TO COSTS

### A.    Defendants Have Attached All Available Cost Invoices

ABR acknowledges that Defendants submitted supporting invoices for $231,024.90 in costs for Defendants' independent damages expert, AlixPartners, *see* Invoices at 488-508; and more than $100,000 of CDS e-discovery costs between September 2019 and March 2026, *see* Invoices at 509-694.  *See* Opp. at 12-13.  As to the remaining invoices, as described above and in the accompanying declaration of Attorney Sammi, Latham & Watkins has provided available

---

[4] Moreover, the entries characterized by ABR as "pro hac vice admission time" include many substantive tasks, such as "review and analyzing ABR third-party subpoenas," "draft interrogatories and request for admission," and "correspondence with ABR counsel regarding discovery," among others.  *See* Dkt. 394-1 at 140-45.

invoices to substantiate various litigation costs (specifically those related to depositions), but the bulk of such invoices are unavailable due to routine deletions of invoices of a certain age and CDS's migration of systems that implicated the available of invoices from before September 2019. *See* Sammi Reply Decl. ¶¶ 6-7. In the interest of reaching a resolution and reducing the Court's burden, Defendants limit their cost request to only those costs directly supported by invoices.

**B.    ABR's Request To Deny All Costs Should Be Rejected**

ABR asks that the Court award "nothing" from the costs requested by Defendants. Opp. at 12. But this flies in the face of the "'strong presumption' that costs are to be awarded to the prevailing party." *M & N Aviation*, 2014 WL 1178200, at *1 (citing *In re Paoli R.R. Yard PCB Litig.*, 221 F.3d 449, 462 (3d Cir. 2000)). Section 541(a) of the Virgin Islands Code permits recovery of "[f]ees of . . . witnesses," "[n]ecessary expenses of taking depositions," "expenses of publication of the summons or notices, and postage when they are served by mail," "compensation of a master," and "[n]ecessary expense[s] of copying any public record, book, or document." 5 V.I.C. § 541(a)(1)-(5). Denying *all* costs incurred by Defendants over the course of this decade-long litigation would be an unfair "windfall," Opp. at 17, to ABR.

ABR agrees that at least $12,857.60 of the claimed costs are recoverable as deposition-related expenses. *See* Opp. at 16; *see, e.g.*, *Mercedes Palermo v. World Fresh Market, LLC*, 2020 WL 456952, at *4, 72 V.I. 415, 425-26 (V.I. Super. Ct. 2020). Defendants have filed contemporaneously with this reply brief a greater amount, $15,178.96, in invoices and receipts of expenses related to depositions, including travel costs, all of which are recoverable as "[n]ecessary expenses of taking depositions which were reasonably necessary in the action." 5 V.I.C. § 541(a)(2); *see Terrell v. Coral World*, 55 V.I. 580, 585 (V.I. 2011) (noting that awards of travel expenses related to depositions are upheld on appeal).

- 15 -

As to the AlixPartners expert costs, these are properly recoverable as "[f]ees of . . . witnesses" under Section 541(a)(1). AlixPartners served as Defendants' independent damages expert, was designated as a testifying expert, and prepared a comprehensive rebuttal expert report in response to ABR's own expert analysis. *See* Motion at 14-15. ABR's contention that AlixPartners was merely a "litigation consultant" mischaracterizes the record: AlixPartners was retained to rebut ABR's damages theories and its work product was disclosed in accordance with this Court's scheduling orders. The costs of retaining a testifying expert to defend against a nearly $4 billion damages claim—which required rigorous independent analysis of ABR's shifting and complex damages theories—are plainly "reasonably necessary in the action" and recoverable.

As to the CDS e-discovery costs, these costs were incurred in connection with processing and managing documents necessary for the extensive discovery in this case, which involved voluminous document productions from multiple parties over a decade. ABR's characterization of these costs as mere "overhead" equivalent to "filing cabinets" ignores that e-discovery processing, hosting, and production are litigation services directly necessitated by ABR's claims and discovery demands—not routine firm overhead. At a minimum, the document-processing and production components of the CDS charges are recoverable as "[n]ecessary expense of copying any public record, book, or document" under Section 541(a)(5).

### C.    Defendants' Requested Costs by Category

In the interest of compromise, Defendants limit their Latham & Watkins cost request to the costs that are supported by invoices, for a total of $349,001.37 in costs, as described in the table below. Defendants continue to request $4,259.55 in DNF costs, for a total of $353,260.92.

**Latham & Watkins Costs**

| Category | Amount | Invoice Support | Position |
|---|---|---|---|
| **1. Deposition-related expenses** (including transcript preparation, Realtime reporting, video recording, rough drafts, travel costs) | $15,178.96 | Available invoices submitted with reply | Defendants seek costs |
| **2. AlixPartners expert/consultant fees** (independent damages expert who reviewed damages claims and prepared rebuttal expert report) | $231,024.90 | Supported by AlixPartners invoices (Invoices at 488–508) | Defendants seek costs |
| **3. CDS e-discovery costs (post-Sept. 2019)** (hosting, storing, and processing litigation database; near-line data storage; data hosting; project management; user licenses; data-processing) | $102,797.51 | Supported by 80 CDS invoices (Invoices at 509–694) | Defendants seek costs |
| **4. Remaining CDS e-discovery costs (pre-Sept. 2019) and litigation-related costs** (in-house discovery database and practice support, legal research, travel expenses, copying, filing, etc.) | $381,428.58 | Invoices unavailable due to CDS system migration and vendors' automatic deletion of invoices, among other reasons | Defendants *withdraw* request for costs |

**CONCLUSION**

For the foregoing reasons, Defendants respectfully request that the Court award $3,404,703.24 in attorneys' fees and $353,260.92 in costs.

- 17 -

Dated: June 16, 2026
      New York, New York

Respectfully submitted,

**LATHAM & WATKINS LLP**

By: /s/ *P. Anthony Sammi*
    P. Anthony Sammi (admitted *pro hac vice*)
    Rachel Blitzer (admitted *pro hac vice*)
    1271 Avenue of the Americas
    New York, New York 10020
    Telephone: (212) 906-1200
    Facsimile: (212) 751-4864
    tony.sammi@lw.com
    rachel.blitzer@lw.com

**DUDLEY NEWMAN FEURZEIG LLP**

By: /s/ *Charles E. Lockwood*
    Charles E. Lockwood
    1131 King Street, Suite 204
    Christiansted, U. S. V. I. 00820-4974
    Telephone: (340) 773-3200
    Facsimile: (340) 773-3409
    Clockwood@dnfvi.com

    *Attorneys for Defendants Arclight Capital*
    *Partners, LLC & JP Energy Partners, LP*

- 18 -

<u>**CERTIFICATE OF SERVICE**</u>

**I HEREBY CERTIFY** that on June 16, 2026, I electronically filed the foregoing with the

Clerk of the Court using the CM/ECF system, which will send a notification of such filing (NEF)

to the following.

**ANDREW C. SIMPSON, P.C**.

Andrew C. Simpson, Esq.
VI Bar No. 451
2191 Church Street, Suite 5
Christiansted, VI 00820
Telephone: 340.719.3900
asimpson@coralbrief.com

**RASCO KLOCK PEREZ NIETO**

Joseph P. Klock, Jr., Esq.
FBN 156678 (admitted pro hac vice)
Gabriel E. Nieto, Esq.
FBN 147559 (admitted pro hac vice)
2555 Ponce De Leon Blvd., Suite 600
Coral Gables, Florida 33134
Telephone: 305.476.7105
Facsimile: 305.675.7707
Jklock@rascoklock.com

**BECKSTEDT & ASSOCIATES**

Emily A. Shoup, Esq.
2162 Church Street
Christiansted, VI 00820
Telephone: 340-719-8086
Facsimile: 800-886-6831
emily@beckstedtlaw.com

*Attorneys for Plaintiff*
*Atlantic Basin Refinery, Inc.*


/s/ _Rachel Blitzer_____